Thomas H. Herndon, Jr., Esq. (THH - 9726)
THOMAS H. HERNDON, JR., LAW PLLC
*Attorneys for Plaintiff*
*Best Trails and Travel Corp.*
34 Crest Drive
South Orange, New Jersey 07079
Telephone No. (646) 699-8814
Email: therndon@thhjrlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X
BEST TRAILS AND TRAVEL CORP.,

|  |  |
|---|---|
| Plaintiff, | Case No.:_____ |
| -against- | **COMPLAINT**<br>**AND JURY DEMAND** |

NEW YORK CITY; NEW YORK CITY DEPARTMENT
OF ENVIRONMENTAL PROTECTION; LISA F. GARCIA
(SOLELY IN HER CAPACITY AS THE COMMISSIONER
OF THE NEW YORK CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION); NEW YORK CITY
POLICE DEPARTMENT; JESSICA S. TISCH (SOLELY IN
HER CAPACITY AS THE COMMISSIONER OF THE
NEW YORK CITY POLICE DEPARTMENT); NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION; TRICIA
SHIMAMURA (SOLELY IN HER CAPACITY AS THE
COMMISSIONER OF THE NEW YORK CITY DEPARTMENT
OF PARKS & RECREATION); NEW YORK CITY DEPARTMENT
OF SANITATION; GREGORY ANDERSON (SOLELY IN
HIS CAPACITY AS THE COMMISSIONER OF THE NEW
YORK CITY DEPARTMENT OF SANITATION); AND NEW
YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND
HEARINGS (OATH), AND


"JOHN DOE" AND "JANE DOE" NUMBERS 1-50,
fictitiously named parties, true names unknown, the
parties intended being those persons who succeed, if at all,
the above mentioned Commissioners;

Defendants.
--------------------------------------------------------------------------------X

Plaintiff, BEST TRAILS AND TRAVEL CORP. ("Best Trails" or "Plaintiff"), by and through its attorneys, Thomas H. Herndon, Jr., Law PLLC, as and for its Complaint against the defendants, NEW YORK CITY ("NYC"); NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION ("DEP"); LISA F. GARCIA ("Garcia") (SOLELY IN HER CAPACITY AS THE COMMISSIONER  OF THE NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL  PROTECTION); NEW YORK CITY POLICE DEPARTMENT ("NYPD"); JESSICA S. TISCH ("Tisch")(SOLELY IN HER CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY POLICE DEPARTMENT); NEW YORK CITY DEPARTMENT OF PARKS & RECREATION ("DPR"); TRICIA SHIMAMURA ("Shimamura")(SOLELY IN HER CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF PARKS & RECREATION); NEW YORK CITY DEPARTMENT  OF SANITATION ("DSNY"); GREGORY ANDERSON ("Anderson") (SOLELY IN HIS CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF SANITATION); AND NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS ("OATH") (collectively NYC, DEP, Garcia, NYPD, Tisch, DPR, Shimamura, DSNY, Anderson, and OATH (including those fictitious parties referenced in the Complaint) are sometimes collectively referred to herein as the "Defendants"))[1] alleges:

## **NATURE OF THIS ACTION**

1.    Plaintiff,  Best Trails, commences this action against the Defendants seeking a judgment declaring that New York City Administrative Code ("Code") § 24-163 is

---

[1]    Garcia, Tisch, Shimamura, and Anderson are sometimes collectively referred to herein as the "Individual Defendants". Additionally, NYC, DEP, NYPD, DPR, DSNY, and OATH are sometimes collectively referred to as the "Municipal Defendants".

unconstitutional. While NYC and the departments that enforce Code § 24-163, *i.e.*, the Defendants, purport that Code § 24-163 (which bars idling of private buses) is necessary to protect and improve air quality in and throughout NYC and curb harmful emissions (*see e.g.*, Code § 24-102), the truth of the matter is, in practice, Code § 24-163 is being used as a means simply to dole out punishments, in the form of exorbitant fines against private buses, drum-up large volumes of violations against virtually all commercial private bus companies that operate in New York to fill the coffers – while all the while essentially shielding the Metropolitan Transportation Authority ("MTA") and New York City Transit Authority ("NYCTA") (*see e.g.*, New York Public Authorities Law §§ 1266(8) and 1263)) from the draconian results of this specific Code. To make matters worse and to further diminish the legitimacy of Code § 24-163, the law permits laypersons to videotape or record the private bus companies purportedly idling, file complaints without requiring them to appear for a hearing, and, wait for it, receive a payout for making the complaints to NYC. *See e.g.*, Code § 24-182.   While Best Trails prefers to take the highroad and believe that the underlying passage of Code § 24-163 was paved with good intentions (which it believes so), its results and the manner in which it is currently enforced is at best, legally flawed, or, at worst, unconstitutional.

2.     Best Trails alleges that Code § 24-163 violates the Commerce Clause and the Dormant Commerce Clause of the U.S. Constitution.  (*See* U.S. Const., Art. I, § 8 cl. 3; 42 U.S.C. § 1983). Further, Best Trails alleges that Code § 24-163 violates the procedural and substantive guarantees of the Due Process Clause of the U.S. Constitution and is void for vagueness under the Due Process Clause of the U.S. Constitution. (*See* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983). Moreover, Best Trails alleges that Code § 24-163 violates the Equal Protection Clause of the U.S. Constitution. (*See* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983).  Also, Best Trails alleges that

Code § 24-163 violates the prohibition of the imposition of excess fines in violation of the U.S. Constitution.  (*See* U.S. Const. amend. VIII; 42 U.S.C. § 1983).

3.      Accordingly, Best Trails seeks, *inter alia*, a judgment declaring that Code § 24-163, and such other portions of the Code enforcing the same, are unconstitutional; a judgment temporarily and preliminarily enjoining enforcement of Code § 24-163 during the pendency of this action; a judgment awarding reasonable costs of attorneys' fees; and any other such relief as this Court may deem appropriate.

