**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BEST TRAILS AND TRAVEL CORP., <br><br> Plaintiff, <br><br>　　　　v. <br><br> NEW YORK CITY; NEW YORK CITY DEPARTMENTOF ENVIRONMENTAL PROTECTION; LISA F. GARCIA (SOLELY IN HER CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION); NEW YORK CITY POLICE DEPARTMENT; JESSICA S. TISCH (SOLELY IN HER CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY POLICE DEPARTMENT); NEW YORK CITY DEPARTMENT OF PARKS & RECREATION; TRICIA SHIMAMURA (SOLELY IN HER CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF PARKS & RECREATION); NEW YORK CITY DEPARTMENT OF SANITATION; GREGORY ANDERSON (SOLELY IN HIS CAPACITY AS THE COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF SANITATION); AND NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS (OATH), AND <br><br> "JOHN DOE" AND "JANE DOE" NUMBERS 1-50, fictitiously named parties, true names unknown, the parties intended being those persons who succeed, if at all, the above mentioned Commissioners; <br><br>　　　　Defendants. | Civil Action No.: 1:26-cv-02944-CM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REQUEST FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Thomas H. Herndon, Jr., Esq. (TH-9726)
Thomas H. Herndon, Jr., Law PLLC
34 Crest Drive
South Orange, New Jersey 07079
Telephone No.: (646) 699-8814
Email: therndon@thhjrlaw.com
*Attorneys for Plaintiff*
*Best Trails and Travel Corp.*

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS…………………………………………………………….i

TABLE OF AUTHORITIES……………………………………………………........iii

PRELIMINARY STATEMENT……………………………………………….....1

STATEMENT OF FACTS AND PROCEDURAL HISTORY………………………..4

A    Best Trails Is an Interstate Charter Bus Operator with a
Modern, Low-Emission Fleet………………………………………………….4

B    The Challenged Code Provisions and Their Volume-Based Penalty Structure..5

C    The Citizen-Complainant Enforcement Scheme……………………………….5

D    Stale Notices Deprive Best Trails of the Ability to Defend…………………….6

E    OATH's Disclaimer of Jurisdiction Over Constitutional Challenges………….6

F    The Volume of Citations Issued Against Best Trails and Its Aggregate
Exposure………………………………………………………………………..7

G    Disparate Treatment of the MTA and NYCTA and Variances Granted to
Other Motorcoach Operators………………………………………………...8

H    The Standard Imposed by Code § 24-163, As Enforced, Is Vague
and Inconsistent………………………………………………………………...8

I    Harm to Best Trails From Continued Enforcement……………………………9

ARGUMENT……………………………………………………………………..9

I    BEST TRAILS IS ENTITLED TO A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION……………………………….9

a    Legal Standard For Temporary Restraining Order and
Preliminary Injunction……………………………………………………9

II    BEST TRAILS IS ENTITLED TO A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION BECAUSE CODE
§ 24-163 AND ITS ENFORCEMENT SCHEME VIOLATE THE DUE
PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT…………….10

a    Best Trails Is Likely to Succeed on the Merits of Its Due Process Claim .10

i         Code § 24-163's Enforcement Scheme Violates
Procedural Due Process Under the Mathews Factors……………11

     1      Best Trails has a significant private interest at stake…….11

     2      The risk of erroneous deprivation under the current
procedures is extraordinarily high………………………..11

     3      The governmental burden of providing additional
safeguards is minimal…………………………………….13

     4      The statute is also void for vagueness
under the Due Process Clause…………………………13

ii       Code § 24-163 Violates Substantive Due Process………………..14

b        Best Trails Will Suffer Irreparable Harm Absent a Temporary
Restraining Order and Preliminary Injunction……………………………15

c        The Balance of Equities and the Public Interest Strongly Favor
Preliminary Relief……………………………………………………..16

III    BEST TRAILS IS ENTITLED TO A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION BECAUSE CODE
§ 24-163 AND ITS ENFORCEMENT SCHEME VIOLATE THE
COMMERCE CLAUSE AND THE DORMANT COMMERCE
CLAUSE OF THE U.S. CONSTITUTION………………………………17

a        Legal Standard For Temporary Restraining Order and
Preliminary Injunction…………………………………………...17

b        Best Trails Is Likely to Succeed on the Merits of Its
Commerce Clause Claim……………………………………………18

i        Code § 24-163, As Enforced, Discriminates Against Interstate Commerce
in Favor of Intrastate Operators and Is Virtually Per Se Invalid Under the
First Tier of Dormant Commerce Clause Analysis………………18

ii       The City Cannot Carry Its Burden of Justifying Discrimination BY
Arguing That Reasonable Nondiscriminatory Alternatives Do Not
Exist…………….......................................................................20

iii Even Under Pike Balancing, the Burden on Interstate Commerce Is Clearly Excessive in Relation to the Putative Local Benefits…………...........................................................21

c Best Trails Will Suffer Irreparable Harm Absent a Temporary Restraining Order and Preliminary Injunction……………………………22

d The Balance of Equities and the Public Interest Strongly Favor Preliminary Relief………………………………………………………………………23

CONCLUSION…………………………………………………………………………..24

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*AIM Int'l Trading, LLC v. Valcucine SpA* ("*AIM Int'l Trading*"), 188 F. Supp. 2d
384 (S.D.N.Y. 2002)……………………………………………………………………9,18

*A.H. v. French*, 985 F.3d 165 (2d Cir. 2021)…………………………………………..17

*Albany Area Builders Ass'n v. Town of Guilderland*, 141 A.D.2d 293
(3d Dept. 1988)…………………………………………………………………………14

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986)………….18,19

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master
Fund Ltd.* ("*Citigroup Glob.*"), 598 F.3d 30 (2d Cir. 2010)………………………………..10,18

*Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482 (E.D.N.Y. 2021)………….10

*Granholm v. Heald*, 544 U.S. 460 (2005)………………………………………………..20

*Hernandez Aguilar v. Decker*, 482 F. Supp. 3d 139 (S.D.N.Y. 2020)…………………………16

*Jolly v. Coughlin* ("*Jolly*"), 76 F.3d 468 (2d Cir. 1996)………………………………10,15,18,23

*Lowe v. City of Detroit* ("*Lowe*"), 544 F. Supp. 3d 804 (E.D. Mich. 2021)………………19,20,23=

*Mathews v. Eldridge* ("*Mathews*"), 424 U.S. 319 (1976)……………………………………11,13

*Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411 (D. Conn. 2020)……………………………15

