UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

BEST TRAILS AND TRAVEL CORP.,

                            Plaintiffs,

        - against -

NEW YORK CITY; NEW YORK CITY DEPARTMENT              26-cv-02944(CM)
OF ENVIRONMENTAL PROTECTION; LISA F. GARCIA
(SOLELY IN HER CAPACITY AS THE COMMISSIONER
OF THE NEW YORK CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION); NEW YORK CITY
POLICE DEPARTMENT; JESSICA S. TISCH (SOLELY IN
HER CAPACITY AS THE COMMISSIONER OF THE
NEW YORK CITY POLICE DEPARTMENT); NEW YORK
CITY DEPARTMENT OF PARKS & RECREATION;
TRICIA SHIMAMURA (SOLELY IN HER CAPACITY AS
THE  COMMISSIONER OF THE NEW YORK CITY
DEPARTMENT  OF PARKS & RECREATION); NEW
YORK CITY DEPARTMENT  OF SANITATION;
GREGORY ANDERSON (SOLELY IN HIS CAPACITY AS
THE COMMISSIONER OF THE NEW  YORK CITY
DEPARTMENT OF SANITATION); AND NEW
YORK CITY OFFICE OF ADMINISTRATIVE TRIALS
AND  HEARINGS (OATH), AND

"JOHN DOE" AND "JANE DOE" NUMBERS 1-50,
fictitiously named parties, true names unknown, the
parties intended being those persons who succeed, if at all,
the above mentioned Commissioners;

                         Defendants.

-------------------------------------------------------------------------- X

**CITY DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS AND IN
OPPOSITION  TO  PLAINTIFF'S  MOTION  FOR  AN
INJUNCTION**

                                      **STEVEN BANKS**
                                      Corporation Counsel of the
                                      City of New York
                                      *Attorney for Defendant*
                                      100 Church Street,

New York, New York 10007
Tel: (212) 356-2212

MICHELLE GOLDBERG-CAHN
MARK MUSCHENHEIM
GENAN F. ZILKHA
   Of Counsel,

DARRYL BOBB (On the Brief, not admitted in the SDNY)

June 5, 2026

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT .......................................................................... 1

FACTUAL ALLEGATIONS AND RELEVANT LAW .................................... 3

       Plaintiff's Factual Allegations .................................................... 3

       The Idling Law ............................................................................ 4

       Procedure for Prosecuting Summonses Issued for
           Idling Law Violations before OATH ............................. 5

ARGUMENT

    I.     STANDARD OF REVIEW ........................................................ 6

    II.    THE COMPLAINT FAILS TO STATE A DUE
          PROCESS CLAIM .................................................................... 7

        A.     The Procedural Due Process Claim Fails ......................... 7

           1.   The Process to Challenge Idling Law
               Summonses Satisfies Mathews v.
               Eldridge .................................................. 9

        B.     The Substantive Due Process Claim
            Similarly Fails ............................................................... 11

    III.   THE IDLING LAW IS NOT
          UNCONSTITUTIONALLY VAGUE ....................................... 13

    IV.   THE IDLING LAW DOES NOT VIOLATE THE
          DORMANT COMMERCE CLAUSE ..................................... 14

        1.   The Idling Law does not discriminate against
           interstate commerce. ..................................................... 15

         2.   The Idling Law does not burden interstate
           commerce ...................................................................... 17

    V.    THE EQUAL PROTECTION CLAIM FAILS ...................... 19

    VI.   THE EIGHTH AMENDMENT EXCESSIVE FINE
          CLAIM FAILS ......................................................................... 21

**Pages**

VII.    PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY
SHOULD BE DENIED ............................................................................ 23

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Pages**

All. of Auto. Mfrs., Inc. v. Currey,
    610 F. App'x 10 (2d Cir. 2015) ................................................................................................15

Am. Trucking Ass'n v. N.Y. State Thruway Auth.,
    238 F. Supp. 3d 527 (S.D.N.Y. 2017).........................................................................................1

Aquino v. Alexander Capital, LP,
    No. 21 Civ. 1355 (JSR), 2024 U.S. Dist. LEXIS 35517
    (S.D.N.Y. Feb. 29, 2024) ........................................................................................................24

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).............................................................................................................6, 7

Austin v. United States,
    509 U.S. 602 (1993)................................................................................................................21

Basank v. Decker,
    449 F. Supp. 3d 205 (S.D.N.Y. 2020).....................................................................................24

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................................................6

Bens BBQ, Inc. v. Cty. of Suffolk,
    No. 19 Civ. 3584 (SJF)(ARL), 2020 U.S. Dist. LEXIS 82474
    (E.D.N.Y. May 7, 2020) .........................................................................................................21

Broecker v. N.Y.C. Dep't of Educ.,
    585 F. Supp. 3d 299 (E.D.N.Y. 2022) ...................................................................................25

Chan v. U.S. Dep't of Transp.,
    No. 23 Civ. 10365 (LJL), 2024 U.S. Dist. LEXIS 231658
    (S.D.N.Y. Dec. 23, 2024) .......................................................................................................25

CRP/Extell Parcel I, L.P. v. Cuomo,
    394 F. App'x 779 (2d Cir. 2010) ............................................................................................24

Cullen v. Mello,
    No. 23-413, 2024 U.S. App. LEXIS 10564 (2d Cir. May 1, 2024)..........................................9

General Motors Corp. v. Tracy,
    519 U.S. 278 (1997)................................................................................................................16

Gentleman v. State Univ. of N.Y. Stony Brook,
    No. 21 Civ. 1102, 2022 U.S. App. LEXIS 12430 (2d Cir. May 9, 2022) .................................9

**Cases**                                                                                                                                 **Pages**

Grand River Enter. Six Nations, Ltd. v. Pryor,
    481 F.3d 60 (2d Cir. 2007)........................................................................................24

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1988).......................................................................................6

Greene v. Metro. Transp. Auth.,
    No. 22-cv-3300 (JMA) (ST), 2024 U.S. Dist. LEXIS 33798
    (E.D.N.Y. Feb. 26, 2024)..........................................................................................16

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009)..........................................................................................7

Hernandez v. City of New York,
    No. 25-CV-1867 (RA), 2026 U.S. Dist. LEXIS 57094
    (S.D.N.Y. Mar. 18, 2026) .........................................................................................20

J.S. v. T'Kach,
    714 F.3d 99 (2d Cir. 2013)..........................................................................................7

Jacoby & Meyers, LLP v. Presiding Justices of the 1st, 2nd, 3rd & Fourth Dep'ts,
    App. Div. of the Sup. Ct. of the State of N.Y.,
    118 F. Supp. 3d 554 (S.D.N.Y. 2015),
    aff'd, 852 F.3d 178(2d Cir. 2017)...............................................................................17

Kaluczky v. City of White Plains,
    57 F.3d 202 (2d Cir. 1995).........................................................................................12

Killoran v. Westhampton Beach Sch. Dist.,
    No. 19 Civ. 6663(JS)(SIL), 2021 U.S. Dist. LEXIS 57590
    (E.D.N.Y. Mar. 25, 2021) .........................................................................................20

Killoran v. Westhampton Beach Sch. Dist.,
    No. 22-1753, 2023 U.S. App. LEXIS 17769 (2d Cir. July 13, 2023) ....................................20

Liberian Cmty. Ass'n of Conn. v. Lamont,
    970 F.3d 174 (2d Cir. 2020).........................................................................................9

Marino v. City Univ. of N.Y.,
    18 F. Supp. 3d 320 (E.D.N.Y. 2014) ..........................................................................21

Mathews v. Eldridge,
    424 U.S. 319 (1976)........................................................................................9, 10, 11

Matzell v. Annucci,
    64 F.4th 425 (2d Cir. 2023) .......................................................................................12

| **Cases** | **Pages** |
|---|---|

Molina v. Joyce,
    813 F. Supp. 3d 407 (S.D.N.Y. 2025)........................................................11