## PARTIES

4.      At all relevant times herein, Plaintiff, Best Trails and Travel Corp., was and is a New York State Domestic Corporation authorized to do business in the State of New York and maintains its principal place of business at 5 Sigourney Street, 2nd Floor, Brooklyn, New York 11231.

5.      Upon information and belief, defendant, New York City ("NYC"), is a city within the State of New York and has the authority, by virtue of the Charter, to enforce Code § 24-163 and maintains its address at City Hall, New York, New York 10007 and is responsible for providing services to its constituents.

6.      Upon information and belief, defendant, New York City Department of Environmental Protection ("DEP"), is a department within NYC; maintains its addresses at 59-17 Junction Blvd., 9th Floor, Queens, New York 11373 and 55 West 125th Street, 9th Floor, New York, New York 10027; and is responsible for protecting NYC's infrastructure and environment. DEP, upon information and belief, is also authorized to enforce, issue summonses, appearance tickets and/or notice violations with respect to Code § 24-163(a). Moreover, Lisa F. Garcia ("Garcia") (solely in her capacity as the Commissioner of DEP), is the Commissioner of DEP.

7.      Upon information and belief, defendant, New York City Police Department ("NYPD") is a department within NYC; maintains its address at 1 Police Plaza, New York, New York 10038; and is responsible for policing the persons living in and visiting NYC. NYPD, upon information and belief, is also authorized to enforce, issue summonses, appearance tickets and/or notice violations with respect to Code § 24-163(a). Moreover, Jessica S. Tisch (solely in her capacity as the Commissioner of NYPD), is the Commissioner of NYPD.

8.      Upon information and belief, defendant, New York City Department of Parks & Recreation ("DPR"), maintains its address at 830 Fifth Avenue, New York, New York 10065; and is responsible for managing over thirty thousand (30,000) acres of land in NYC including various properties. DPR, upon information and belief, is also authorized to enforce, issue summonses, appearance tickets and/or notice violations with respect to Code § 24-163(a).  Moreover, Tricia Shimamura (solely in her capacity as the Commissioner of DPR), is the Commissioner of DPR.

9.      Upon information and belief, defendant, New York City Department of Sanitation ("DSNY") is a department within NYC; maintains its address at 59 Maiden Lane, 5th Floor, New York, New York 10038; and is responsible for collecting, recycling, and disposing of waste, cleaning streets, attacking scourge of illegal dumping and cleaning snow and ice. DSNY, upon information and belief, is also authorized to enforce, issue summonses, appearance tickets and/or notice violations with respect to Code § 24-163(a). Moreover, Gregory Anderson (solely in his capacity as the Commissioner of DSNY), is the Commissioner of DSNY.

10.      Upon information and belief, the New York City Office of Administrative Trials and Hearings ("OATH"), is a department within NYC; maintains its address at 100 Church Street, 12th Floor, New York, New York 10007; and is responsible for NYC's central, administrative law court. OATH, upon information and belief, is authorized to administratively adjudicate

summonses, appearance tickets and/or notice violations with respect to Code § 24-163(a). OATH is being named solely on the basis that it is part of the policy framework in which the other Defendants enforce Code § 24-163 and is further being named to assure that complete relief may be afforded to Best Trails.

### JURISDICTION, VENUE, AND STANDING

11.    Jurisdiction exists by virtue of federal questions (*see* 28 U.S.C. § 1331) which arises under: (a) the Commerce Clause and the Dormant Commerce Clause of the U.S. Constitution (*see* U.S. Const., Art. I, § 8 cl. 3; 42 U.S.C. § 1983); (b) the Due Process Clause and Equal Protection Clause of the U.S. Constitution (*see* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983); and (c) the prohibition of the imposition of excess fines of the U.S. Constitution (*see* U.S. Const. amend. VIII; 42 U.S.C. § 1983).

12.    Venue is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this judicial district – Southern District.

13.    Best Trails, has been and continues to be injured by Code § 24-163 in that it, a private bus company engaging in interstate commerce: (a) is being bombarded with hundreds of idling tickets some nearing one thousand dollars ($1,000.00) per violation by Defendants in aggregate of thirty thousand dollars ($30,000.00) and counting; (b) that the fines are causing an extreme hardship on its business in that if the violations continue to be issued at this rate, that it will make it virtually impossible for Best Trails to engage in commerce in New York City; (c) that the Defendants are the direct cause of Best Trail's injuries in that one or more of them have the authority to enforce Code § 24-163; and (d) a favorable decision in the form of injunctive relief will remedy the injury. Moreover, the ongoing enforcement by Defendants will cause imminent

future injury and is not speculative in that Best Trails is already receiving continuous violations and incurring excessive fines.

14. Each Defendant acted under the color of law in that they are a state actor, acted within their official duties and/or a private actor misused state authority in violating Best Trails' federally protective right as alleged herein (*supra* at ¶11) and is the cause of the injury alleged by Best Trails. Specifically here, the citizen complaints, coupled with the financial incentives, delayed service on Best Trails, and providing no opportunity to cross-examine the complainants, all together constitute an official policy, widespread custom, and/or practices that the Municipal Defendants knowingly maintained and ratified and the Individual Defendants, in their capacity as the heads of the Municipal Defendants, so too knowingly maintained and ratified such official policy, widespread custom, and/or practices.