*Mercado v. Noem*, 2025 WL 2658779 (S.D.N.Y. Sept. 17, 2025)…………………………….17

*Morales v. Trans World Airlines, Inc.* ("*Morales*"), 504 U.S. 374 (1992)…………………..16,23

*Mullins v. City of N.Y.* ("*Mullins*"), 626 F.3d 47 (2d Cir. 2010)………………………….15

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th
542 (1st Cir. 2022)……………………………………………………………………20

*Nken v. Holder* ("*Nken*"), 556 U.S. 418 (2009)…………………………………..10,16,23

*NPG, LLC v. City of Portland, Maine* ("*NPG, LLC*"), No. 2:20-CV-00208-NT,
2020 WL 4741913 (D. Me. Aug. 14, 2020)……………………………………………19,20

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717 (1984)……………………..14

*People v. Cohen*, 272 N.Y. 319, 5 N.E.2d 835 (1936)……………………..……………….15

*People ex rel. Moskowitz v. Jenkins*, 202 N.Y. 53, 94 N.E. 1065 (1911)………………………15

*Pike v. Bruce Church, Inc.* ("*Pike*"), 397 U.S. 137 (1970)……………………………3,18,21,22

*Satellite Television of N.Y. Assocs. v. Finneran* ("*Satellite Television*"),
579 F. Supp. 1546 (S.D.N.Y. 1984)……………………………………………………11,16

*South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018)……………………………………………19

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas* ("*Tennessee Wine*"),
139 S. Ct. 2449 (2019)……………………………………………………………………18,20

*Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985 (W.D. Mo. 2021)…………….20

*Vermont Railway, Inc. v. Town of Shelburne*, 918 F.3d 82 (2d Cir. 2019)………………………15

*Winter v. Nat. Res. Def. Council, Inc.* ("*Winter*"), 555 U.S. 7 (2008)………………………...10,18

*Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020)………………………………………………..17

*725 Eatery Corp. v. City of New York* ("*725 Eatery Corp.*"), 408 F. Supp.
3d 424 (S.D.N.Y. 2019)………………………………………………………………10,16,17,23

## RULES/CODES

New York City Administrative Code (the "Code") § 24-102………………………………...20,22

Code § 24-163…………………………………………………………………..1-5,7-11,13-21,23,24

Code § 24-163(a)………………………………………………………………………………….7

Code § 24-178…………………………………………………………………………..4-5,7,24

Code § 24-182…………………………………………………………..1,2,4,5,7,8,10,11,12,20,24

Code § 24-182(a)………………………………………………………………………..17,21

Code § 24-182(a)-(e)……………………………………………………………………………….12

Code § 24-182(d)…………………………………………………………………………………5,12

**PRELIMINARY STATEMENT**

Plaintiff, Best Trails and Travel Corp. ("Plaintiff" or "Best Trails"), respectfully submits this memorandum of law (this "Memo") in support of its application (the "Application"), by motion, for a temporary restraining order and preliminary injunction enjoining defendants, New York City (the "City"), the New York City Department of Environmental Protection ("DEP"), the New York City Department of Parks & Recreation ("DPR"), the New York City Police Department ("NYPD"), the New York City Department of Sanitation ("DSNY"), the New York City Office of Administrative Trials and Hearings ("OATH"), and the individually-named Commissioners (collectively, "Defendants"),[1] from enforcing New York City Administrative Code (the "Code") § 24-163, and the citizen-complainant enforcement scheme codified at Code § 24-182, against Best Trails during the pendency of this action.

Although Code § 24-163 is, on its face, a clean-air measure intended to limit bus idling in New York City, in actual operation it has become something else entirely: a volume-driven revenue regime that, in less than a year, has produced over fifty (50) notices of violation against at least one interstate operator, covering approximately thirty-one (31) different drivers, and now threatens annual exposure approaching two hundred twenty-four thousand dollars ($224,000.00)

---

[1]    Lisa F. Garcia ("Garcia"), Jessica S. Tisch ("Tisch"), Tricia Shimamura ("Shimamura"), and Gregory Anderson ("Anderson"), named solely in their capacity as Commissioners of the respective City Department, are sometimes collectively referred to herein as the ("Commissioners"). Each Defendant acted under the color of law in that they are a state actor, acted within their official duties and/or a private actor misused state authority in violating Best Trails' federally protective right as set forth herein and is the cause of the injury alleged by Best Trails. Specifically here, the citizen complaints, coupled with the financial incentives, delayed service on Best Trails, and providing no opportunity to cross-examine the complainants, all together constitute an official policy, widespread custom, and/or practices that the City Defendants knowingly maintained and ratified and the Commissioners, in their capacity as the heads of the City Defendants, so too knowingly maintained and ratified such official policy, widespread custom, and/or practices.

per year, against a small, independent charter bus company that operates a modern, near-zero-emission fleet certified by the U.S. Environmental Protection Agency and the California Air Resources Board. The City does not actually enforce Code § 24-163 against the largest in-state contributors to bus-related emissions (*i.e.* the Metropolitan Transportation Authority ("MTA") and the New York City Transit Authority ("NYCTA"), whose buses are routinely observed idling at depots, bus stops, and along established routes)). Instead, the City has, in practice, deputized untrained laypersons (financially compensated under Code § 24-182) to record alleged violations against private, interstate operators such as Best Trails, and then has built in adjudicative process around those untested layperson recordings that lack the most basic procedural protections the Constitution requires.

As demonstrated in greater detail, *infra*, that scheme cannot survive constitutional scrutiny. Code § 24-163, as enforced through the citizen-complainant regime, violates both the procedural and substantive guarantees of the Due Process Clause of the Fourteenth Amendment, and is independently void for vagueness. The procedures employed by Defendants rely almost exclusively on unverified recordings submitted by untrained, financially-incentivized private individuals, do not require the complainant to appear or submit to cross-examination, and produce notices of violation served on Best Trails as much as a year after the alleged event. OATH has itself acknowledged that it lacks jurisdiction to hear the constitutional challenges Best Trails raises, leaving Best Trails without any meaningful administrative forum in which to test the procedures used against it. Under any application of the law, the risk of erroneous deprivation is extraordinarily high, the marginal burden on the City of providing minimally adequate process is negligible, and the private interest at stake (*i.e.* the continued operation of Best Trails' business) is concrete and substantial.