N.Y. Pet Welfare Ass'n v. City of New York,
    850 F.3d 79 (2d Cir. 2017)...............................................................17, 18

N.Y. State NOW v. Pataki,
    261 F.3d 156 (2d Cir. 2001)..................................................................8

Nat'l Shooting Sports Found., Inc. v. James,
    144 F.4th 98 (2d Cir. 2025) .................................................................17

Nestle Waters N. Am., Inc. v. City of New York,
    No. 15 Civ. 05189 (ALC), 2016 U.S. Dist. LEXIS 70694
    (S.D.N.Y. May 25, 2016),
    aff'd, 2017 U.S. App. LEXIS 7718 (2d Cir. May 2, 2017) .........................9

Oles v. City of New York,
    No. 21 Civ. 9393, 2022 U. S. Dist. LEXIS 98978 (S.D.N.Y. June 2, 2022),
    aff'd, 2023 U.S. App. LEXIS 11074 (2d Cir. May 5, 2023) .......................7

Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-I, Ltd.,
    292 F. Supp. 3d 601 (S.D.N.Y. 2017)........................................................24

Pike v. Bruce Church,
    397 U.S. 137 (1970)......................................................................17, 19

Porrazzo v. Bumble Bee Foods, LLC,
    822 F. Supp. 2d 406 (S.D.N.Y. 2011)........................................................7

Rackley v. City of New York,
    186 F. Supp. 2d 466 (S.D.N.Y. 2002)........................................................7

Rest. L. Ctr. v. City of New York,
    90 F.4th 101 (2d Cir. 2024) .................................................................15

Rivera-Powell v. N.Y.C Bd. of Elections,
    470 F.3d 458 (2d Cir. 2006).................................................................7, 8

Rojas v. Triborough Bridge & Tunnel Auth.,
    No. 18-cv-1433 (PKC), 2022 U.S. Dist. LEXIS 43103 (Mar. 10, 2022),
    aff'd sub nom. Reese v. Triborough Bridge & Tunnel Auth.,
    91 F.4th 582 (2d Cir. 2024) .................................................................23

Rubin v. Garvin,
    544 F.3d 461 (2d Cir. 2008)..................................................................13

| **Cases** | **Pages** |
|---|---|

Ruston v. Town Bd.,
   610 F.3d 55 (2d Cir. 2010).........................................................................................20

Sbarra v. Port Auth of N.Y. & N.J.,
   10 Civ. 8580 (CM), 2011 U.S. Dist. LEXIS 102724 (S.D.N.Y. Sept. 9, 2011) .......................7

Selevan v. N.Y. Thruway Auth.,
   584 F.3d 82 (2d Cir. 2009)..........................................................................................15

Southerland v. City of New York,
   680 F.3d 127 (2d Cir. 2011).........................................................................................12

Spinelli v. City of New York,
   579 F.3d 160 (2d Cir. 2009)........................................................................................9, 10

Streeter v. N.Y.C. Dep't of Envtl. Prot.,
   213 N.Y.S.3d 865 (Sup. Ct., Kings Cnty. 2024),
   aff'd, 248 A.D.3d 933 (2d Dep't 2026) ......................................................................4

The Cloister E., Inc. v. N.Y. State Liquor Auth.,
   483 F. Supp. 3d 221 (S.D.N.Y. 2020)..........................................................................10

Torres v. City of New York,
   590 F. Supp. 3d 610 (S.D.N.Y. 2022).........................................................................23

Town of Southold v. Town of E. Hampton,
   477 F.3d 38 (2d Cir. 2007)..........................................................................................17

Tsinberg v. City of New York,
   No. 20 Civ. 749 (PAE), 2021 U.S. Dist. LEXIS 56958
   (S.D.N.Y. Mar. 25, 2021) ...........................................................................................23

Union Square Supply Inc. v. DeBlasio,
   572 F. Supp. 3d 15 (S.D.N.Y. 2021).......................................................................11, 13

United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,
   438 F.3d 150 (2d Cir. 2006),
   aff'd, 550 U.S. 330 (2007)...........................................................................................18

United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.,
   550 U.S. 330 (2007)....................................................................................................16

United States v. Bajakajian,
   524 U.S. 321 (1998).....................................................................................................21

**Cases**                                                                                                                                        **Pages**

United States v. Holcombe,
    883 F.3d 12 (2d Cir. 2018)..........................................................................................13

United States v. Viloski,
    814 F.3d 104 (2d Cir. 2016).........................................................................................21

We the Patriots USA, Inc. v. Hochul,
    17 F.4th 266 (2d Cir. 2021) .........................................................................................24

Winter v. NRDC, Inc.,
    555 U.S. 7 (2008)..........................................................................................................24

Witt v. Village of Mamaroneck,
    No. 12 Civ. 8778 (ER), 2015 U.S. Dist. LEXIS 39669
    (S.D.N.Y. Mar. 27, 2015) .............................................................................................20

**Statutes**

15 RCNY § 43-02 ..............................................................................................................6

48 RCNY §§ 6-11, 6-12......................................................................................................11

48 RCNY § 6-12(a)..............................................................................................................6

48 RCNY § 6-12(b) .............................................................................................................5

48 RCNY § 6-13(b) .......................................................................................................5, 8, 11

48 RCNY § 6-17(a)..............................................................................................................6

48 RCNY § 6-19(a)..............................................................................................................6

48 RCNY § 6-19(g)(1).........................................................................................................6

48 RCNY § 6-19(g)(2).........................................................................................................6

Admin Code § 24-110(a) ....................................................................................................13

Admin Code § 24-163.....................................................................................................4, 5, 13

Admin Code § 24-163(a) ................................................................................................4, 13

Admin Code § 24-163(f)..................................................................................................4, 14

Admin Code § 24-182(a) .....................................................................................................4

Admin Code § 24-182(b).....................................................................................................5

**Statutes**                                                                                                                      **Pages**

Admin Code § 24-182(d) ...................................................................................................................5

Fed. R. Civ. P. 12(b)(6)...................................................................................................................6

General Construction Law § 66 .......................................................................................................16

N.Y. Pub. Auth. Law §1201 ...........................................................................................................16

N.Y. Pub. Auth. Law §1202(2)

N.Y. Pub. Auth. Law § 1263 ..........................................................................................................16

N.Y. Pub. Auth. Law § 1264(2).......................................................................................................16

New York Civil Practice Law Article 78....................................................................................2, 6, 8, 9, 11

**Other Authorities**

Citizens Air Complaint Program, *available at*
    https://www.nyc.gov/site/dep/environment/idling-citizens-air-complaint-
    program.page (last visited May 21, 2026) ..........................................................................4

CPLR Article 78 ..............................................................................................................................3

DEP's NYC Idling Complaint System, *available at*
    https://nycidling.azurewebsites.net (last visited May 21, 2026)................................................4

Diesel Fuel Standards and Rulemaking, United States Environmental Protection
    Agency, *available at*, https://www.epa.gov/diesel-fuel-standards/diesel-fuel-
    standards-and-rulemakings#onroad-diesel (last visited Jun. 1, 2026)....................................14

April 23, 2014 Briefing Paper of the Infrastructure Division
    https://legistar.council.nyc.gov/View.ashx?M=F&ID=3048337&GUID=512B
    1FAA-C842-4355-B663-00A922B297C6 (last visited Jun. 1, 2026) ....................................19

Idling Variance Request Tracker,
    https://www.nyc.gov/site/dep/environment/idling-variance-request-
    tracker.page (last visited May 12, 2026)................................................................................13

Zero-Emission Terms to Know, California Air Resources Board, *available at*
    https://ww2.arb.ca.gov/our-work/programs/truckstop-resources/zev-
    truckstop/zev-101/zero-emission-terms-know-zev-truckstop (last visited Jun.
    1, 2026) .................................................................................................................................14