## RELEVANT FACTS

**I.    Relevant**
**Sections Of The Code**

**A.    Purpose Of Enacting Code § 24-163**
**Was To Promote Air Quality Of The City And To Promote Health,**
**Safety, And Welfare And Prevent Injury To Humans, Plants, & Animals**

**(Title 24: Environmental Protection And Utilities; Chapter 1:**
**Air Pollution Contract; Subchapter 1: Short Title, Policy, and**
**Definitions)**

15. The Code § 24-102, Declaration of policy, states:

It is hereby declared to be the public policy of the city to preserve, protect and improve the air quality of the city so as to promote health, safety and welfare, prevent injury to human, plant and animal life and property, foster the comfort and convenience of its inhabitants and facilitate the enjoyment of the natural attractions of the city. It is the public policy of the city that every person is entitled to air that is not detrimental to life, health and enjoyment of his or her property. It is hereby declared that the emission into the open air of any harmful or objectionable substance, including but not limited to smoke, soot, fly ash, dust, fumes, gas, vapors, odors or any products of combustion or incomplete combustion resulting from the use of

fuel burning equipment or refuse burning equipment is a menace to the health, welfare and comfort of the people of the city and a cause of extensive damage to property. For the purpose of controlling and reducing air pollution, it is hereby declared to be the policy of the city to actively regulate and eliminate such emissions. The necessity for legislation by the enactment of the provisions of this chapter is hereby declared as a matter of legislative determination. This code shall be liberally construed so as to effectuate the purposes described in this section. Nothing herein shall be construed to abridge the emergency powers of the board of health of the department of health and mental hygiene or the right of such department to engage in any of its necessary or proper activities.

B.    **Code § 24-163, Reporting, And**
      **Diesel Emission And Transitioning To Low Emission Vehicles**

      **(Title 24: Environmental Protection And Utilities; Chapter 1:**
      **Air Pollution Contract; Subchapter 6: Emission Standards)**

                                    \*\*\*

16.    Code § 24-163 states, in relevant part, the following:

       (a)     No person shall cause or permit the engine of a motor vehicle, other than a legally authorized emergency motor vehicle, to idle for longer than three minutes, except as provided in subdivision (f) of this section, while parking as defined in section one hundred twenty-nine of the vehicle and traffic law, standing as defined in section one hundred forty-five of the vehicle and traffic law, or stopping as defined in section one hundred forty-seven of the vehicle and traffic law, unless the engine is used to operate a loading, unloading or processing device. When the ambient temperature is in excess of forty degrees Fahrenheit, no person shall cause or permit the engine of a bus as defined in section one hundred four of the vehicle and traffic law to idle while parking, standing, or stopping (as defined above) at any terminal point, whether or not enclosed, along an established route.

                                    \*\*\*

       (e)   In addition to the department and the police department, the department of parks and recreation and the department of sanitation shall have the authority to enforce subdivision a of this section and shall have the power to issues summonses, appearance tickets and/or notices of violation for violations of such subdivision.

                                    \*\*\*

       (f)   No person shall cause or permit the engine of a motor vehicle, other than a legally authorized emergency motor vehicle, to idle for longer than

one minute if such motor vehicle is adjacent, as determined by rule, to any public school under the jurisdiction of the New York city department of education or to any non-public school that provides educational instruction to students in any grade from pre-kindergarten to the twelfth grade level, or is adjacent to, as determined by rule, or within, any park under the jurisdiction of the New York city department of parks and recreation, while parking as defined in section one hundred twenty-nine of the vehicle and traffic law, standing as defined in section one hundred forty-five of the vehicle and traffic law, or stopping as defined in section one hundred forty-seven of the vehicle and traffic law, unless the engine is used to operate a loading, unloading or processing device, and provided that idling of an engine of a school bus may be permitted to the extent necessary: (1) for mechanical work; (2) to maintain an appropriate temperature for passenger comfort; or (3) in emergency evacuations where necessary to operate wheelchair lifts. It shall be an affirmative defense that any such school or park was not easily identifiable as a school or park by signage or otherwise at the time a violation of this subdivision occurred. For purposes of this subdivision, "park" means a park that has been designated with a name and is identified as a park on the website of the department of parks and recreation and does not include any parking lot located within such park.

(g)   A report shall be submitted to the city council on an annual basis by: (1) the office of administrative trials and hearings pursuant to section 1049-a of the charter that states the number of notices of violation for engine idling violations filed with such office, including the total amount of penalties imposed for such notices of violations; (2) the department of finance that states the number of summonses issued for engine idling violations pursuant to subdivision (p) of section 4-08 of title 34 of the rules of the city of New York, including the total amount of penalties imposed for such summonses; (3) the department of environmental protection that states the number of 311 idling complaints, disaggregated by borough and including any other information related to such complaints the department deems relevant; and (4) the department of environmental protection that states the number of complaints received by the department of environmental protection pursuant to subdivision (a) of section 24-182 regarding violations of this section, disaggregated by the following: (i) the number of violations issued by the department pursuant to such complaints and (ii) the number of complaints filed pursuant to subdivision (b) of section 24-182 with the office of administrative trials and hearings pursuant to section 1049-a of the charter.

17.    Code §§ 24-163.1, *et seq.*, all relate or refer to NYC purchasing cleaner vehicles and/or using ultra-low sulfur diesel fuel and best available technology (with various benchmarks) for non-road vehicles, powered motor vehicles, waste contract

vehicles, school vehicles, and other such vehicles. Yet, even under these sections, there is a carve out afforded to heads of the governing bodies to table the purchases if it is cost prohibitive. *Id.*

    **C.**    **Administrative Oversight And Penalty Structure Creates This Framework That, In The Context Of Commerce, Overtly Discriminates In Favor Of Local Interest, *e.g.*, The MTA And The NYCTA Over That Of Private Bus Companies Or Creates A Discriminatory Framework That Otherwise Promotes Local Interest; Creates A Result That, On Its Face, Is Not Rationally Related To The Government Interest – Air Quality; And Creates A System Whereby It Encourages Layperson, Without Any Training, To File Complaints For Pecuniary Gain And Thereby Increases The Volume And The <u>Excessiveness Of The Penalties.</u>**

    **(Title 24: Environmental Protection And Utilities; Chapter 1: Air Pollution Contract; Subchapter 9: Enforcement)**

18.    Code § 24-178 Powers of the board, states in relevant part, the following:

    (a)  The board may, upon notice pursuant to this chapter, and after a hearing pursuant to the rules of the board:

***

  (3)  (i)  Impose a civil penalty in each instance in an amount as hereinafter set forth in the table of civil penalties against any person who violates any provision of this code or of any order or rule promulgated thereunder.