Code § 24-163, as enforced, also violates the Commerce Clause and the dormant Commerce Clause of the United States Constitution. The citizen-complainant program, in operation, exempts large in-state public fleets (*i.e.* the MTA and the NYCTA, which on information and belief, emit at least as many pollutants as private operators) and has instead been directed at private, interstate motorcoach operators such as Best Trails (*i.e.* an operator that routinely travels *via* interstate to other states, *e.g.*, New Jersey). The City has, on information and belief, also granted variances to other motorcoach operators based on operational realities and technological limitations, further underscoring both the discriminatory purpose and the discriminatory effect of the enforcement scheme. The City cannot carry its burden of showing that this discriminatory regime advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. The Code itself reflects a policy preference for ultra-low sulfur diesel fuel and best-available technology (*i.e.* the very technology Best Trails has already adopted). Even if the regime were facially evenhanded, the burden it imposes on interstate commerce is clearly excessive in relation to the putative local benefits, and it independently fails the balancing test set forth in *Pike v. Bruce Church, Inc.* ("*Pike*"), 397 U.S. 137 (1970).

Best Trails is also suffering, and will continue to suffer, irreparable harm absent preliminary relief. The threatened violation of constitutional rights itself is irreparable harm in this Circuit, and, in any event, the volume-based fines accumulating against Best Trails (*i.e.* from $350 to a $2,000 statutory maximum per violation, imposed cumulatively and without regard to intent, duration, or actual harm) directly threaten the viability of Best Trails' interstate business. Absent injunctive relief, Best Trails faces the precise "Hobson's choice" the Supreme Court has identified as irreparable: either continue operating in New York City and expose itself to potentially crippling, accumulating liability under an unconstitutional regime, or curtail or abandon its lawful

3

interstate operations in New York City to avoid that exposure. The balance of equities and the public interest factors, which merge where the government is the defendant, weigh decisively in Best Trails' favor: the City has no cognizable interest in the enforcement of an unconstitutional law.

For the reasons set forth in more detail *infra*, Best Trails respectfully requests that this Court grant its Application (a) temporarily and preliminarily enjoining Defendants from enforcing Code §§ 24-163, 24-178, 24-182, and other such portions of the Code, including the Citizen-Complainant Enforcement apparatus as against, at minimum, it, during the pendency of this action; and (b) for such other relief as this Court may deem just and appropriate.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   Best Trails Is an Interstate Charter Bus Operator with a Modern, Low-Emission Fleet.

For a full recitation of the underlying facts alleged herein, Plaintiff respectfully directs the Court to plaintiff's complaint (the "Complaint")[ECF # 4], dated April 9, 2026, and the accompanying certification Aly Goldenberg (the "Goldenberg Decl."), dated May 22, 2026.

Plaintiff, Best Trails and Travel Corp., is a New York domestic corporation with its principal place of business at 5 Sigourney Street, Brooklyn, New York.  Goldenberg Decl. at ¶ 4. Best Trails is a private charter bus company that routinely operates in interstate commerce, including by transporting passengers between New York City and points in New Jersey and other neighboring states.  Goldenberg Decl. at ¶ 5.

Best Trails operates a modern fleet designed to comply with applicable emissions and environmental standards.  Goldenberg Decl. at ¶ 6.  Many of its vehicles are certified by the U.S. Environmental Protection Agency and the California Air Resources Board as near-zero-emission vehicles, and use available technology to meet environmental needs.  Goldenberg Decl. at ¶ 6.

4

These features are standard within the charter bus industry and are intended to minimize emissions during routine operations.  Goldenberg Decl. at ¶ 6.

**B.    The Challenged Code Provisions and Their Volume-Based Penalty Structure.**

Best Trails challenges Code § 24-163, which restricts idling of motor vehicles, including buses, in New York City, and Code § 24-178, which sets the civil penalties applicable to violations of Code § 24-163.  Goldenberg Decl. at ¶ 8.  Each alleged violation of Code § 24-163 is subject to a civil penalty ranging from $350 to a $2,000 statutory maximum per violation, imposed on a per-incident basis and without regard to intent, duration, actual harm, or whether the cited operator had prior notice that its conduct was perceived as violating the Code.  Goldenberg Decl. at ¶ 9. The same alleged conduct can give rise to repeated, cumulative penalties imposed against the same operator across many separate notices of violation, with each notice carrying its own civil penalty of up to $2,000.  Goldenberg Decl. at ¶ 10.

**C.    The Citizen-Complainant Enforcement Scheme.**

Code § 24-163 is enforced principally through the citizen-complainant scheme codified at Code § 24-182.  Goldenberg Decl. at ¶ 11.  Under that scheme, private individuals are permitted to record alleged idling violations and submit those recordings to DEP, and, if DEP does not act on the complaint within a defined period, the complainant may serve a notice of violation directly upon the alleged violator and file it with OATH.  Goldenberg Decl. at ¶ 11.  Code § 24-182(d) and (e) entitle the citizen-complainant to a percentage of any civil penalty ultimately collected (25% in proceedings brought by DEP, and 50% in proceedings commenced by the complainant), creating a direct financial incentive to file complaints regardless of the reliability of the underlying recording.  Goldenberg Decl. at ¶ 12.

The citizen-complainants who submit recordings against Best Trails are not trained in

emissions enforcement, do not operate under standardized procedures, and do not use calibrated equipment capable of verifying idling time or actual emissions; the scheme itself, on its face, does not require any training of the citizen-complainants. Goldenberg Decl. at ¶ 13. The recordings on which these adjudications turn are frequently incomplete or unreliable: many lack clear audio (due to ambient noise), making it impossible to determine whether an engine was actually running; others are recorded from such a distance, or are so unstable, obstructed, or poorly framed, that the identity of the vehicle alleged to be idling cannot be confirmed with certainty. Goldenberg Decl. at ¶ 14. The citizen-complainant is not required to appear at the OATH hearing, and Best Trails is therefore afforded no opportunity to question or cross-examine the individual whose untested submission is the sole basis for the proposed penalty. Goldenberg Decl. at ¶ 15.

**D.      Stale Notices Deprive Best Trails of the Ability to Defend.**

Notices of violation are routinely served on Best Trails approximately one (1) year after the date of the alleged incident; that lengthy delay is a recurring feature of the citizen-complainant program. Goldenberg Decl. at ¶ 16. By the time Best Trails receives a notice, it makes its defense significantly harder due to the passage of time. Goldenberg Decl. at ¶ 17. The combined effect of these procedural features (*i.e.* reliance on untested layperson recordings, no requirement that the complainant appear or be cross-examined, the absence of sworn testimony, lengthy delays in service of notice, and the complainant's pecuniary interest) creates an unacceptably high risk that Best Trails will be penalized in error and stripped of any practical ability to defend itself on the merits. Goldenberg Decl. at ¶ 19.