Defendants NEW YORK CITY, NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION ("DEP"), LISA F. GARCIA (SOLELY IN HER CAPACITY AS THE COMMISSIONER OF DEP, NEW YORK CITY POLICE DEPARTMENT ("NYPD"), JESSICA S. TISCH (SOLELY IN HER CAPACITY AS THE COMMISSIONER OF NYPD), NEW YORK CITY DEPARTMENT OF PARKS & RECREATION ("DPR"), TRICIA SHIMAMURA (SOLELY IN HER CAPACITY AS THE COMMISSIONER OF DPR), NEW YORK CITY DEPARTMENT OF SANITATION ("DSNY"); GREGORY ANDERSON (SOLELY IN HIS CAPACITY AS THE COMMISSIONER OF DSNY), AND NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS ("OATH") (collectively "City Defendants"), by their attorney, Steven Banks, Corporation Counsel of the City of New York, submit this memorandum of law in support of City Defendants' motion to dismiss the Complaint ("Cmpl.") (ECF 4) pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), and in opposition to the motion by Plaintiff BEST TRAILS AND TRAVEL CORP. ("Plaintiff") for a preliminary injunction and temporary restraining order (ECF 75-77).

## PRELIMINARY STATEMENT

This action challenges, and seeks to enjoin, a law prohibiting vehicle idling for longer than three minutes (depending on where the vehicle is located). This law has been in place since 2015, and Plaintiff has been issued summonses for violations of this law for at least three years. See Cmpl ¶ 28; Memorandum of Law in Support of Plaintiff's Request for a Temporary Restraining Order and Preliminary Injunction ("Pls. Mem. 7"). Although Plaintiff's primary complaints are with Citizen Reporters (defined below), Plaintiff challenges the law's entire enforcement scheme. Cmpl. ¶ 1; Pls. Mem. 24. As set forth in greater detail below, since the Complaint lacks merit and since Plaintiff cannot, at a minimum, show a likelihood of success on

the merits of this action, the Complaint should be dismissed and Plaintiff's motion for injunctive relief should be denied.

Plaintiff is a "charter bus company that provides transportation services for corporate and private clients" within and outside of New York State. Cmpl. ¶ 21; Pls. Mem. 4. From 2022 until 2025, Plaintiff alleges that it received 117 summonses for violations of Administrative Code of the City of New York ("Admin Code") § 24-163(a) and § 24-163(f) (collectively referred to as the "Idling Law"). See Cmpl. ¶ 28; Pls. Mem. 7. The Idling Law penalizes, inter alia, vehicle idling that lasts for more than three minutes. The Idling Law also empowers members of the public ("Citizen Reporters") to report instances of bus and truck idling to DEP in exchange for a portion of any penalties collected. Summonses for Idling Law violations are administratively adjudicated at OATH. In certain circumstances, Citizen Reporters may prosecute violations of the Idling Law before OATH themselves. Decisions rendered following an OATH hearing may be appealed to the OATH Appeals Division and then challenged in New York State Supreme Court via a proceeding under Article 78 of the New York Civil Practice Law and Rules ("CPLR"); an adverse decision may be appealed as of right to one of the New York State Appellate Divisions.

Although Plaintiff clearly disagrees with the Idling Law, Plaintiff nevertheless fails to allege how the Idling Law actually violates the United States Constitution. Plaintiff's Due Process claim is premised in part on the fact that Citizen Reporters are not required to appear at hearings before OATH and that summonses are heard well after the violating conduct occurs. Yet, Plaintiff completely ignores the robust procedures available to challenge Idling Law summonses – including at OATH, in an Article 78 proceeding, and then at the Appellate Division. Plaintiff's void for vagueness allegation is nothing more than a laundry list of Plaintiff's gripes with the Idling

Law; Plaintiff does not actually identify any way in which the Idling Law is vague. And Plaintiff's dormant Commerce Clause claim also fails; it is based primarily on the fact that the Metropolitan Transit Authority ("MTA") and New York City Transit Authority ("NYCTA") are not penalized for idling and that this is somehow discriminatory against interstate commerce. Yet it is well established that, for the purposes of discrimination under the dormant Commerce Clause, government agencies (like the MTA and NYCTA) are not substantially similar to private entities like Plaintiff. Similarly, Plaintiff's Equal Protection clause claim is based on alleged disparate treatment between Plaintiff and the MTA and NYCTA. This claim fails because Plaintiff does not identify how it is at all similar to the MTA and NYCTA and definitely not with the specificity required for an Equal Protection claim. Plaintiff's Excessive Fines claim fails because any penalty imposed for idling is not grossly disproportional, if at all. Finally, Plaintiff is not entitled to a preliminary injunction or temporary restraining order, not in the least because Plaintiff has failed to show a likelihood of success on the merits of this action.

**FACTUAL ALLEGATIONS AND RELEVANT LAW**

**Plaintiff's Factual Allegations**

Plaintiff, a domestic New York State Corporation (Cmpl. ¶ 4; Pls. Mem. 4), alleges that it has been issued 117 summonses since 2023 and has paid approximately $30,000 in penalties for 73 of those summonses. Cmpl ¶28; Pls. Mem. 7. Forty-four of these summonses have not yet been adjudicated. Id. Although Plaintiff has admittedly administratively appealed at least one adverse OATH decision (see Exhibit C to the Declaration of Aly Goldenberg in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF 76-3)) Plaintiff does not allege that it has challenged any OATH Appeal Division decisions in a CPLR Article 78 proceeding.

3

**The Idling Law**

Admin Code § 24-163(a) penalizes vehicle idling for more than three minutes. Where the outside temperature exceeds 40 degrees Fahrenheit, a bus may not idle "while parking, standing, or stopping…at any terminal point, whether or not enclosed, along an established route." Id. Admin Code § 24-163(f) penalizes idling near a school or park for more than one minute but provides an exception for school buses idling near a school.

Although DEP inspectors issue summonses for violations of the Idling Law, many of these summonses are based on complaints made by Citizen Reporters. Under Admin Code § 24-182(a), a person "may serve upon [DEP] a complaint [("Citizen Complaint")]… alleging that [the owner of a bus] has violated [Admin Code § 24-163] …together with evidence of such violation." Evidence includes, inter alia, a time-stamped video that captures the idling and identifying information including the bus's license plate and company name.[1] The Citizen Complaint and evidence (collectively "idling submission") is submitted to DEP through DEP's Idling Complaint System.[2] "Idling submissions are reviewed by at least two reviewers, including a supervisor, before a decision is made."[3] If DEP accepts the idling submission, DEP will issue a summons and serve it on the owner of the idling vehicle. Only one summons is issued "for an idling violation involving a vehicle idling on the same block." Streeter v. N.Y.C. Dep't of Envtl. Prot., 213 N.Y.S.3d 865, 869 (Sup. Ct., Kings Cnty. 2024), aff'd, 248 A.D.3d 933 (2d Dep't 2026). Each summons identifies the date and time when it will be heard at OATH. Once DEP issues the summons, the Citizen Reporter "will be informed of the summons number and hearing date [and]

---

[1] See Citizens Air Complaint Program, *available at* https://www.nyc.gov/site/dep/environment/idling-citizens-air-complaint-program.page (last visited May 21, 2026) ("Air Complaint Program").

[2] See DEP's NYC Idling Complaint System, *available at* https://nycidling.azurewebsites.net (last visited May 21, 2026).

[3] See Air Complaint Program, supra note 1.

may need to be available in person or by phone to testify."[4] If the violation in the summons is affirmed at OATH, the Citizen Reporter is awarded "out of the proceeds collected, [25%] of such proceeds….." Admin Code § 24-182(d).