***

Table of Civil Penalties

| Violation | Minimum | Maximum |
|-----------|---------|---------|
| 24-163 | $350 | $2,000 |

***

19.    § 24-182, entitled Citizen's complaint, provides:

  (a) Any natural person, other than personnel of the department and other employees of the city of New York authorized by law to serve summonses for violations of the code, may serve upon the department a complaint, in a form prescribed by the department, alleging that a person has violated any provision of this code or order or regulation promulgated by the commissioner or the board,

except with respect to sections 24-143 and 24-163 of this code, but still applicable to buses as defined in section one hundred four of the vehicle and traffic law and trucks as defined in section one hundred fifty eight of the vehicle and traffic law, together with evidence of such violation. With respect to section 24-142 of this code, only such person who has been certified as a smoke watcher, by passing a course of smoke observation approved by the department within three years prior to the observation, may serve such complaint.

(b)  A person who has served a complaint pursuant to subdivision (a) of this section may serve upon the person allegedly in violation, and file with the office of administrative trials and hearings pursuant to section 1049-a of the charter, a notice of violation in a form prescribed by such office within forty-five days from service of such complaint if:

(1)  The department has failed to serve a notice of violation, pursuant to the rules of the environmental control board within the office of administrative trials and hearings, for the violation alleged in a complaint pursuant to subdivision (a) of this section; or

(2)  The department fails to serve a written notice upon the complainant of its determination that his or her complaint is frivolous or duplicitous.

(c)  A person commencing a proceeding pursuant to this section shall provide notice to the department at the time of commencement and prosecute such proceeding at his or her own expense. The department may intervene in such a proceeding at any time.

(d)  In any proceeding brought by the department after receiving a complaint, pursuant to subdivision (a) of this section, the office of administrative trials and hearings pursuant to section 1049-a of the charter shall award the complainant, out of the proceeds collected, twenty-five percent of such proceeds, for disclosure of information or evidence, not in the possession of the department prior to the receipt of the complaint by the department, which leads to the imposition of the civil penalty.

(e)  In any proceeding brought by a complainant pursuant to subdivision (a) of this section, such office shall award, out of the proceeds collected, fifty percent of any civil penalty as fair and reasonable compensation to such person.

(f)  On or before January 1, 2019, the department shall publish on the city's website information related to best practices for filing citizen complaints pursuant to this section. Such information shall include but need not be limited to guidance on procedures for filing such complaints and for gathering supporting documentation.

20.    New York Public Authorities Law §§ 1266(8) states:

> 8. The authority may do all things it deems necessary, convenient or desirable to manage, control and direct the maintenance and operation of transportation facilities, equipment or real property operated by or under contract, lease or other arrangement with the authority and its subsidiaries, and New York city transit authority and its subsidiaries. Except as hereinafter specially provided, no municipality or political subdivision,

including but not limited to a county, city, village, town or school or other district shall have jurisdiction over any facilities of the authority and its subsidiaries, and New York city transit authority and its subsidiaries, or any of their activities or operations. The local laws, resolutions, ordinances, rules and regulations of a municipality or political subdivision, heretofore or hereafter adopted, conflicting with this title or any rule or regulation of the authority or its subsidiaries, or New York city transit authority or its subsidiaries, shall not be applicable to the activities or operations of the authority and its subsidiaries, and New York city transit authority, or the facilities of the authority and its subsidiaries, and New York city transit authority and its subsidiaries, except such facilities that are devoted to purposes other than transportation or transit purposes. […]

## II.   Relevant Facts About Best Trails

### A.   Best Trails Maintains A Modern Fleet

21.   Best Trails is a charter bus company that provides transportation services for corporate and private clients throughout the State of New York as well as in the neighboring States. As for its bus fleet, Best Trails operates a "modern fleet" designed to comply with applicable emissions and environmental standards. Many of its vehicles are equipped with automatic shut-off systems to limit unnecessary idling, are certified by the Environmental Protection Agency and the California Air Resources Board as near-zero emissions vehicles, and utilize auxiliary power units that permit necessary functions, including climate control, without requiring the engine to run continuously. These features are standard within the industry and are intended to minimize emissions during routine operations.

### B.   The NYC Idling Ticket Process Is Flawed And Lacks Proper Oversight

22.   Under Code § 24-182, citizens, yes that's correct, are permitted to file and serve complaints against bus companies that are idling and, if that wasn't enough, obtain a payout for successful prosecution of the idling tickets.  As one could imagine, the result, in practice, creates

confusion with large numbers of bus companies being ticketed in multiples in the hundreds.  Also, not shocking, laypersons with no formal training, videotape and/or photograph the alleged violator and then submit the purported proofs through DEP's citizen complaint program. Under that program, private individuals record alleged violations and submit those recordings to the agency, which relies on them as the evidentiary basis for enforcement.

23.    The recordings submitted in connection with these types of determinations are frequently incomplete or unreliable. Some lack audio, making it impossible to determine whether an engine was running. Others are recorded from a distance or are unstable or obstructed, such that the identity of the vehicle cannot be confirmed with certainty. These deficiencies bear directly on whether the elements of an idling violation can be established.

24.    What's more, the individuals submitting these recordings are not trained in emissions enforcement and do not use calibrated equipment capable of verifying idling or emissions. Rather, they are private individuals operating without standardized procedures, technical training, or monitoring tools.

25.    The program further provides that complainants may receive a portion of any fines collected in connection with their submissions, which creates another avenue of confusion and unreliability.