**E.      OATH's Disclaimer of Jurisdiction Over Constitutional Challenges.**

OATH has held, in matters involving Best Trails, that it does not have jurisdiction to entertain the constitutional challenges Best Trails raises in this action. Goldenberg Decl. at ¶ 20.

Specifically, OATH has ruled in Best Trails' matters that a "citizen-complainant's receipt of a financial award is irrelevant to a violation of Code § 24-163(a) because Code § 24-182 specifically authorized that complaint filing process and subsequent compensation," and that "OATH is not the proper forum for constitutional claims or selective enforcement." Goldenberg Decl. at ¶ 20. As a result, Best Trails has no meaningful administrative avenue in which to test the citizen-complainant procedures used against it, and has been left to absorb mounting penalties imposed through a process that the adjudicator itself disclaims authority to constitutionally review. Goldenberg Decl. at ¶ 21.

F.    **The Volume of Citations Issued Against Best Trails and Its Aggregate Exposure.**

Over approximately the last three (3) years, Best Trails has received approximately one hundred seventeen (117) notices of violation under Code § 24-163, with fines on individual notices ranging from $350 up to nearly $1,000 per violation and a statutory maximum of $2,000 per violation under Code § 24-178. Goldenberg Decl. at ¶ 22. Best Trails has paid out approximately thirty thousand dollars ($30,000) in fines, with approximately forty-four (44) notices still pending and unassessed. Goldenberg Decl. at ¶ 23.

In the first quarter of this year alone, Best Trails received fifty-one (51) notices of violation under Code § 24-163; many of those notices were issued in connection with trips engaged in interstate travel, and the fifty-one (51) notices covered thirty-one (31) different Best Trails drivers. Goldenberg Decl. at ¶ 24. At that rate, Best Trails could receive as many as two hundred twenty-four (224) notices of violation in a single year, which, if assessed near the $1,000-per-violation level being imposed on recent tickets, would result in annual fines approaching two hundred twenty-four thousand dollars ($224,000) for one year alone, in addition to fines accumulating on tickets from prior years not yet adjudicated. Goldenberg Decl. at ¶ 26.

7

G.    **Disparate Treatment of the MTA and NYCTA and Variances Granted to Other Motorcoach Operators.**

The MTA and NYCTA operate large fleets of buses throughout New York City, and their buses are routinely observed idling at depots, bus stops, schools, and along established routes as part of their regular operations. Goldenberg Decl. at ¶ 27. Despite this prevalence, MTA and NYCTA buses are not cited under the Code § 24-182 citizen-complainant program at anything approaching the frequency Best Trails is cited; enforcement through that program is, in actual operation, directed at private operators such as Best Trails. Goldenberg Decl. at ¶ 28. Upon information and belief, the MTA and the NYCTA emit at least the same volume of pollutants, if not more, as private bus operators such as Best Trails. Goldenberg Decl. at ¶ 29.

Upon information and belief, the City has granted, or is in the process of granting, variances from Code § 24-163 to other motorcoach operators based on "operational realities and technological limitations," further demonstrating that strict compliance is not feasible under certain conditions and underscoring the arbitrary and inconsistent manner in which Code § 24-163 is enforced. Goldenberg Decl. at ¶ 30.

H.    **The Standard Imposed by Code § 24-163, As Enforced, Is Vague and Inconsistent.**

As enforced, Code § 24-163 does not provide bus operators with fair notice of what conduct is prohibited and does not provide objective standards for those who apply it. Goldenberg Decl. at ¶ 31. In particular, the statute (a) makes no operational distinction between bus operators using ultra-low sulfur diesel fuel and best-available technology and those who do not; (b) provides a passenger-comfort exception with no workable standard for determining, from ground level, whether passengers are inside a bus (particularly one with tinted windows), what an "appropriate" temperature is, or how long would be needed to reach it; and (c) deputizes laypersons without

8

training, calibrated equipment, or oversight to record alleged violations and then financially incentivizes those laypersons to enforce the Code.  Goldenberg Decl. at ¶ 31.

### I.    Harm to Best Trails From Continued Enforcement.

The continued enforcement of Code § 24-163 through the citizen-complainant scheme is threatening the viability of Best Trails' business in New York City and the surrounding states, and the recurring, volume-based fines directly threaten Best Trails' ability to continue serving interstate routes that depend on access to New York City.  Goldenberg Decl. at ¶ 32.  Absent injunctive relief, Best Trails will be forced to choose between continuing to operate in New York City and exposing itself to a continuing stream of citations and accumulating penalties imposed through a regime that lacks basic procedural safeguards, or curtailing or ceasing its lawful charter operations in New York City to avoid that exposure.  Goldenberg Decl. at ¶ 33.  The volume-based enforcement scheme is also impeding Best Trails' ability to recruit and retain qualified drivers for routes into and out of New York City, as drivers are increasingly reluctant to take New York City assignments because of the perceived likelihood of being cited and the practical impossibility of defending those citations.  Goldenberg Decl. at ¶ 34.

### ARGUMENT

### I.    BEST TRAILS IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

#### a.  Legal Standard For Temporary Restraining Order and Preliminary Injunction.

Courts apply the same standard to motions for a temporary restraining order and motions for a preliminary injunction.  *AIM Int'l Trading, LLC v. Valcucine SpA* ("*AIM Int'l Trading*"), 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002).  To obtain such relief, the movant must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in

9

the public interest.  *Winter v. Nat. Res. Def. Council, Inc.* ("*Winter*"), 555 U.S. 7 (2008); *Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 498 (E.D.N.Y. 2021).  In the Second Circuit, preliminary injunctive relief is also warranted where the movant demonstrates a threat of irreparable harm and "sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the plaintiff's favor."  *Jolly v. Coughlin* ("*Jolly*"), 76 F.3d 468, 473 (2d Cir. 1996); *see also Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.* ("*Citigroup Glob.*"), 598 F.3d 30, 34–35 (2d Cir. 2010) ("serious questions" standard applies where the costs of denying the injunction outweigh the benefits).  Where, as here, the government is the defendant, the "balance of hardships" and "public interest" factors merge.  *725 Eatery Corp. v. City of New York* ("*725 Eatery Corp.*"), 408 F. Supp. 3d 424, 469 (S.D.N.Y. 2019); *see also Nken v. Holder* ("*Nken*"), 556 U.S. 418, 435 (2009).  As demonstrated below, each factor weighs decisively in favor of preliminary relief.