If DEP receives the idling submission but neither serves a summons "for the violation" nor "serve[s] a written notice upon the [Citizen Reporter] of its determination that his or her complaint is frivolous or duplicitous" the Citizen Reporter may serve a summons on the owner of the idling vehicle and "prosecute such proceeding [at OATH] at his or her own expense." Admin Code § 24-182(b). If successful, the Citizen Reporter is "award[ed], out of the proceeds collected, [50%] of any civil penalty…." Admin Code § 24-182(d).[5]

**Procedure for Prosecuting Summonses Issued for Idling Law Violations before OATH**

Hearings before OATH are governed by the procedures in Subchapter C of Chapter 6 of Title 48 of the Rules of the City of New York ("RCNY"). A summons "sworn to under oath or affirmed under penalty of perjury… will be admitted as prima facie evidence of the facts stated therein." 48 RCNY § 6-12(b). At the hearing, the Hearing Officer may, "[u]pon request of a party, issue subpoenas or adjourn a hearing for the appearance of individuals or the production of documents or other types of information when the Hearing Officer determines that necessary and material evidence will result[.]" 48 RCNY § 6-13(b). DEP "has the burden of proving the factual allegations contained in the summons by a preponderance of the evidence. The party named in the summons (referred to as the "respondent") has the burden of proving an affirmative defense, if any, by a preponderance of the evidence." 48 RCNY § 6-12(a).

---

[4] See Id.

[5] Plaintiff purports to challenge only the Citizen Reporter provision of the Idling Law. See, e.g., Pls. Mem. 17. Yet Pls. Mem. specifies that it is seeking to enjoin the entire Idling Law (Pls. Mem. 24) and the Complaint seeks a declaratory judgment that the Idling Law, specifically Admin Code § 24-163, is unconstitutional. Cmpl. ¶ 1.

5

After the hearing, the presiding OATH Hearing Officer will "promptly write a decision sustaining or dismissing each charge in the summons…Where a violation is sustained, the Hearing Officer will impose the applicable penalty…." 48 RCNY § 6-17(a). Penalties are $350 for a first violation, $440 for a second violation, and $600 for a third violation; default penalties range from $1,000 to $2,000. See 15 RCNY § 43-02. The decision can be appealed administratively to the OATH Appeals Division. See 48 RCNY § 6-19(a). The OATH Appeals Division will "determine whether the facts contained in the findings of the Hearing Officer are supported by a preponderance of the evidence in the record, and whether the determinations of the Hearing Officer, as well as the penalties imposed, are supported by law." 48 RCNY § 6-19(g)(1). The OATH Appeals Division will then "issue a written decision. Such decision is the final determination of the Tribunal, and judicial review of such decision may be sought pursuant to Article 78 of the [CPLR]…." 48 RCNY § 6-19(g)(2). Any decision rendered following an Article 78 proceeding may be appealed as of right.

## ARGUMENT

### I.   STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept the facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1988). A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Where the well-pleaded facts do not permit the court to infer more than the mere "plausible claim for relief" the motion to dismiss must be granted and the Complaint must be dismissed. Iqbal, 556 U.S. at 678-9. Further "although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet'

6

'is inapplicable to legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted). "[I]t is well-established that courts may take judicial notice of publicly available documents on a motion to dismiss." Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d 406, 411 (S.D.N.Y. 2011).

## II.    THE COMPLAINT FAILS TO STATE A DUE PROCESS CLAIM

### A.  The Procedural Due Process Claim Fails

A procedural due process claim requires an allegation "that [the Plaintiff was] deprived by state action of a property right…without being afforded due process of law." Sbarra v. Port Auth of N.Y. & N.J., 10 Civ. 8580 (CM), 2011 U.S. Dist. LEXIS 102724, at *29 (S.D.N.Y. Sept. 9, 2011). "To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013). "[T]he availability of adequate pre-deprivation and post-deprivation remedies under state law will defeat a § 1983 action brought against state actors–so long as the claimant had sufficient notice of such remedies…." Rackley v. City of New York, 186 F. Supp. 2d 466, 481 (S.D.N.Y. 2002). "Particularly where they are backstopped by full adversarial proceedings in state court, pre-deprivation proceedings 'need not be elaborate' so long as they offer 'notice and an opportunity to respond' to the allegations[.]" Oles v. City of New York, No. 21 Civ. 9393, 2022 U. S. Dist. LEXIS 98978, *17 (S.D.N.Y. June 2, 2022), aff'd, 2023 U.S. App. LEXIS 11074 (2d Cir. May 5, 2023).

"Where a state law remedy gives a party 'a meaningful opportunity to challenge' the state's action, 'he [is] not deprived of due process simply because he failed to avail himself of the opportunity.'" Rivera-Powell v. N.Y.C Bd. of Elections, 470 F.3d 458, 467, n.9 (2d Cir. 2006) (citations omitted). "[A] procedural due process violation cannot have occurred when the

governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." N.Y. State NOW v. Pataki, 261 F.3d 156, 169 (2d Cir. 2001).

Despite the robust procedures available to challenge Idling Law summonses, the Complaint alleges that the Idling Law violates "procedural due process guarantees of the Due Process Clause of the U.S. Constitution" because Plaintiff is "deprived of its liberty…and is being deprived of that interest as a result of insufficient process." Cmpl. ¶ 39. Similarly, Pls. Mem. argues that the Idling Law denies Plaintiff "basic procedural protections…." Pls. Mem. 10. Except that Plaintiff receives process at multiple steps – first at the OATH Hearings Division, second at the OATH Appeals Division, and finally in the Supreme Court of the State of New York. Further, any decision rendered in an Article 78 proceeding by the Supreme Court can be appealed as of right to the Appellate Division. And although OATH does not hear constitutional issues, any constitutional issues may be raised in an Article 78 proceeding.

Plaintiff's only real complaints about the process afforded to it are that City Defendants rely "almost exclusively on unverified and frequently unreliable recordings submitted by untrained private individuals, without any opportunity for cross-examination, without sworn testimony, and often after substantial delays that deprive Best Trails of access to evidence, including records and witness recollection" (Cmpl. ¶ 39; Pls. Mem. 12) and that summonses are sometimes served "as much as a year after the alleged incident." Pls. Mem. 12. The recordings are not unreliable; they are vetted by DEP employees.[6] And there is a provision in the RCNY to subpoena a Citizen Reporter to appear at a hearing. See 48 RCNY § 6-13(b). Finally, and more importantly, nothing prevents Plaintiff from raising any of these issues at OATH and in an Article 78 proceeding. Indeed, as noted, the Complaint does not allege that Plaintiff has ever availed itself

---

[6] See Air Complaint Program, supra note 1.

of the full panoply of process available to it. See Nestle Waters N. Am., Inc. v. City of New York, No. 15 Civ. 05189 (ALC), 2016 U.S. Dist. LEXIS 70694, at *21 (S.D.N.Y. May 25, 2016), aff'd, 2017 U.S. App. LEXIS 7718 (2d Cir. May 2, 2017) ("[A]vailability of administrative challenge "together with the judicial system of the State of New York, provided plaintiff with adequate pre-deprivation remedies, adequate post-deprivation remedies, and sufficient notice that such remedies were available."); see also Gentleman v. State Univ. of N.Y. Stony Brook, No. 21 Civ. 1102, 2022 U.S. App. LEXIS 12430, at *7 (2d Cir. May 9, 2022) ("[D]ue process claim fails as matter of law because of the existence of an adequate post-deprivation remedy in the form of an Article 78 proceeding.").