26.    When Best Trails attends a hearing, it is afforded no opportunity to question or cross-examine the individuals who submitted the recordings or to test the accuracy, completeness, or circumstances under which those recordings were made. The determinations, in general, are entirely based entirely on those submissions, without testimony or other corroborating evidence.

27.    To further compound the issues, the tickets are sometimes served one year after the incident occurs. As for the timing of the notices, Best Trails typically receives the notices

approximately one (1) year after the incident occurs. By the time notice is received, relevant records, including GPS data, trip manifests, and fuel logs, have been discarded in the ordinary course of business pursuant to standard retention practices, and any contemporaneous records are no longer available. Moreover, given the passage of time, the drivers either are no longer employed by Best Trails (as drivers come and go) and/or if they are still employed, cannot recall the events at issue. Best Trails is therefore left without being able to determine the circumstances at the time of the alleged violation, including whether the vehicle was engaged in passenger activity or other operations relevant to the idling restriction.

28.     Best Trails received approximately one hundred seventeen (117) tickets over the past three (3) years. Of those tickets, Best Trails paid out approximately thirty thousand dollars ($30,000.00) in fines with approximately forty four (44) tickets still pending without an assessment of the date of this action. Usually, Best Trails receives three (3) or four (4) tickets at time – sometimes in duplicate because the complainants, every day citizens, serve the complaints directly on it. As already pled above, the delay between the date the violation is purportedly incurred and the date Best Trails receives the tickets is usually one (1) year.  Even after Best Trails receives the belated notice of the purported violation, the entire system is arbitrary and lacks adequate due process protections in that NYC essentially pawns-off its responsibilities to every day citizens (many of them repeat serial complainants) with no formal training and, if that wasn't enough, relaxes the evidentiary rules so much so that, in practice, there really isn't any rules of evidence in play, *e.g.*, the complainants do not need to appear and testify as to the fair and accurate depiction of the video which is obviously important, the videos are typically unclear or are pointed in many different directions and not at the vehicle themselves, the complainants are not subject to cross-examination, and the witnesses, *i.e.*, the drivers, and the documents, *i.e.*, GPS data, trip manifests,

drivers logs, and similar records, are typically not available due to the passage of time from the date of the violation to the hearing.

29.    Additionally, public entities, including the MTA or NYCTA, who operate large fleets of buses throughout New York City are exempt from these rules which again, does not comport with the purpose of enacting those portions of the Code to combat air quality in NYC. In fact, MTA buses are routinely observed idling at depots, bus stops, and schools as part of their regular operations. Yet, they are not getting ticketed at the frequency Best Trails is being ticketed. Despite the prevalence of those operations, such entities are not cited under the citizen complaint program. Enforcement of alleged idling violations through that program is directed at private operators, including Best Trails.

**AS AND FOR A FIRST CAUSE OF ACTION
AGAINST THE DEFENDANTS FOR VIOLATIONS UNDER THE COMMERCE
CLAUSE AND THE DORMANT COMMERCE CLAUSE OF THE
U.S. CONSTITUTION
(U.S. CONST., ART. I, § 8 CL. 3; 42 U.S.C. § 1983)**

30.    Plaintiff, Best Trails, repeats and realleges each and every allegation contained in the paragraphs above as if set forth herein.

31.    Best Trails provides a full range of charter bus services for corporate and private events in the City of New York and routinely travels *via* interstate to other states, *e.g.*, New Jersey. Best Trails is located at 5 Sigourney Street, Brooklyn, New York 11231. As with any bus company, Best Trails hires several bus drivers to conduct pick-ups and drop-offs for its clients and it hires dispatchers to assign routes.

32.    Best Trails, similar to other private bus companies operating in NYC and through the other neighboring states, did not receive a couple of Code § 24-163 tickets here-and-there (which obviously, would not necessitate this action), but rather Best Trails received **hundreds** of

tickets over the last three (3) years with likely hundreds issued, but not received yet, and even hundreds more still to come.  In fact, only a quarter of the year has gone by and Best Trails already received fifty one (51) Code § 24-163 violations, of which, many were for trips engaged in interstate travel, purportedly occurring in 2023 and 2024, and covering thirty-one different drivers. The penalties, so too, are equally excessive and crippling (*e.g.*, with fines starting at three hundred fifty dollars ($350.00) per infraction and with Best Trails nearing one thousand dollars ($1,000.00) for others).

33.     Code § 24-163 violates the Commerce Clause in that the burden on interstate commerce is excessive and not incidental to the local benefits NYC receives from it. Specifically, Code § 24-163 is an excessive burden, because the enforcement scheme (which is spearheaded by untrained citizens without proper oversight and/or procedural guardrails): (a) discourages private bus companies, *e.g.*, Best Trails and other similarly situated bus companies, from traveling in and out of the state or, if they do, creating a financial disincentive or hardship for them to do so; (b) discourages private bus companies, *e.g.*, Best Trails and other similarly situated bus companies, from engaging in tourism in-and-out of NYC and the transportation of persons in and out of NYC; (c) discourages private bus companies, *e.g.*, Best Trails and other similarly situated bus companies, from engaging in business in and out of NYC because it creates uncertainty as to when and how they will be ticketed and, if they are ticketed, the mechanisms to defend themselves in a fair tribunal; and (d) discourages private bus companies, *e.g.*, Best Trails and other similarly situated bus companies, from being able to hire and retain bus drivers as drivers will either refuse to drive in NYC or will opt for positions, not detrimental to their pay, intrastate in other states without such draconian laws.