**II.     BEST TRAILS IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BECAUSE CODE § 24-163 AND ITS ENFORCEMENT SCHEME VIOLATE THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.**

**a.  Best Trails Is Likely to Succeed on the Merits of Its Due Process Claim.**

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The Due Process Clause has both procedural and substantive components, each of which Code § 24-163 and the citizen-complainant enforcement regime codified in Code § 24-182 independently violate.  Code § 24-163, as written and as enforced, denies Best Trails the basic procedural protections the Constitution demands before substantial, recurring monetary penalties may be imposed, and it operates in such an arbitrary, irrational, and protectionist manner that it cannot survive even the most deferential substantive review.

10

### i. Code § 24-163's Enforcement Scheme Violates Procedural Due Process Under the Mathews Factors.

The Supreme Court's controlling framework for evaluating procedural due process claims requires a court to balance three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge* ("*Mathews*"), 424 U.S. 319 (1976). Each *Mathews* factor weighs heavily in Best Trails' favor.

### 1. Best Trails has a significant private interest at stake.

Best Trails' private interest is substantial and concrete. Code § 24-163, as enforced through Code § 24-182, exposes Best Trails to recurring fines ranging from $350 to $1,000 per alleged violation, imposed in volume and without regard to intent, duration, actual harm, or prior notice. *See* Goldenberg Decl. at ¶¶ 9–10, 16. Those penalties are not isolated; they accumulate across an enforcement scheme that, as alleged, has yielded violations "in the hundreds" against private bus companies and threatens Best Trails' continued ability to operate its business and to engage in interstate commerce. Goldenberg Decl. at ¶¶ 16, 19, 22. Where, as here, a regulatory scheme imposes daily and per-incident civil penalties that directly threaten the existence of a business, courts have repeatedly recognized the private interest at stake as significant. *Cf. Satellite Television of N.Y. Assocs. v. Finneran* ("*Satellite Television*"), 579 F. Supp. 1546, 1551 (S.D.N.Y. 1984) (recognizing the gravity of a $2,000-per-day fine for violating a challenged law).

### 2. The risk of erroneous deprivation under the current procedures is extraordinarily high.

The procedures employed by Defendants invite, rather than minimize, erroneous

11

deprivations.    Code § 24-182 deputizes private individuals, with no training, no calibrated equipment, no standardized procedures, and a direct financial stake in the outcome, to submit recordings as the sole evidentiary basis for civil penalties.  Goldenberg Decl. at ¶¶ 11–15.  The recordings on which these adjudications turn are routinely incomplete or unreliable: some lack clear audio (due to ambient noise), making it impossible to determine whether an engine was actually running; others are recorded from such a distance, or are so unstable or obstructed, that the identity of the vehicle cannot be confirmed.  Goldenberg Decl. at ¶ 14.  These deficiencies go to the heart of whether the elements of an idling violation can be established at all.

Compounding those evidentiary problems, the citizen-complainant is not required to appear at the hearing, *see* Code § 24-182, and Best Trails is therefore afforded no opportunity to question or cross-examine the individual who submitted the recording, to test the accuracy, completeness, or circumstances of its production, or to confront the witness whose untested submission is the basis for the penalty.  Goldenberg Decl. at ¶ 15.  Compounding the problem further, notices of violation are often served as much as a year after the alleged incident, depriving Best Trails of access to driver recollection and other evidence necessary to mount a proper defense. Goldenberg Decl. at ¶¶ 16–17.  And because the layperson-complainant is entitled to receive a percentage of any civil penalty collected, *see* Code § 24-182(d)–(e), the procedure embeds a financial incentive to file complaints regardless of their reliability, an incentive entirely absent from procedures that historically have satisfied due process.  Goldenberg Decl. at ¶ 12.

Together, these procedural features (*i.e.* reliance on untested recordings, the absence of cross-examination, the absence of sworn testimony, substantial delays in notice, and the pecuniary interest of the complainant) create an unacceptably high risk of erroneous deprivation. Goldenberg Decl. at ¶ 19.  OATH has acknowledged the limits of its forum and has held that it

12

lacks jurisdiction over the constitutional challenges Best Trails raises, leaving Best Trails without any meaningful administrative avenue to test these procedures in place. Goldenberg Decl. at ¶¶ 20–21. That gap is itself a procedural deficiency: Best Trails is left to absorb mounting penalties imposed through a system that the adjudicator itself disclaims authority to constitutionally review such claims.

### 3. The governmental burden of providing additional safeguards is minimal.

The marginal burden of providing meaningful procedural protections is minimal in comparison to the risk of error described above. Requiring timely notice, basic and neutral evidentiary standards, and the in-person appearance of complainants, whose recordings are the only proof offered against an accused, are all commonplace features of civil and administrative adjudication. Goldenberg Decl. at ¶ 19. Defendants impose no such evidentiary requirements on themselves. Having complainants appear and testify, disallowing stale recordings, and recognizing the pecuniary bias of paid complainants would not meaningfully impede the City's asserted air-quality interest. Indeed, that interest is fully served by traditional enforcement by trained personnel using calibrated equipment. Goldenberg Decl. at ¶ 13. The Mathews factors thus weigh decisively in Best Trails' favor, and Code § 24-163, as enforced, fails to provide constitutionally adequate process.

### 4. The statute is also void for vagueness under the Due Process Clause.

Code § 24-163 independently violates due process because it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and fails to provide explicit standards for those who apply it, thereby encouraging arbitrary and discriminatory enforcement. Goldenberg Decl. at ¶ 31. As claimed, the statute (a) lumps together operators

using ultra-low sulfur diesel fuel and best available technology with those who do not; (b) recites a passenger-comfort exception with no workable standard for ascertaining who is inside a bus (especially one with tinted windows) or what "appropriate temperature" means or how long is needed to reach it; and (d) deputizes laypersons without meaningful standards, training, or oversight, and then incentivizes them monetarily to enforce that vague command. Goldenberg Decl. at ¶ 31. Each of these defects, and certainly their cumulative effect, is fatal under the void-for-vagueness doctrine.