   1.  *The Process to Challenge Idling Law Summonses Satisfies Mathews v. Eldridge*

   Further, under the factors set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) ("Mathews Factors"), the process available to challenge Idling Law summonses is sufficient. Under the Mathews Factors, "[i]n determining how much process is due, a court must weigh (1) the private interest affected, (2) the risk of erroneous deprivation through the procedures used and the value of other safeguards, and (3) the government's interest." Cullen v. Mello, No. 23-413, 2024 U.S. App. LEXIS 10564, at *5 (2d Cir. May 1, 2024) (quoting Spinelli v. City of New York, 579 F.3d 160, 170 (2d Cir. 2009)). The government's interest includes "the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Rivera-Powell, 470 F.3d at 466.

   Since analysis under the Mathews Factors "entails balancing multiple factors, procedural due process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' Rather, 'due process is flexible and calls for such procedural protections as the particular situation demands.'" Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 191 (2d Cir. 2020) (citations omitted).

The first <u>Mathews</u> Factor, i.e. "private interest that will be affected," weighs in favor of finding that the procedures for challenge Idling Law summonses at OATH satisfies due process. The interest at issue here – namely the payment of penalties ranging in $350 to $2,000 (Pls. Mem. 11), is not entitled to significant weight. Significant weight is generally given to non-monetary interests such as a restaurant's liquor license, <u>see</u> <u>The Cloister E., Inc. v. N.Y. State Liquor Auth.</u>, 483 F. Supp. 3d 221, 233 (S.D.N.Y. 2020), or a business' merchandise, <u>see</u> <u>Spinelli v. City of New York</u>, 579 F.3d 160, 171 (2d Cir. 2009) ("Without firearms to sell, Spinelli could not do business as a gun dealer at all, whether or not she had a dealer license."). Plaintiff argues that this factor weighs in its favor because "it is subject to substantial and recurring monetary penalties that directly impact its ability to operate its business and engage in interstate commerce," <u>see</u> Cmpl ¶ 39), because of "per-incident civil penalties," <u>see</u> Pls. Mem. 11. Plaintiff has not alleged how being issued summonses that can be administratively and judicially challenged has had a significant impact on its ability to do business, especially since, for the last three years, Plaintiff has only claimed to have paid $30,000 in penalties. Cmpl. ¶ 28; Pls. Mem. 7. Finally, Plaintiff's argument that it could potentially receive $224,000 in summonses this year, <u>see</u> Pls. Mem. 7, is speculative at best and depends on Plaintiff receiving 93 summonses per quarter each bearing a roughly $600 penalty –which is unlikely, based on Plaintiff's allegation that it received 117 summonses in the last three years combined. <u>See</u> Cmpl. ¶ 28,

The second <u>Mathews</u> factor, i.e. the risk of an erroneous deprivation, also weighs against a finding of a due process violation. "Before a penalty is imposed…entities are entitled to a pre-deprivation hearing before an OATH hearing officer, and penalties imposed under the Rule may be challenged in New York state court in a post-deprivation hearing pursuant to Article 78. The Second Circuit has held that analogous administrative schemes satisfy due process." <u>Union</u>

10

Square Supply Inc. v. DeBlasio, 572 F. Supp. 3d 15, 24 (S.D.N.Y. 2021). Plaintiff alleges that the risk of erroneous deprivation is high because DEP relies on Citizen Reporters who do not appear at hearings and because there are often delays between when the Idling violation occurs and when the OATH hearing is held. See Cmpl. ¶ 39; Pls. Mem. 12. These issues may be raised at hearings before OATH, in appeals before the OATH Appeals Division, and in Article 78 Proceedings. Plaintiff does not explain why these procedures are inadequate.

The third and final Mathews factor, "the Government's interest, including…administrative burdens that the additional or substitute procedural requirement would entail," (Molina v. Joyce, 813 F. Supp. 3d 407, 416 (S.D.N.Y. 2025), clearly weighs in City Defendants' favor. Plaintiff alleges that "the governmental burden of providing additional procedural safeguards, such as requiring timely notice, basic evidentiary standards, or the appearance of complainants, is minimal when compared to the substantial risk of error inherent in the current system." Cmpl. ¶ 39; Pls. Mem. 13. And yet, City Defendants do provide procedural safeguards. OATH Hearings are governed by rules of procedures and evidence by which every OATH Hearing Officer must abide. See, e.g., 48 RCNY §§ 6-11, 6-12. While OATH does not require that Citizen Reporters be present, the DEP website advises Citizen Reporters that they may need to be available to testify at hearings on their Citizen Complaints;[7] in addition, Hearing Officers are empowered to subpoena Citizen Reporters to appear at hearings under 48 RCNY § 6-13(b).

## B. The Substantive Due Process Claim Similarly Fails

"Substantive due process rights safeguard persons 'against the government's exercise of power without any reasonable justification in the service of a legitimate governmental

---

[7] See Air Complaint Program, supra note 1.

11

objective.'" Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2011) (cleaned up). A substantive due process claim requires a two-step analysis. "The first step in substantive due process analysis is to identify the constitutional right at stake." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). The second step is to "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Matzell v. Annucci, 64 F.4th 425, 436 (2d Cir. 2023). The "interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Southerland, 680 F.3d at 131.

The Idling Law's enforcement structure is not egregious or outrageous so as to shock the contemporary conscience. The Complaint's substantive due process claim fails because, although the Complaint alleges that "enforcement of [the Idling Law], is, at best, arbitrary, capricious, and lacks a reasonable [sic] related governmental purposes," see Cmpl. ¶ 40; Pls. Mem. 14, there is nothing arbitrary, capricious, or unrelated to the purpose of preventing unnecessary vehicle idling, and to issuing summons to advance that valid governmental purpose. And the fact that the MTA and NYCTA have not been issued such summonses, see Cmpl. ¶ 40; Pls. Mem. 14, is not dispositive. Plaintiff's argument is thus that, since the Idling Law does not stop all idling, it is ineffective and violates substantive due process. Pls. Mem. 13. This is illogical, as is Plaintiff's argument that the Idling Law imposes penalties without regard to "intent" and "harm" and is thus "constitutionally suspect." Pls. Mem. 15. The fact that City Defendants have found a mechanism to deter idling that may cause Plaintiff to incur penalties does not mean that this mechanism is "outrageous," (Cmpl. ¶ 40) or rises to the level of a substantive due process violation.[8]

---

[8] Further, the issuance of variances does not "underscore the arbitrary and inconsistent manner in which [Admin] Code § 24-163 is enforced." Pls. Mem. 14. DEP may grant a variance (or exemption) from the Idling Law "whenever it is found, upon presentation of adequate proof, that

### III.    THE IDLING LAW IS NOT UNCONSTITUTIONALLY VAGUE

"A law or regulation may be challenged as void-for-vagueness either on its face or as applied. When a statute does not implicate First Amendment rights, courts generally evaluate a vagueness challenge 'in light of the specific facts of the case at hand and not with regard to the facial validity of the . . . statute or regulation at issue.'" Union Square Supply Inc., 572 F. Supp. 3d at 22 (quoting United States v. Holcombe, 883 F.3d 12, 17 (2d Cir. 2018)). To determine whether a statute is impermissibly vague, "a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." Rubin v. Garvin, 544 F.3d 461, 468 (2d Cir. 2008) (citations omitted).

The Complaint and Pls. Mem. identify the ways in which Plaintiff disagrees with the Idling Law but not how the Idling Law is vague. First, the Complaint alleges that the Idling Law is vague because it "does not provide a time frame for how long a bus…can idle while at a terminal point[.]" Cmpl. ¶45(a). Plaintiff is wrong – the language is clear and forbids *any* idling when the ambient temperature exceeds a certain temperature. See Admin Code § 24-163(a).