34.    Additionally, Code § 24-163 violates the Commerce Clause in that (a) it is vague in that it does not provide a time frame for how long a bus (as defined in section one hundred four of the vehicle and traffic law) can idle while at a terminal point; (b) it is vague in that it lumps all bus companies that are using ultra-low sulfur diesel fuel and best available technology with those who are not, which is contradictory in light of the stated purpose (*see supra* at ¶15) and the clear legislative intent for NYC vehicles to move in that direction (*see supra* at ¶17); (c) it is vague in that it provides an exception to essentially, maintain an appropriate temperature for passenger comfort, but fails to state how, a layperson at ground level would be able to determine who is in the bus or see into the bus if the windows are tented and, more importantly, what temperature and how long would be necessary to reach such "appropriate" temperature; (d) it is vague and inherently flawed in that it essentially deputizes, laypersons and operate without any training or guideposts, and then further compounds the problem by incentivizing them monetarily (which, on its face, has the appearance of impropriety) to enforce the Code § 24-163 (which, simply put, is the responsibility of NYC or the Defendants); (e) it fails to set forth alternative standards, which clearly do exists, that would not burden interstate commerce, *e.g.*, provide common sense oversight and training; exempt bus companies and/or encourage them to invest in ultra-low sulfur diesel fuel and best available technology - instead of using Code § 24-163, in the guise of protecting air quality for NYC; (f) it is protectionist or discriminatory in that it applies to commercial bus companies and not, for instance, the MTA or the NYCTA; and (g) it impedes the marketing of Best Trails' services in NYC and the interstate marketplace.

35.    Code § 24-163 also violates the Dormant Commerce Clause in that it discriminates against interstate commerce, *i.e.*, against Best Trails and other similarly situated private bus companies in favor of intrastate commerce, *i.e.*, the MTA and NYCTA. At its core, Code § 24-163

*et seq.*, operates in a protectionist manner and is not justified by a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives.  Embedded within the Code § 24-163 *et seq.*, is a carveout that if the policy becomes too cost prohibitive, NYC can tap-out, but yet, that same exemption is not afforded to the private companies.[2] What's more, Code § 24-163 is invalid because it is not demonstrably justified by a valid factor unrelated to economic protectionism, or said another way, it does not advance a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.  Code § 24-163 either has a harboring discriminatory purpose or impact, *i.e.*, to only apply to private bus companies since the MTA and NYCTA are outside NYC's jurisdiction.

36.    In the absence of declaratory and injunctive relief, Best Trails will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to it by the United States Constitution.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST THE DEFENDANTS FOR VIOLATIONS OF PROCEDURAL AND**
**SUBSTANTIVE GUARANTEES OF THE DUE PROCESS CLAUSE OF THE U.S.**
**CONSTITUTION**
**(U.S. CONST. AMEND. XIV, § 1; 42 U.S.C. § 1983)**

37.    Plaintiff, Best Trails, repeats and realleges each and every allegation contained in the paragraphs above as if set forth herein.

38.    OATH has held, *inter alia*, that it does not have the jurisdiction over constitutional challenges with respect to Code § 24-163 and, as such, the issues Best Trails raises here would not be subject to review under an Article 78 Proceeding. OATH has also held, *inter alia*, with respect to Best Trails that "citizen-complainant [receipt of] a financial award is irrelevant to a violation of

---

[2]    Upon information and belief, Defendants have granted or are in the process of granting variances from Code § 24-163 to other motorcoach operators based on operational realities and technological limitations. This further demonstrates that strict compliance with the statute is not feasible under certain conditions and underscores the arbitrary and inconsistent manner in which the statute is enforced.

Code 24-163(a) because Code § 24-182 specifically authorized that complaint filing process and subsequent compensation" and "OATH is not the proper forum for constitutional claims or selective enforcement". Thus, OATH takes the position that the process it is applying is just because the law, *i.e.*, Code § 24-182, says so. That's not a sufficient reason though. Hence, Best Trails is left with filing a plenary action, as it is doing here, to challenge the constitutionality of Code § 24-163.

39.    Code § 24-163 violates the procedural due process guarantees of the Due Process Clause of the U.S. Constitution. (*See* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983). Best Trails is deprived of its liberty, *i.e.*, by being fined and being force out-of-business, and is being deprived of that interest as a result of insufficient process. What's more, the requisite factors (*i.e.*, *Mathews v. Eldridge* (the "*Mathews Factors*"), 424 U.S. 319, 96 S. Ct. 893 47 L. Ed 2d 18 (1976)), weigh in Best Trails' favor. First, Best Trails has a significant private interest at stake, as it is subject to substantial and recurring monetary penalties that directly impact its ability to operate its business and engage in interstate commerce. Second, the risk of erroneous deprivation is extraordinarily high under the procedures employed by Defendants, which rely almost exclusively on unverified and frequently unreliable recordings submitted by untrained private individuals, without any opportunity for cross-examination, without sworn testimony, and often after substantial delays that deprive Best Trails of access to evidence, including records and witness recollection. Third, the governmental burden of providing additional procedural safeguards, such as requiring timely notice, basic evidentiary standards, or the appearance of complainants, is minimal when compared to the substantial risk of error inherent in the current system. Accordingly, the procedures employed by Defendants create an unacceptably high risk of erroneous deprivation and fails to satisfy the requirements of procedural due process.

40.     Code § 24-163 violates the substantial due process guarantees of the Due Process Clause of the U.S. Constitution. (*See* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983). As provided above (*supra* at ¶¶15-29), the enforcement of Code § 24-163, in particular and in practice, is, at best, arbitrary, capricious, and lacks a reasonable related governmental purposes (*supra* at ¶¶15-29) especially when, upon information and belief, the MTA and NYCTA who likely emit the same, if not more, pollutants in the air, or, at worse, is egregious, outrageous government conduct injurious to an interest implicit in the concert of ordered liberty. The outrageous enforcement scheme which, on the one hand, exempts the MTA and NYCTA, and, on the other hand, deputizes ordinary citizens and compensates them without providing any sort of training or equipment to them and all the while not requiring them to appear at the hearing, is disconnected from the stated purpose of achieving clean air. And, simply put, the process shocks the conscience or, at the very least, should shock the conscience.

41.     For all the forgoing reasons, Code § 24-163 violates the procedural and substantive guarantees of the Due Process Clause of the U.S. Constitution. (*See also* U.S. Const. amend. XIV, § 1).