### ii.  Code § 24-163 Violates Substantive Due Process.

The Due Process Clause also forbids arbitrary government action that bears no rational relationship to a legitimate governmental interest. *Cf. Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984) (superseded, on other grounds, describing the Due Process Clause's rational-basis review of economic legislation, though in the context of retroactive economic legislation). Best Trails has alleged in detail that, in operation, Code § 24-163 does not rationally further the City's stated objective of improving air quality but instead arbitrarily punishes a narrow class of regulated private actors while exempting governmental operators that, on information and belief, emit at least as many pollutants. Goldenberg Decl. at ¶¶ 6, 27–30. The statute's carveouts and exemptions, including its de facto exemption of the MTA and NYCTA and the City's grant of variances to other motorcoach operators based on "operational realities and technological limitations," underscore the arbitrary and inconsistent manner in which Code § 24-163 is enforced. Cplt. at ¶ 35 & n.2.

New York courts have invalidated local laws as exceeding the police power and lacking a rational relation to legitimate public ends in circumstances analogous to those alleged here. *See, e.g., Albany Area Builders Ass'n v. Town of Guilderland*, 141 A.D.2d 293, 298 (3d Dept. 1988)

(local law fails where it bears only a "tenuous relationship" to public health, safety, or welfare, and "rais[es] revenues" rather than directly furthering a permissible objective), aff'd on other grounds, 74 N.Y.2d 372, 379 (1989); *People v. Cohen*, 272 N.Y. 319, 5 N.E.2d 835 (N.Y. 1936) (invalidating local law "designed for the convenience and interest of a special class" as not a valid exercise of police power); *People ex rel. Moskowitz v. Jenkins*, 202 N.Y. 53, 94 N.E. 1065, 1067 (1911) (striking local law that "protect[ed] local [businesses] from competition"); *Vermont Railway, Inc. v. Town of Shelburne*, 918 F.3d 82, 88 (2d Cir. 2019) (affirming permanent injunction against local law that was an invalid exercise of the police power).  As alleged, the Code § 24-163 operates in exactly that constitutionally suspect manner: it predictably generates volume-based penalties against private bus companies, imposes them without regard to intent, duration, actual harm, or prior notice, and ultimately functions to fill municipal coffers and benefit a special class rather than to vindicate the City's asserted clean-air purpose.  Goldenberg Decl. at ¶¶ 9–10, 22–26, 27–30.  That is the antithesis of rational, reasoned governance, and it cannot satisfy substantive due process.

### b. Best Trails Will Suffer Irreparable Harm Absent a Temporary Restraining Order and Preliminary Injunction.

To obtain preliminary injunctive relief, the Second Circuit requires only "a threat of irreparable harm, not that irreparable harm already [has] occurred."  *Mullins v. City of N.Y.* ("*Mullins*"), 626 F.3d 47, 55 (2d Cir. 2010).  Best Trails satisfies that standard for at least three independent reasons.

*First*, Best Trails faces the imminent deprivation of its constitutional rights under the Due Process Clause.  It is settled law in this Circuit that the threatened violation of constitutional rights may, under certain circumstances, trigger irreparable harm. *Jolly*, 76 F.3d at 482; *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. 2020).  Each day that Code § 24-163 is enforced

15

through the citizen-complainant regime, Best Trails is subjected to adjudications and penalties imposed without the procedural protections the Constitution demands.

*Second*, the ongoing enforcement of Code § 24-163 inflicts business and reputational harm that money damages cannot adequately repair.  Best Trails faces volume-based penalties at rates ranging from $350 to a $2,000 maximum per violation that, as alleged, threaten the health and viability of its business in New York City and the surrounding states.  Goldenberg Decl. at ¶¶ 9, 32.  Courts in this District have recognized that recurring per-violation fines of this magnitude "readily" constitute irreparable harm because they place a regulated business in an untenable position.  *Satellite Television*, 579 F. Supp. 1546, 1551 (S.D.N.Y. 1984) (finding irreparable harm in light of $2,000-per-day fine for violating challenged law).

*Third*, absent preliminary relief, Best Trails faces the precise "Hobson's choice" the Supreme Court has identified as irreparable: it can either "continually violate" the challenged law and "expose [itself] to potentially huge liability" in the form of accumulating, volume-based fines, or it can "suffer the injury of obeying the law during the pendency of" this litigation by curtailing or ceasing its lawful business operations in New York City.  *Morales v. Trans World Airlines, Inc.* ("*Morales*"), 504 U.S. 374, 381 (1992).  Preliminary injunctive relief is designed precisely to prevent regulated parties from being forced into these impossible choices while the constitutional validity of an ordinance is being litigated.

### c.  The Balance of Equities and the Public Interest Strongly Favor Preliminary Relief.

Because the City is the defendant, the balance-of-equities and public-interest factors merge. *Nken*, 556 U.S. 418, 435 (2009); *Hernandez Aguilar v. Decker*, 482 F. Supp. 3d 139, 150 (S.D.N.Y. 2020); *725 Eatery Corp.*, 408 F. Supp. 3d at 469.  Both factors decisively favor Best Trails.

It is long settled that "the City does not have an interest in the enforcement of an

unconstitutional law." *725 Eatery Corp.*, 408 F. Supp. 3d at 470; *Mercado v. Noem*, 2025 WL 2658779, at *36 (S.D.N.Y. Sept. 17, 2025) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights and, however inconvenient compliance may be, the government suffers no harm from an injunction that merely ends unconstitutional practices or ensures that constitutional standards are implemented."). And to the extent the City may claim some non-trivial cost from enjoining enforcement of the citizen-complainant regime, "that is a cost that the [City] chose to bear" when it enacted the challenged scheme and burdened constitutional rights. *Yang v. Kosinski*, 960 F.3d 119, 136 (2d Cir. 2020).

By contrast, the equities tip heavily toward Best Trails. Absent an injunction, Best Trails will continue to face an unconstitutional enforcement regime that exposes it to mounting penalties imposed through procedures that lack basic safeguards. An injunction, by contrast, would impose no legitimate burden on the City: traditional enforcement by trained DEP personnel using calibrated equipment and narrowly tailored law may be available, *see* Code § 24-182(a), and the City's clean-air objective is not advanced by penalties imposed in error or based on unreliable, untested recordings. Goldenberg Decl. at ¶¶ 13–15. Where, as here, a plaintiff demonstrates a likely constitutional violation, the Second Circuit has repeatedly held that both the balance-of-equities and public-interest factors support preliminary injunctive relief. *A.H. v. French*, 985 F.3d 165, 184 (2d Cir. 2021).