Second, the Complaint alleges that the Idling Law is vague because it "lumps all bus companies that are using ultra-low sulfur diesel fuel [("ULSD")] and best available technology with those who are not, which is contradictory in light of the stated purpose…and the clear

---

compliance with any provision of [the Idling Law]…would impose unreasonable hardship." Admin Code § 24-110(a); Cmpl. ¶ 35; Pls. Mem. at 8. DEP "may impose such conditions as the policies of this code may require." Admin Code § 24-110(a). Plaintiff does not currently have a pending variance application. See Idling Variance Request Tracker, https://www.nyc.gov/site/dep/environment/idling-variance-request-tracker.page (last visited May 12, 2026).

legislative intent for NYC vehicles to move in that direction." Cmpl. ¶ 45(b); Pls. Mem. 14.[9] This

is not vague – the statute forbids idling no matter the type of fuel used.[10]

Third, the Complaint alleges that the Idling Law is vague because it "provides an

exception to essentially, maintain an appropriate temperature for passenger comfort, but fails to

state how, a layperson at ground level would be able to determine who is in the bus…what

temperature and how long would be necessary to reach such 'appropriate' temperature." Cmpl. ¶

45(c); Ps. Mem. 14. Plaintiff does not have standing to raise this claim as this exception applies

only to school buses, not Plaintiff. See Admin Code § 24-163(f).

## IV.    THE IDLING LAW DOES NOT VIOLATE THE DORMANT COMMERCE CLAUSE

Nothing about the Idling Law either burdens or discriminates against interstate

commerce despite Plaintiff's allegations to the contrary. See Cmpl. ¶ 33-35; Pls. Mem. 18-20.

"[T]he Dormant Commerce Clause doctrine is a judge-made construct that prevents states from

fobbing off costs that should be paid by resident taxpayers onto nonresidents in a manner that

discriminates against interstate commerce." Am. Trucking Ass'n v. N.Y. State Thruway Auth.,

238 F. Supp. 3d 527, 531 (S.D.N.Y. 2017). "The dormant Commerce Clause acts as a

constitutional safeguard against economic protectionism, subjecting regulatory measures designed

---

[9] The fact that Plaintiff's vehicles have been certified by "the U.S. Environmental Protection Agency and the California Air Resources Board as near-zero-emission vehicles [('NZEV').]" (Cmpl. ¶ 21; Pls. Mem. 4) is also irrelevant. An NZEV is a vehicle that "combine[s] a conventional gasoline, diesel or natural gas-powered engine with a battery that can be recharged from the electrical grid." See Zero-Emission Terms to Know, California Air Resources Board, *available at* https://ww2.arb.ca.gov/our-work/programs/truckstop-resources/zev-truckstop/zev-101/zero-emission-terms-know-zev-truckstop (last visited Jun. 1, 2026). Thus, since it has a gas-powered engine, when a NZEV idles it still releases pollutants into the air.

[10] Further, since 2010, all buses have been required to use ULSD.  See Diesel Fuel Standards and Rulemaking, United States Environmental Protection Agency, *available at,* https://www.epa.gov/diesel-fuel-standards/diesel-fuel-standards-and-rulemakings#onroad-diesel (last visited Jun. 1, 2026).

to benefit in-state economic interests by burdening out-of-state competitors to heightened scrutiny." Rest. L. Ctr. v. City of New York, 90 F.4th 101, 106 (2d Cir. 2024).

"[L]egislation runs afoul of the negative command of the Commerce Clause only where it: '(1) clearly discriminates against interstate commerce in favor of intrastate commerce, [or] (2) imposes a burden on interstate commerce incommensurate with the local benefits secured…'" All. of Auto. Mfrs., Inc. v. Currey, 610 F. App'x 10, 12 (2d Cir. 2015) (quoting Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 90 (2d Cir. 2009)).[11]

1. *The Idling Law does not discriminate against interstate commerce.*

"A state statute or regulation may violate the dormant Commerce Clause… if it (1) clearly discriminates against interstate commerce in favor of intrastate commerce…." Selevan, 584 F.3d at 86. The Complaint alleges that the Idling Law is "is protectionist or discriminatory in that it applies to commercial bus companies and not, for instance, the MTA or the NYCTA" (Cmpl. ¶ 34(f)) and "discriminates against Best Trails and other similarly situated private bus companies in favor of intrastate commerce, *i.e.*, the MTA and NYCTA" Cmpl. ¶ 35 and "harbor[s] discriminatory purpose or impact, *i.e.*, to only apply to private bus companies since the MTA and NYCTA are outside NYC's jurisdiction." Cmpl ¶ 35; see also Pls. Mem. 19. Yet, for the purposes of the dormant Commerce Clause, differing treatment between a private company and a government agency would not be discrimination.

"States and municipalities are not private businesses–far from it. Unlike private enterprises, government is vested with the responsibility of protecting the health, safety, and welfare of its citizens. …These important responsibilities set state and local government apart from

---

[11] Plaintiff does not allege that the Idling Law violates the dormant Commerce Clause because it "has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question." All. of Auto. Mfrs., Inc., 610 F. App'x at 12.

a typical private business." United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 342-43 (2007); see General Motors Corp. v. Tracy, 519 U.S. 278, 313 (1997) ("Although petitioner contends that Ohio facially discriminates against interstate commerce with respect to natural gas sales, its argument is based on a novel premise: that private marketers engaged in the sale of natural gas are similarly situated to public utility companies. Nothing in this Court's negative Commerce Clause jurisprudence compels that conclusion.") (Scalia, J., concurring).

Unlike Plaintiff, a "charter bus service for corporate and private events" (Cmpl. ¶ 31; Pls. Mem. 4), NYCTA and MTA are not private companies. They are public benefit corporations (defined in General Construction Law § 66 as "corporation[s] organized to construct or operate a public improvement wholly or partly within the state, the profits from which inure to the benefit of this or other states, or to the people thereof") that were created under State law. See Public Authorities Law §§ 1201, 1263. NYCTA and the MTA "perform an essential governmental function in carrying out [their] purposes…" N.Y. Pub. Auth. Law §§ 1202(2), 1264(2). See Greene v. Metro. Transp. Auth., No. 22-cv-3300 (JMA) (ST), 2024 U.S. Dist. LEXIS 33798, at *27 (E.D.N.Y. Feb. 26, 2024) (The MTA is "considered a state agency under New York law.") (citations omitted). Therefore, as Plaintiff and the MTA and NYCTA are not similarly situated, the Complaint fails to state a claim for discrimination under the Dormant Commerce Clause. Since the Idling Law does not discriminate against interstate commerce, there is no need for City Defendants "to show that the local benefits of the [Idling Law] outweigh its discriminatory effects

16

and that the government lacked a nondiscriminatory alternative by which it could protect the local interests." Town of Southold v. Town of E. Hampton, 477 F.3d 38, 47 (2d Cir. 2007).[12]

2. *The Idling Law does not burden interstate commerce*

As an initial matter, there is no burden on interstate commerce because the Idling Law "treat[s] in-state and out-of-state interests identically. [It does] not have a 'disparate impact on any non-local commercial entity;' rather, [it] treat[s] all commercial entities equally, without regard to in-state or out-of-state status." Jacoby & Meyers, LLP v. Presiding Justices of the 1st, 2nd, 3rd & Fourth Dep'ts, App. Div. of the Sup. Ct. of the State of N.Y., 118 F. Supp. 3d 554, 577 (S.D.N.Y. 2015), aff'd, 852 F.3d 178(2d Cir. 2017) (quoting Town of Southold, 477 F.3d at 50).

There is also no burden on interstate commerce under the test set forth in Pike v. Bruce Church, 397 U.S. 137 (1970) ("Pike Test"). Under the Pike Test, interstate commerce is only burdened when a "statute enacted for a legitimate public purpose, although apparently evenhanded, actually imposes [1] 'burdens on interstate commerce that exceed the burdens on intrastate commerce,' . . . and that [2] those excess burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'" Nat'l Shooting Sports Found., Inc. v. James, 144 F.4th 98, 114 (2d Cir. 2025). "For a state statute to run afoul of the Pike standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." Id. In other words, a law will be upheld unless "the incidental burden it imposes on such commerce is clearly excessive in relation to the local benefits." N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 91 (2d Cir. 2017) cert.