42.     In the absence of declaratory and injunctive relief, Best Trails will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to it by the United States Constitution.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST THE DEFENDANTS FOR VOID FOR VAGUENESS UNDER**
**THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION**
**(U.S. CONST. AMEND. XIV, § 1; 42 U.S.C. § 1983)**

43. Plaintiff, Best Trails, repeats and realleges each and every allegation contained in the paragraphs above as if set forth herein.

44. Code § 24-163 is void for vagueness in that it does not provide a person with ordinary intelligence a reasonable opportunity to know what is prohibited and/or to provide explicit standards for those who apply them.

45. Code § 24-163 is Void for Vagueness in that: (a) it is vague in that it does not provide a time frame for how long a bus (as defined in section one hundred four of the vehicle and traffic law) can idle while at a terminal point; (b) it is vague in that it lumps all bus companies that are using ultra-low sulfur diesel fuel and best available technology with those who are not, which is contradictory in light of the stated purpose (*see supra* at ¶15) and the clear legislative intent for NYC vehicles to move in that direction (*see supra* at ¶17); (c) it is vague in that it provides an exception to essentially, maintain an appropriate temperature for passenger comfort, but fails to state how, a layperson at ground level would be able to determine who is in the bus or see into the bus if the windows are tented and, more importantly, what temperature and how long would be necessary to reach such "appropriate" temperature; and (d) it is vague and inherently flawed in that it essentially deputizes laypersons without meaningful standards, training, or oversight, and then further compounds the problem by incentivizing them monetarily to enforce the Code § 24-163.

46. For these reasons Code § 24-163 is Void for Vagueness in that it either (a) encourages arbitrary and discriminatory enforcement, which is likely, or (b) does not provide

people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, which is equally likely.

47. In the absence of declaratory and injunctive relief, Best Trails will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to it by the United States Constitution.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**AGAINST THE DEFENDANTS FOR VIOLATIONS UNDER**
**THE EQUAL PROTECTION CLAUSE OF THE U.S. CONSTITUTION**
**(U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983)**

48. Plaintiff, Best Trails, repeats and realleges each and every allegation contained in the paragraphs above as if set forth herein.

49. Best Trails, and such other similarly situated private bus companies, on the one hand, are being treated differently to the MTA and NYCTA, on the other hand, which is unconstitutional. Or, in other words, other similarly situated entities are being treated differently and the Defendants lack a reasonable basis for the discriminatory treatment. Even assuming *arguendo* NYC contends that there is a mechanism in place with respect to policing the MTA and NYCTA, the enforcement of Code § 24-163, in particular and in practice, is, at best, arbitrary, capricious, and lacks a reasonable related governmental purposes (*supra* at ¶¶15-29) especially when, upon information and belief, the MTA and NYCTA likely emit the same, if not more, pollutants in the air, or, at worse, is egregious, outrageous government conduct injurious to an interest implicit in the concert of ordered liberty.

50. In the absence of declaratory and injunctive relief, Best Trails will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to it by the United States Constitution.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST THE DEFENDANTS FOR VIOLATIONS UNDER THE**
**IMPOSITION OF EXCESS FINES IN VIOLATION OF THE U.S. CONSTITUTION**
**(U.S. Const. amend. VIII; 42 U.S.C. § 1983)**

51.    Plaintiff, Best Trails, repeats and realleges each and every allegation contained in the paragraphs above as if set forth herein.

52.    The fine imposed under Code §§ 24-163 and 24-178 is a penalty and/or punitive in nature.

53.    On a macrolevel, the fines, which Best Trails has accrued approximately thirty thousand dollars ($30,000.00) in fines, will cripple it and the private busing industry in NYC and will likely result in the private bus companies decreasing or eliminating routes in-and-out of NYC. Similarly, fines will: (a) discourage private bus companies, *e.g.*, Best Trails and other similarly situated bus companies, from traveling in-and-out of NYC due to a financial disincentive; (b) discourage private bus companies, *e.g.*, Best Trails and other similarly situated bus companies, from engaging in tourism in-and-out of NYC and the transportation of persons in and out of NYC; (c) discourage private bus companies, *e.g.*, Best Trails and other similarly situated bus companies, from engaging in business in and out of NYC because it creates uncertainty as to when and how they will be ticketed and, if they are ticketed, the mechanisms to defend themselves in a fair tribunal; and (d) discourage private bus companies*, e.g.*, Best Trails and other similarly situated bus companies, from being able to hire and retain bus drivers as drivers will either refuse to drive in NYC or will opt for positions, not detrimental to their pay, intrastate in other states without such draconian laws.

54.    The essence of the fine is for idling, which as pled above, is not applied to the MTA and NYCTA.

55.    While the fine was designed to apply to companies similar to Best Trails, *i.e.*, private bus companies, Code § 24-163 is protectionist and/or discriminatory in that it applies to commercial bus companies and not, for instance, the MTA and NYCTA, which likely emit same pollutants.

56.    The volume of tickets being issued is a cumulative punishment destroying the private bus industry. In the first quarter alone of this year, Best Trails received fifty one (51) tickets with many more presumably being issued prior to this year and more over the balance of the year. At this pace, Best Trails could be issued as many as two hundred twenty four (224) tickets and be assessed as much as one thousand dollars ($1,000.00) per ticket, which amounts to two hundred twenty four thousand dollars ($224,000.00) for just one year.[3] So far, Best Trails has paid thirty thousand dollars ($30,000.00) in fines. Again, this is not minor idling infractions, but rather a *volume based enforcement scheme* to inflict punishment and, in practice, to single out private bus companies traveling in and out of NYC.