III.   **BEST TRAILS IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BECAUSE CODE § 24-163 AND ITS ENFORCEMENT SCHEME VIOLATE THE COMMERCE CLAUSE AND THE DORMANT COMMERCE CLAUSE OF THE U.S. CONSTITUTION.**

   a.   **Legal Standard For Temporary Restraining Order and Preliminary Injunction.**

The legal standard governing this motion is set forth in Point I, *supra*, and is incorporated

17

by reference.  *See AIM Int'l Trading*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002); *Winter*, 555 U.S. 7 (2008); *Jolly*, 76 F.3d 468, 473 (2d Cir. 1996); *Citigroup Glob.*, 598 F.3d 30, 34–35 (2d Cir. 2010).  As demonstrated below, Best Trails independently satisfies that standard with respect to its Commerce Clause and Dormant Commerce Clause claims.

### b.  Best Trails Is Likely to Succeed on the Merits of Its Commerce Clause Claim.

The Commerce Clause confers on Congress the power "[t]o regulate Commerce … among the several States."  U.S. Const. art. I, § 8, cl. 3.  That affirmative grant carries a negative implication, commonly called the dormant Commerce Clause, that limits the power of state and local governments to enact or enforce laws that discriminate against or unduly burden interstate commerce.  Courts evaluate dormant Commerce Clause challenges under a two-tier framework. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578–79 (1986).  At the first tier, a court asks whether a state or local law "directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests"; if so, the law is virtually per se invalid and courts "generally str[ike] down the statute without further inquiry."  *Id.* at 579; *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 534 (2019).  At the second tier, even an evenhanded statute regulating to effectuate a legitimate local public interest will be struck down where "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike*, 397 U.S. 137, 142 (1970). Code § 24-163, as enforced, fails both tiers.

### i.  Code § 24-163, As Enforced, Discriminates Against Interstate Commerce in Favor of Intrastate Operators and Is Virtually Per Se Invalid Under the First Tier of Dormant Commerce Clause Analysis.

As argued, Code § 24-163 falls squarely within the first tier of dormant Commerce Clause review because, in operation, its "effect is to favor in-state economic interests over out-of-state

interests." *Brown-Forman*, 476 U.S. at 579. Best Trails is a private, interstate motorcoach operator located in Brooklyn that "routinely travels via interstate to other states, e.g., New Jersey." Goldenberg Decl. at ¶¶ 4–5. Of the fifty-one violations Best Trails received in the first quarter of this year alone, "many were for trips engaged in interstate travel" and covered thirty-one different drivers. Goldenberg Decl. at ¶ 24. The intrastate operators that compete with Best Trails for terminal space, layover capacity, and customer routes (principally the MTA and NYCTA) are, in practice, exempted from the very regime that has subjected Best Trails to citations "in the hundreds" and tens of thousands of dollars in fines. Goldenberg Decl. at ¶¶ 22–23, 27–30. As alleged, public entities that "operate large fleets of buses throughout New York City" and whose buses are "routinely observed idling at depots, bus stops, and schools as part of their regular operations" are "not cited under the citizen complaint program," while "[e]nforcement of alleged idling violations through that program is directed at private operators, including Best Trails." Goldenberg Decl. at ¶¶ 27–28. That disparate-treatment pattern, coupled with the City's grant of variances to other motorcoach operators based on "operational realities and technological limitations," underscores both the discriminatory purpose and the discriminatory effect of the enforcement regime. Cplt. at ¶ 35 & n.2.

"State laws that discriminate against interstate commerce face 'a virtually per se rule of invalidity.'" *NPG, LLC v. City of Portland, Maine* ("*NPG, LLC*"), No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) (quoting *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 173 (2018)); *see also Lowe v. City of Detroit* ("*Lowe*"), 544 F. Supp. 3d 804, 812 (E.D. Mich. 2021) ("'[a] discriminatory law is virtually per se invalid . . . .'"). That rule is not academic. Federal courts have repeatedly enjoined regulatory regimes that, like Code § 24-163 in operation, tilt the playing field against out-of-state economic actors and in favor of in-state operators. *See,*

19

*e.g., Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542 (1st Cir. 2022); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 990 (W.D. Mo. 2021); *Lowe*, 544 F. Supp. 3d at 813; *NPG, LLC*, 2020 WL 4741913, at \*6.  Code § 24-163, as pled, is no less suspect because it is an enforcement regime that, in actual operation, exempts in-state public fleets while subjecting interstate private operators to volume-based penalties imposed through procedures that, as discussed in Points I & II, *supra*, lack basic constitutional safeguards.

### ii.   The City Cannot Carry Its Burden of Justifying Discrimination By Arguing that Reasonable Nondiscriminatory Alternatives Do Not Exist.

Once a state or local law falls within the first tier, the burden shifts to the government to prove that the law "advance[s] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Tennessee Wine*, 588 U.S. at 540 (quoting *Granholm v. Heald*, 544 U.S. 460, 489 (2005)).  The City cannot carry that burden here for two independent reasons.

*First*, the City's asserted local purpose (*i.e.* improving air quality and curbing harmful emissions, *see* Code § 24-102) is not, in operation, what Code § 24-163 advances.  As claimed, the citizen-complainant regime does not target the largest sources of bus-related emissions in the City; it targets private, interstate operators while leaving MTA and NYCTA fleets that, "upon information and belief, emit the same, if not more, pollutants in the air" essentially untouched. Goldenberg Decl. at ¶¶ 28–29.  A law that exempts the largest in-state contributors to the very harm it purports to address is not "demonstrably justified by a valid factor unrelated to economic protectionism."  Goldenberg Decl. at ¶ 29.

Second, even taking the City's air-quality interest at face value, multiple reasonable nondiscriminatory alternatives are evident from the face of the complaint.  Code § 24-182 already authorizes traditional enforcement by trained DEP personnel using calibrated equipment, *see* Code

20

§ 24-182(a); Goldenberg Decl. at ¶ 13, an alternative that can be (and is) applied evenhandedly across operators and imposes no greater burden on out-of-state actors than on in-state actors. The City could likewise pursue its clean-air objectives through neutral incentives, encouraging or requiring all bus operators, public and private alike, to invest in ultra-low sulfur diesel fuel and best available technology consistent with the City's own stated policy direction. Goldenberg Decl. at ¶ 6. What the City may not do is operate, "in the guise of protecting air quality," a regime that either has a "harboring discriminatory purpose or impact, *i.e.*, to only apply to private bus companies since the MTA and NYCTA are outside NYC's jurisdiction." Goldenberg Decl. at ¶¶ 28–30. To the best of Best Trails' knowledge, no court has approved a discriminatory enforcement regime of this kind where evenhanded, nondiscriminatory alternatives plainly exist.