---

[12] In any event, the alternatives Plaintiff proposes would not benefit New Yorkers because all buses are required to use ULSD. See Cmpl. ¶ 34(e).

17

denied 583 U.S. 824 (2017). "An incidental burden is one that weighs more heavily on interstate commerce than intrastate commerce." Id.

The Second Circuit has "recognized three instances in which a non-discriminatory state or local regulation may impose a differential burden on interstate commerce." United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 438 F.3d 150, 156-57 (2d Cir. 2006), aff'd, 550 U.S. 330 (2007). The Complaint does not allege that any of these instances exist here. The first instance is where "the regulation has a disparate impact on any non-local commercial entity." Id. at 156. The Complaint does not identify any "non-local commercial entity" impacted by the Idling Law. Cmpl. ¶ 4; Pls. Mem. at 4. The second instance is where "the statute regulates commercial activity that takes place wholly beyond the state's borders." Id. There is no allegation the Idling Law regulates anything wholly outside of New York State. And finally, the third instance is whether "the challenged statute imposes a regulatory requirement inconsistent with those of other states." Id. at 156-57. There is no allegation about other states' regulatory requirements regarding idling.

Although Plaintiff alleges that the Idling Law "discourages…[Plaintiff] and other similarly situated bus companies [] from traveling in and out of the state" (Cmpl. ¶ 33(a)) and "from engaging in business in and out of NYC" (Cmpl. ¶ 33(c)); Pls. Mem. 20), as a domestic New York State corporation based in Brooklyn, the Idling Law does not prevent Plaintiff from traveling into or out of New York. Nor does Plaintiff's conclusory allegation that the Idling Law somehow prevents Plaintiff from engaging in tourism in or out of New York State in a way that would impact interstate commerce (Cmpl. ¶ 33(b)), without anything else, show a burden on interstate commerce. Further, Plaintiff's allegation that the Idling Law "impedes marketing of Plaintiff's services in NYC and the interstate marketplace" (Cmpl. ¶ 34(g); Pls. Mem. 22) is

18

inaccurate. Nothing about the Idling Law impacts marketing interstate, nor does Plaintiff explain how it might. Finally, although Plaintiff *may* have been issued summonses for "many…trips engaged in interstate travel," this does not mean that the Idling Law burdens interstate travel. Pls. Mem. 21. Similarly, "discourage[ing] private business companies…from being able to hire and retain bus drivers" because those "bus drivers will either refuse to drive in NYC or will opt for positions…in other states" (Cmpl. ¶ 33(d); Pls. Mem. 22) does not implicate interstate commerce because nothing in the Idling Law implicates drivers. Even if Plaintiff receives a summons issued under the Idling Law, as set forth in greater detail in Point II, infra, there are robust mechanisms in place that allow companies, like Plaintiff, to challenge fines administratively and judicially.

If, assuming *arguendo*, the Idling Law did place *any* burden on interstate commerce, any alleged burden is not excessive in relation to the local benefits that the Idling Law provides visitors to and residents of New York City.[13] The environmental and health impacts of vehicle idling cannot be overstated.[14] Idling increases vehicle exhaust which creates pollutants that impact heart and lungs which, in turn, can lead to other health effects like asthma and lung cancer.

## V.    THE EQUAL PROTECTION CLAIM FAILS

---

[13] Plaintiff alleges that the Idling Law violates the Commerce Clause because the "burden on interstate commerce is excessive and not incidental to the local benefits NYC receives." Cmpl. ¶ 33. Under Pike, the Plaintiff must allege that the incidental burden is excessive in relation to the local benefits – not that it is "incidental" to the local benefits received.

[14] The legislative history of the Idling Law noted that "[i]dling vehicles are dangerous to public health, and emissions from idling cause acute and chronic adverse health effects in humans due to the constituents of diesel and non-diesel emissions. See April 23, 2014 Briefing Paper of the Infrastructure Division, *available at* https://legistar.council.nyc.gov/View.ashx?M=F&ID=3048337&GUID=512B1FAA-C842-4355-B663-00A922B297C6, at 9 (last visited Jun. 1, 2026) see also Idling Vehicles and Your Health, *available at* https://mountsinaiexposomics.org/idling-vehicles-and-your-health/ (last visited Jun. 1, 2026) ("Pollutants emitted by vehicle tailpipes can enter the body and impact brain, heart, and lung function. They can affect pregnancy outcomes, lower life expectancy, and impact the risk for obesity and diabetes.").

A successful class-of-one claim[15] requires Plaintiff to "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy" and further that "(ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Ruston v. Town Bd., 610 F.3d 55, 59-60 (2d Cir. 2010). "Plaintiffs must show that…the comparators are 'prima facie identical.'" Killoran v. Westhampton Beach Sch. Dist., No. 22-1753, 2023 U.S. App. LEXIS 17769 at *5 (2d Cir. July 13, 2023).

Although Plaintiff has identified the MTA and NYCTA as alleged comparators, "wholly lacking from Plaintiffs' Complaint are any factual allegations demonstrating how these alleged comparators' circumstances are 'prima facie identical' to [Plaintiff's]." Killoran v. Westhampton Beach Sch. Dist., No. 19 Civ. 6663(JS)(SIL), 2021 U.S. Dist. LEXIS 57590, at *14-15 (E.D.N.Y. Mar. 25, 2021). And a conclusory statement that the MTA and NYCTA are "similarly situated" (Cmpl. ¶ 49) does not suffice. See Witt v. Village of Mamaroneck, No. 12 Civ. 8778 (ER), 2015 U.S. Dist. LEXIS 39669, at *17 (S.D.N.Y. Mar. 27, 2015) (dismissing a class-of-one equal protection claim because the plaintiff failed to "allege that any other homeowners were similarly situated in all material respects, let alone establish a high degree of similarity under

---

[15] Plaintiff does not identify whether it is challenging the Idling Law as violating the Equal Protection Clause under a selective enforcement or class of one claim. Since the Complaint does not allege that any supposed "differential treatment was motivated by an intention to discriminate on the basis of impermissible considerations," Hernandez v. City of New York, No. 25-CV-1867 (RA), 2026 U.S. Dist. LEXIS 57094, at *15 (S.D.N.Y. Mar. 18, 2026), Plaintiff has failed to state a claim for a selective enforcement Equal Protection violation.

the more stringent class of one standard"); <u>see also</u> <u>Marino v. City Univ. of N.Y.</u>, 18 F. Supp. 3d 320, 341 (E.D.N.Y. 2014) ("[Plaintiff] has not brought forward specific allegations to transform her conclusory statement that she can prove the high degree of similarity required into a cognizable class-of-one claim."). And there is nothing similar at all between the MTA and NYCTA, which are public benefit corporations, and Plaintiff, a private company, except that both operate buses. Thus, the Equal Protection claim fails.

## VI.   THE EIGHTH AMENDMENT EXCESSIVE FINE CLAIM FAILS

Penalties imposed for violations of the Idling Law are not excessive fines under the Eighth Amendment. "The Eighth Amendment provides that 'excessive fines [shall not be] imposed.'" <u>Bens BBQ, Inc. v. Cty. of Suffolk</u>, No. 19 Civ. 3584 (SJF)(ARL), 2020 U.S. Dist. LEXIS 82474, at *20 (E.D.N.Y. May 7, 2020) (citations omitted). It "'limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" <u>United States v. Bajakajian</u>, 524 U.S. 321, 328 (1998) (quoting <u>Austin v. United States</u>, 509 U.S. 602, 609–10 (1993)). The Second Circuit has adopted a "two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment." <u>United States v. Viloski</u>, 814 F.3d 104, 108 (2d Cir. 2016). First, a court must determine whether the fine is at least partly punitive and thereby governed by the Excessive Fines clause at all. <u>Id</u>. at 109. Second, if the court determines the Excessive Fines clause applies, it must determine whether the challenged penalty is "unconstitutionally excessive." <u>Id</u>. A penalty is "unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" <u>Id</u>. at 110 (quoting <u>Bajakajian</u>, 524 U.S. at 334). When analyzing whether a penalty is disproportionately excessive, the Court evaluates "the essence of the crime of the defendant and its relation to other criminal activity," "whether the defendant fits into the class of persons for whom the statute was principally designed," "the

maximum sentence and fine that could have been imposed," and "the nature of the harm caused by the defendant's conduct." <u>Viloski</u>, 814 F.3d at 110.