57.    Specifically, The penalties imposed pursuant to Code § 24-163 violate the Excessive Fines Clause of the Eighth Amendment because they are grossly disproportionate to the alleged conduct and, in practice, operate as punitive measures that threaten the viability of Best Trails' business. The fines, which range from three hundred fifty dollars ($350.00) to one thousand dollars ($1,000.00) per violation, are imposed repeatedly and cumulatively, resulting in tens of thousands of dollars in liability for conduct that is, at most, minor and regulatory in nature. The aggregate effect of these penalties, particularly when driven by a system that generates high volumes of violations through incentivized citizen complaints, bears no reasonable relationship to the gravity of the alleged offense or to any demonstrated harm to public health or safety. The

---

[3]    According to Code § 24-178, the Defendants can be assessed a maximum penalty of two thousand dollars ($2,000.00).

excessive nature of these fines is further demonstrated by the volume-based enforcement scheme, which predictably generates repeated penalties for the same type of conduct and, equally important, is imposed without regard to intent, duration, actual harm, or prior notice to the offending company.

58.    Moreover, the harm purportedly caused by Best Trails' emissions is relatively low in light of the fact that it is using ultra-low sulfur diesel fuel and best available technology with respect to its vehicles operating in NYC.

59.    In the absence of declaratory and injunctive relief, Best Trails will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to it by the United States Constitution.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**AGAINST THE DEFENDANTS FOR A TEMPORARY AND**
**PRELIMINARY INJUNCTION**

60.    Plaintiff, Best Trails, repeats and realleges each and every allegation contained in the paragraphs above as if set forth herein.

61.    Best Trails demonstrated a likelihood of success on the merits in that its constitutional rights are and/or continuing to be violated by Defendants.  Best Trails pled and demonstrated that Code § 24-163 violates the Commerce Clause and the Dormant Commerce Clause of the U.S. Constitution (*supra* at ¶¶ 11-29; 30-36). (*See* U.S. Const., Art. I, § 8 cl. 3; 42 U.S.C. § 1983). Further, Best Trails pled and demonstrated that Code § 24-163 violates the procedural and substantive guarantees of the Due Process Clause of the U.S. Constitution and is Void For Vagueness under the of the Due Process Clause of the U.S. Constitution (*supra* at ¶¶ 11-29; 37-42; 43-47). (*See* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983). Moreover, Best Trails pled and demonstrated that Code § 24-163 violates the Equal Protection Clause of the U.S.

Constitution (*supra* at ¶¶ 11-29; 48-50). (*See* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983). Also, Best Trails pled and demonstrated that Code § 24-163 violates the prohibition of the imposition of excess fines in violation of the U.S. Constitution (*supra* at ¶¶ 11-29; 51-59). (*See* U.S. Const. amend. VIII; 42 U.S.C. § 1983).

62. Best Trails will be irreparably harmed if a temporary restraint and preliminary injunction is not granted in that Defendants will continue to enforce and issue violations under Code § 24-163 and negatively impact the health and viability of Best Trails' business in NYC and the surrounding states. The ongoing enforcement will and continues to irreparably harm Best Trails' business, which such enforcement is unconstitutional and detrimental to Best Trails and the public at large.

63. The balance of the equities clearly leans in Best Trails' favor. There is absolutely no harm in enjoining Defendants from enforcing an unconstitutional scheme in the first place. In fact, not to do so, is not only harmful to Best Trails but harmful to the public at large in permitting the enforcement of unconstitutional laws.

64. Accordingly, Best Trails demands an order temporarily and preliminary enjoining Defendants from enforcing Code § 24-163.

65. Remedies, at law, are insufficient to rectify Best Trail's harm.

66. In the absence of declaratory and injunctive relief, Best Trails will continue to be irreparably harmed and to be subjected to this deprivation of rights guaranteed to it by the United States Constitution.

**WHEREFORE,** Plaintiff demands (a) on the First Cause of Action, for a judgment declaring that Code § 24-163 and such other portions of the Code enforcing the same violates the Commerce Clause and the Dormant Commerce Clause of the U.S. Constitution (*see* U.S. Const.,

Art. I, § 8 cl. 3; 42 U.S.C. § 1983); (b) on the Second Cause of Action, for a judgment declaring that Code § 24-163 and such other portions of the Code enforcing the same violates the procedural and substantive guarantees of the Due Process Clause of the U.S. Constitution (*see* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983); (c) on the Third Cause of Action, for a judgment declaring that Code § 24-163 and such other portions of the Code enforcing the same is Void for Vagueness under the Due Process Clause of the U.S. Constitution (*see* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983); (d) on the Fourth Cause of Action, for a judgment declaring that Code § 24-163 and such other portions of the Code enforcing the same violates the Equal Protection Clause of the U.S. Constitution (s*ee* U.S. Const. amend. XIV, § 1; 42 U.S.C. § 1983); (e) on the Fifth Cause of Action, for a judgment declaring that Code § 24-163 and such other portions of the Code enforcing the same violates the prohibition of the imposition of excess fines in violation of the U.S. Constitution (*see* U.S. Const. amend. VIII; 42 U.S.C. § 1983); (f) on the First through the Sixth Causes of Action, for a declaratory judgment and a judgment/order temporarily and preliminarily enjoining Defendants from enforcing Code § 24-163 and other such portions of the Code enforcing the same during the pendency of this action; and (g) on the First through the Fifth Causes of Action, an award of damages to be awarded by the trial court (only if there is a finding that injunctive relief is deemed not available to Best Trails – which it alleges it should be), reasonable costs of attorneys' fees with respect to bringing this action and any other such relief as this Court may deem just and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable.

Date:  New York, New York
       April 9, 2026

                        THOMAS H. HERNDON, JR., LAW PLLC


       By:_____
              Thomas H. Herndon, Jr., Esq. (THH - 9726)
              THOMAS H. HERNDON, JR., LAW PLLC
              *Attorneys for the Plaintiff*
              *Best Trails and Travel Corp.*
              34 Crest Drive
              South Orange, New Jersey 07079
              Telephone No. (646) 699-8814
              Email: therndon@thhjrlaw.com