### iii. Even Under Pike Balancing, the Burden on Interstate Commerce Is Clearly Excessive in Relation to the Putative Local Benefits.

Even if Code § 24-163, as enforced, did not fall within the first tier of dormant Commerce Clause analysis, the statute independently fails the second-tier balancing test articulated in *Pike*, 397 U.S. 137, 142 (1970). Under *Pike*, a facially neutral statute that "regulates evenhandedly to effectuate a legitimate local public interest, and [whose] effects on interstate commerce are only incidental . . . will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.*

The burden on interstate commerce here is severe and on the record. Best Trails operates a charter and interstate motorcoach business out of Brooklyn that "routinely travels via interstate to other states." Goldenberg Decl. at ¶ 5. Over the last three years, Best Trails has received hundreds of citations under Code § 24-163; in the first quarter of this year alone, it received fifty-one violations covering thirty-one different drivers, "many [of which] were for trips engaged in interstate travel." Goldenberg Decl. at ¶ 24. Fines range from $350 to a $1,000 (with a $2,000

statutory maximum per violation), *see* Goldenberg Decl. at ¶¶ 9–10, and the volume-based, citizen-driven enforcement scheme, as pled, (a) "discourages private bus companies . . . from traveling in and out of the state, or, if they do, creat[es] a financial disincentive or hardship for them to do so"; (b) "discourages [them] from engaging in tourism in-and-out of NYC and the transportation of persons in and out of NYC"; (c) "creates uncertainty as to when and how they will be ticketed and, if they are ticketed, the mechanisms to defend themselves in a fair tribunal"; and (d) "discourages [them] from being able to hire and retain bus drivers" who "will either refuse to drive in NYC or will opt for positions . . . intrastate in other states without such draconian laws." Cplt. at ¶ 33. The complaint further alleges that the regime "impedes the marketing of Best Trails' services in NYC and the interstate marketplace." Cplt. at ¶ 34. At the rate of issuance alleged, Best Trails alone faces potential annual exposure approaching $224,000, a level of liability that, as alleged, "will make it virtually impossible for Best Trails to engage in commerce in New York City." Goldenberg Decl. at ¶ 26.

The local benefits on the other side of the *Pike* scale, by contrast, are illusory at best. The Code purports to advance air quality, *see* Code § 24-102, but its enforcement, as alleged, does not reach the largest in-state contributors to that harm. Goldenberg Decl. at ¶¶ 28–29. To the extent the City asserts benefits from the citizen-complainant program specifically, those benefits are diminished, not enhanced, by the program's reliance on untrained, financially incentivized lay complainants submitting recordings that are, as alleged, frequently incomplete, unreliable, or unverifiable. Goldenberg Decl. at ¶¶ 11–15. The burden imposed on interstate commerce is thus not merely incidental, rather, it is, "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142.

### c. Best Trails Will Suffer Irreparable Harm Absent a Temporary Restraining Order and Preliminary Injunction.

22

The irreparable harm Best Trails faces from continued enforcement of Code § 24-163 is discussed in Points I & II, *supra*, and is incorporated by reference. The threatened deprivation of Best Trails' rights under the Commerce Clause is in of itself basis to show that irreparable harm may be presented. *Jolly*, 76 F.3d 468. And the volume-based fines declared here threaten the very viability of Best Trails' interstate business, *see* Goldenberg Decl. at ¶¶ 9, 32–33, an injury that, as the Supreme Court has recognized, places a regulated party squarely within the "Hobson's choice" of either continuing to operate and "expos[ing] [itself] to potentially huge liability" or curtailing the very interstate activity that the Commerce Clause protects. *Morales*, 504 U.S. 374, 381 (1992).

### d. The Balance of Equities and the Public Interest Strongly Favor Preliminary Relief.

Because the City is the defendant, the balance-of-equities and public-interest factors merge. *Nken*, 556 U.S. 418, 435 (2009); *725 Eatery Corp.*, 408 F. Supp. 3d 424, 469 (S.D.N.Y. 2019). Both factors are addressed in Points I & II, *supra*, and weigh decisively in Best Trails' favor for the same reasons set forth there. The City "does not have an interest in the enforcement of an unconstitutional law," *725 Eatery Corp.*, 408 F. Supp. 3d at 470, and the public interest is squarely served by enjoining the enforcement of a regime that, as alleged, discriminates against interstate commerce in favor of intrastate operators. *See Lowe*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021) ("[T]he public interest is best served by enjoining the enforcement of [an] ordinance that is likely unconstitutional.").

23

## CONCLUSION

For the forgoing reasons, Plaintiff requests that this Court grant its motion for an order (a) temporarily and preliminarily enjoining Defendants from enforcing Code §§ 24-163, 24-178, 24-182, and other such portions of the Code, including the Citizen-Complainant Enforcement apparatus as against, at minimum, Plaintiff, during the pendency of this action; and (b) for such other relief as this Court may deem just and appropriate.

Dated: New York, New York
      May 22, 2026

Respectfully Submitted,

By:_____
    Thomas H. Herndon, Jr., Esq. (TH-9726)
    Thomas H. Herndon, Jr., Law PLLC
    Attorneys for Plaintiff
    Best Trails and Travel Corp.
    34 Crest Drive
    South Orange, New Jersey 07079
    P: (646) 699-8814
    E: therndon@thhjrlaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify under Southern District of New York Local Rule 7.1 and Judge McMahon's individual rules regarding page and word-count limits that this document contains 7,345 words, as counted by Microsoft Word 365 (version 2410). That word count includes words contained within headings, footnotes, citations, and quotations, but does not include words contained within the case caption, cover sheet, table of contents, table of authorities, signature block, attachments, exhibits, or affidavits.

DATED:    New York, New York
          May 22, 2026

                              Respectfully submitted,


                              By:_____
                                 Thomas H. Herndon, Jr., Esq. (TH-9726)
                                 Thomas H. Herndon, Jr. Law PLLC
                                 *Attorneys for plaintiff Best Trails and*
                                 *Travel Corp.*
                                 34 Crest Drive
                                 South Orange, New Jersey 07079
                                 P: (646) 699-8814
                                 E: therndon@thhjrlaw.com