Even assuming, *arguendo*, that the penalties issued for violations of the Idling Law (which range from \$350 to \$600) are at least partly punitive, they are not disproportionately excessive. The first proportionality factor – the essence of the crime– weighs against a finding that any penalty issued is excessive. Although the Complaint alleges that idling is "at most, minor and regulatory in nature" (Cmpl. ¶ 57) and the harm caused by "Best Trails' emissions is relatively low" (Cmpl. ¶ 58), it is well established that idling is harmful to the environment and the general public.[16] Thus this first factor does not indicate gross disproportionality.

The second proportionality factor, i.e. whether Plaintiff fits into the class of persons for whom the Idling Law was principally designed, also weighs against a finding of disproportionately. As the Complaint acknowledges, the fines are "designed to apply to companies similar to Best Trails, i.e., private bus companies." <u>See</u> Cmpl. ¶ 55. Plaintiff's vehicles are squarely within the class of vehicles that the Idling Law was principally designed to target, namely buses that idle in violation of the Idling Law.

The third proportionality factor, i.e. the maximum fine that can be imposed, also weighs against a finding of disproportionality. Although the penalty per ticket is relatively low – ranging from \$350 to \$600 per adjudicated violation – the Complaint takes issue with the volume of tickets issued to Plaintiff. <u>See</u> Cmpl. ¶ 56. Although the Complaint alleges that Plaintiff "could be issued as many as 224 tickets" in just one year and "face corresponding penalties" (<u>id</u>.) this occurrence is contingent on assumed future enforcement activity; it is based on speculative enforcement outcomes, not actual penalties imposed. Indeed, the Complaint alleges that, to date,

---

[16] An in-depth discussion of the harms caused by idling can be found in footnote 14, <u>supra</u>,

it has only received 117 summons (and paid $30,000 in penalties) for violations of the Idling Law in the last three years. Cmpl. ¶ 18. Further, the penalty schedule is set forth in the RCNY; the penalty imposed by OATH is not discretionary. Courts have given a penalty less weight where, as here, it is fixed by statute, and there is limited discretion in its application. See Torres v. City of New York, 590 F. Supp. 3d 610, 628 (S.D.N.Y. 2022). Accordingly, Plaintiff cannot satisfy the third proportionality factor.

As for the final proportionality factor, the degree of harm caused, the Complaint alleges that "the harm purportedly caused by Best Trails' emissions is relatively low" (Cmpl. ¶ 57) and that Plaintiff is using "[ULSD] and best available technology with respect to its vehicles operating in NYC." See Cmpl. ¶ 58. However, all buses are required to use ULSD.[18] Further, Plaintiff's idling violates a law designed to protect the health and safety of City residents; idling harms the City because of the City's "interest in promoting compliance with its laws, which is undermined even by small-scale disregard." See Tsinberg v. City of New York, No. 20 Civ. 749 (PAE), 2021 U.S. Dist. LEXIS 56958, at *23 (S.D.N.Y. Mar. 25, 2021) (discussing parking-ticket violations); see also Rojas v. Triborough Bridge & Tunnel Auth., No. 18-cv-1433 (PKC), 2022 U.S. Dist. LEXIS 43103, at *34–35 (Mar. 10, 2022), aff'd sub nom. Reese v. Triborough Bridge & Tunnel Auth., 91 F.4th 582 (2d Cir. 2024) (discussing vehicle-toll violations). Accordingly, this fourth factor does not indicate gross disproportionality. The Complaint's Excessive Fines claim fails.

## VII.    PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY SHOULD BE DENIED

---

[18] A discussion of current fuel standards for highway vehicles, including buses, can be found in footnote 10, supra,

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-I, Ltd., 292 F. Supp. 3d 601, 603 (S.D.N.Y. 2017) (quoting Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008). The requirements are the same for a temporary restraining order. See Basank v. Decker, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020)."When the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge." We the Patriots USA, Inc. v. Hochul, 17 F.4th 266, 295 (2d Cir. 2021).

First, as detailed in Points II-VI, supra, Plaintiff has not shown a likelihood of success on the merits of this action; its motion should be denied at the outset. Second, Plaintiff cannot show that it will suffer an irreparable injury absent an injunction. Plaintiff has not identified how the Idling Law inflicts "business and reputational harm" that is not compensable through monetary damages. Pls. Mem. 16. Ultimately, the only harms Plaintiff has identified are monetary – namely the imposition of penalties. "[I]njury compensable by money damages is insufficient to establish irreparable harm." CRP/Extell Parcel I, L.P. v. Cuomo, 394 F. App'x 779, 781 (2d Cir. 2010); see Aquino v. Alexander Capital, LP, No. 21 Civ. 1355 (JSR), 2024 U.S. Dist. LEXIS 35517, at \*4 (S.D.N.Y. Feb. 29, 2024) ("[I]njury that can be remedied through an award of monetary damages is by definition not irreparable.").[19]

---

[19] Finally, as noted above at Point IIA, supra, there is a comprehensive process to challenge Idling summons which obviates Plaintiff's argument that it faces an "imminent deprivation of its constitutional rights under the due Process Clause" (Pls. Mem. 15)

Finally, the balance of the equities favors denying Plaintiff's request for injunctive relief because an injunction is not in the public interest. Should an injunction be granted, Plaintiff's benefit of no longer receiving summonses for violations of the Idling Law would come at the cost of well-established health and environmental effects of idling. This harm is not "trivial." Pls. Mem. 17. Unchecked idling will release dangerous pollutants into the environment and endanger the public. And Plaintiff is not only challenging the sections of the Idling Law that apply to Citizen Reporters – Plaintiff is challenging (and seeking to enjoin) the entire Idling Law. Courts have found that the equities favor denying injunctive relief when doing so would endanger the public and cause environmental harm. See Chan v. U.S. Dep't of Transp., No. 23 Civ. 10365 (LJL), 2024 U.S. Dist. LEXIS 231658, at *163 (S.D.N.Y. Dec. 23, 2024) ("Granting Plaintiffs' request for a preliminary injunction would negatively harm the public interest as it would delay the environmental and economic benefits the Tolling Program was designed to convey and force the TBTA to bear a sizeable financial burden."); see also Broecker v. N.Y.C. Dep't of Educ., 585 F. Supp. 3d 299, 322 (E.D.N.Y. 2022) ("On balance, the equities at stake and the importance of safeguarding the public health and safety of NYC DOE schools and all who work or learn there, and the public interest, weigh heavily in favor of upholding the implementation by the NYC DOE…and again denying a temporary restraining order and preliminary injunction."). Thus, Plaintiff's motion for a preliminary injunction should be denied.

## CONCLUSION

For the foregoing reasons, the Court should grant City Defendants' motion to dismiss the Complaint and deny Plaintiff's motion for injunctive relief.

Dated: New York, New York
      June 5, 2026

                                      STEVEN BANKS
                                      Corporation Counsel of the City of New York

25

*Attorney for City Defendants*
100 Church Street
New York, New York 10007
(212) 356-2212
gzilkha@law.nyc.gov

By:  _____

Genan F. Zilkha
*Assistant Corporation Counsel*

26