UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
x

BEST TRAILS AND TRAVEL CORP.,

Plaintiffs,

-against-

NEW YORK CITY; NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION; LISA F. GARCIA, solely in her capacity as Commissioner of the New York City Department of Environmental Protection; NEW YORK CITY POLICE DEPARTMENT; JESSICA S. TISCH, solely in her capacity as Commissioner of the New York City Police Department; NEW YORK CITY DEPARTMENT OF PARKS & RECREATION; TRICIA SHIMAMURA, solely in her capacity as Commissioner of the New York City Department of Parks & Recreation; NEW YORK CITY DEPARTMENT OF SANITATION; GREGORY ANDERSON, solely in his capacity as Commissioner of the New York City Department of Sanitation; NEW YORK CITY OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS; and JOHN DOE and JANE DOE NOS. 1–50,

Defendants.
x

26-cv-2944 (CM)

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

McMahon, J.:

Plaintiff Best Trails and Travel Corp. ("Best Trails") is a New York charter-bus company that operates routes within New York and between New York City and neighboring States. It brings this action challenging a particular aspect of New York City's vehicle-idling laws – the

citizen-complaint enforcement program, under which private individuals who report an alleged idling violations receive a portion of any resulting civil penalty. Best Trails alleges that the challenged enforcement scheme violates the dormant Commerce Clause, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the constitutional prohibition against vague laws, and the Excessive Fines Clause of the Eighth Amendment.

Best Trails objects to the manner in which the City's vehicle-idling laws are enforced. According to Best Trails, the City of New York "essentially pawns-off its responsibility to every day citizens." Dkt. No. 4, ¶ 28. Citizen complainants are compensated financially. Summonses often rest on recordings submitted by those complainants, but the complainant need not appear at the ensuing administrative hearing. According to Best Trails, notices of violation sometimes arrive many months after the underlying incident, after records have been discarded and drivers have left its employment. Best Trails alleges that it has received approximately 117 notices of violation over the past several years and has paid approximately $30,000 in penalties, with additional summonses still pending.

Best Trails finds this enforcement system burdensome. But the question before this Court is whether this system violates the Constitution. It does not. The dormant Commerce Clause claim fails because Best Trails does not plausibly allege that the Idling Law burdens interstate commerce differently from comparable intrastate commerce. The procedural due process claim fails because, considered as a whole, the City's administrative and judicial review procedures afford constitutionally adequate process. Best Trails' substantive due process, vagueness, equal protection, and Excessive Fines claims likewise fail as a matter of law.

Accordingly, Defendants' motion to dismiss is **GRANTED**, and Best Trails' motion for a temporary restraining order and preliminary injunction is **DENIED**.

## I. BACKGROUND

### A. Best Trails and the City's Idling Restrictions

Best Trails is a New York corporation with its principal place of business in Brooklyn. It operates a private charter-bus company, transporting passengers within New York State and between New York City and neighboring states, including New Jersey. According to Best Trails, many of its buses use modern emissions-control technology and have been certified by the Environmental Protection Agency and the California Air Resources Board as near-zero-emission vehicles.

New York City regulates vehicle idling as part of its Air Pollution Control Code. The Code declares it to be City policy to "preserve, protect and improve the air quality of the city" in order, among other things, to promote public health and prevent injury to persons and property. N.Y.C. Admin. Code § 24-102. Section 24-163 implements that policy by restricting the amount of time that motor-vehicle engines are allowed to idle while the vehicle is parked, standing, or stopped.

As a general rule, § 24-163(a) prohibits a person from allowing a motor vehicle to idle for more than three minutes, unless the engine is being used to operate a loading, unloading, or processing device. The same subsection imposes a more stringent rule on buses at terminal points. When outside temperatures exceed forty degrees Fahrenheit, a bus may not idle while parked, standing, or stopped "at any terminal point, whether or not enclosed, along an established route." *Id.*, § 24-163(a).

Section 24-163(f) separately limits idling to one minute when a motor vehicle is adjacent to a qualifying school or park. As relevant here, that subsection contains the same exception for an engine used to operate a loading, unloading, or processing device. It also permits a school bus to idle to the extent necessary for mechanical work, to maintain an appropriate temperature for passenger comfort, or, during an emergency evacuation, to operate a wheelchair lift. *Id.*, § 24-

163(f). The City has specifically defined when a vehicle is "adjacent" to a school or park. *See* 15 RCNY § 39-02.

These restrictions apply to vehicles based on what they are doing and where they are located in New York City. Section 24-163 does not distinguish between buses engaged in interstate and intrastate transportation. Best Trails does not contend otherwise. Its challenge instead focuses principally on how the City enforces these restrictions and on the penalties that follow from violations.

### B. The Citizen-Complaint and OATH Enforcement Process

The City does not rely exclusively on municipal employees to identify idling violations. Section 24-182 permits private individuals to submit complaints to the Department of Environmental Protection ("DEP") alleging idling violations by buses and trucks, together with evidence of the alleged violation. N.Y.C. Admin. Code § 24-182(a). Nothing in § 24-182 limits that complaint procedure to privately operated buses; on its face, the provision applies to "buses" without regard to public or private ownership. *See id.*

Ordinarily, DEP can act on the complaint and prosecute the resulting summons. But if DEP neither serves a notice of violation nor informs the complainant that the complaint is frivolous or duplicative, the complainant may, within forty-five days after serving the complaint on DEP, serve a notice of violation on the alleged violator and file it with the New York City Office of Administrative Trials and Hearings ("OATH"). *Id.*, § 24-182(b). A complainant who initiates the OATH proceeding prosecutes it at his or her own expense, although DEP may later choose to intervene. *Id.*, § 24-182(c).

The statute gives citizen complainants a financial interest in successful enforcement. When DEP brings the proceeding based on information or evidence supplied by a citizen complainant,

the complainant receives twenty-five percent of the proceeds collected. *Id.*, § 24-182(d). When the complainant prosecutes the proceeding, the complainant receives fifty percent of any civil penalty collected. *Id.*, § 24-182(e).

A summons does not itself establish liability. Contested summonses are adjudicated at OATH under Chapter 6 of Title 48 of the Rules of the City of New York. The petitioner bears the burden of proving the factual allegations in the summons by a preponderance of the evidence. 48 RCNY § 6-12(a). A summons sworn to or affirmed under penalty of perjury constitutes *prima facie* evidence of the facts stated in it. OATH can admit only relevant and reliable evidence; irrelevant, immaterial, unreliable, or unduly repetitive evidence is excluded. *Id.*, § 6-12(b)–(c).

The OATH rules also provide each party with the right "to present evidence, to examine and cross-examine witnesses, [and] to make factual or legal arguments." 48 RCNY § 6-11(d). Because the sworn summons is *prima facie* evidence of its factual content, a citizen complainant is not required to appear at every hearing. But, upon a party's request, the hearing officer can subpoena a witness or adjourn the proceeding to obtain testimony or other evidence that the officer determines is necessary. *Id.*, § 6-13(b).

After the hearing, the hearing officer issues a written decision containing findings of fact and conclusions of law and either sustains or dismisses each charge. If a violation is sustained, the hearing officer imposes the applicable penalty. 48 RCNY § 6-17(a). A party may appeal to OATH's Appeals Unit, which reviews whether the hearing officer's factual findings are supported by a preponderance of the evidence and whether the legal determinations and penalty are supported by law. The Appeals Unit can affirm, reverse, remand, or modify the decision. 48 RCNY § 6-19(g)(1). Its written decision constitutes OATH's final determination, which is subject to judicial review in an Article 78 proceeding in New York Supreme Court. *Id.*, § 6-19(g)(2).

### C. Best Trails' Summonses and OATH Proceedings

Best Trails alleges that the citizen-complaint process has generated a substantial number of summonses against it. Over the past three years, it received approximately 117 idling tickets, paid approximately $30,000 in penalties, and had approximately forty-four additional tickets awaiting disposition when this action was filed. Dkt. No. 4, Compl., ¶ 28. In the first quarter of 2026 alone, Best Trails received fifty-one additional tickets. *Id.*, ¶ 56.

Best Trails attributes these citations in significant part to what it considers to be flaws in the citizen-complaint process. It alleges that citizen complainants lack formal training in emissions enforcement and do not use standardized procedures or properly calibrated equipment. *Id.*, ¶¶ 22, 24. It further alleges that some recordings[1] submitted against its buses are incomplete, inaudible, or otherwise insufficient to establish that a particular vehicle was idling. *Id.*, ¶ 23. Best Trails further alleges that, when it attends OATH hearings, it has no opportunity to question or cross-examine the complainants or to test the accuracy, completeness, or circumstances of their recordings. *Id.*, ¶ 26.

Best Trails also complains about the timing of the summonses. It alleges that some tickets are not served until a year after the underlying incident. By then, relevant GPS data, trip manifests, fuel logs, and other records are likely to have been discarded in the ordinary course of business, and drivers may have left Best Trails' employment. Those who remain likely no longer remember the circumstances of the particular long-ago trip. *Id.*, ¶ 27. According to Best Trails, these features – combined with the citizen complainant's statutory entitlement to a portion of any penalty

[1] Citizen complainants often submit recordings (*e.g.*, those made on their cell phones) of the sound of the allegedly idling bus.

collected – create an unacceptably high risk of erroneous liability findings. *See id.*, ¶¶ 19, 25–28, 39.

The complaint also relies on a December 18, 2025 decision of OATH's Appeals Division addressing four summonses issued to Best Trails. *See id.*, ¶ 38; Dkt. No. 76-3, Ex. C. The Appeals Division affirmed four findings that Best Trails buses had idled for more than three minutes and sustained penalties of $350, $350, $440, and $600. Best Trails had appeared through a representative at the underlying hearings; it did not dispute three of the summonses, but challenged the fourth on the ground that the video evidence submitted by the complainant had no sound and so did not establish that the engine was running audibly. The Appeals Division nonetheless affirmed the disputed violation. Dkt. No. 76-3, Ex. C, at 1–3.

On appeal, Best Trails also raised broader objections concerning the reliability of citizen-generated evidence, complainants' financial incentives, delayed notice, disparate treatment of public transit authorities, and the constitutionality of the enforcement process. The Appeals Division observed that several of these arguments had not been presented to the hearing officers, but nevertheless noted that compensation of citizen complainants is authorized by § 24-182, that hearsay is admissible in OATH proceedings, and that "OATH is not the proper forum for constitutional claims or claims of selective enforcement." *Id.* at 2 (citing *303 W. 42nd St. Corp. v. Klein*, 46 N.Y.2d 686, 693 n.5 (1979)).

Best Trails alleges that, because OATH will not adjudicate these constitutional objections, it must pursue them in this action. Dkt. No. 4, Compl., ¶ 38. As discussed below, however, OATH's inability to adjudicate constitutional claims does not mean that New York provides no judicial avenue for reviewing them.

### D. Procedural History

Best Trails commenced this action on April 9, 2026, and filed its complaint the following day. Dkt. No. 4. The complaint asserts claims under 42 U.S.C. § 1983, alleging violations of the dormant Commerce Clause, procedural and substantive due process, the prohibition against vague laws, the Equal Protection Clause, and the Excessive Fines Clause. It seeks declaratory and injunctive relief, as well as damages to the extent injunctive relief is unavailable.

On May 22, 2026, Best Trails moved for a temporary restraining order[2] and preliminary injunction barring Defendants from enforcing the challenged provisions against it during the pendency of this action. Dkt. Nos. 75–77. In support of that motion, Best Trails submitted the declaration of its owner, Aly Goldenberg, together with exhibits concerning its vehicles, summonses, and the December 18, 2025 OATH decision discussed above. Dkt. No. 76.

On June 5, 2026, Defendants moved under Rule 12(b)(6) to dismiss the complaint in its entirety and opposed Best Trails' request for preliminary relief. Dkt. Nos. 78–80. Best Trails filed its opposition to dismissal and reply in support of preliminary relief on June 26, 2026, Dkt. Nos. 85–86, and Defendants filed their reply on July 22, 2026, Dkt. No. 87.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in

[2] Best Trails did not follow up on its request for the immediate relief of a TRO, and none has issued.

the plaintiff's favor, but it need not accept legal conclusions couched as factual allegations. *Id.* at 678–79.

On a Rule 12(b)(6) motion, the Court ordinarily considers only the complaint and documents attached to or incorporated by reference in it. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). A document not formally incorporated may also be considered if the complaint "relies heavily upon its terms and effect," rendering the document "integral" to the complaint. *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). But this exception requires that the plaintiff have relied on the document in drafting the complaint; "mere notice or possession is not enough." *Id.* (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)). Materials falling outside these categories cannot be considered without converting the motion into one for summary judgment pursuant to Rule 12(d). *Id.* at 230–31.

The Court will consider the December 18, 2025 OATH Appeals Division decision discussed above. Although Plaintiff only filed the full decision as an exhibit to its preliminary-injunction motion, Dkt. No. 76-3, the complaint itself expressly quotes that decision and relies on OATH's treatment of Plaintiff's constitutional objections as a basis for its due process claim. *See* Dkt. No. 4, Compl., ¶ 38. The decision is thus integral to the complaint, and there is no dispute about its authenticity. The Court considers it for what OATH decided and stated, not for the truth of any disputed factual findings concerning the underlying idling violations.

By contrast, the Goldenberg Declaration and the other materials submitted solely in support of Plaintiff's motion for preliminary relief are not considered in deciding Defendants' Rule 12(b)(6) motion. They can be considered only in connection with the motion for a preliminary injunction.

## III. DISCUSSION

### A. The Dormant Commerce Clause Claim

Count I alleges that the City's idling restrictions violate the dormant Commerce Clause because they discriminate against interstate commerce and, alternatively, because they impose an undue burden on interstate commerce. Dkt. No. 4, Compl., ¶¶ 30–36. Best Trails is wrong on both counts.

The Commerce Clause provides that "The Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Although phrased as an affirmative grant of authority to Congress, the Supreme Court has "long held that this Clause also prohibits state laws that unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019). This "negative" aspect of the Commerce Clause – generally called the dormant Commerce Clause – "prevents the States from adopting protectionist measures and thus preserves a national market for goods and services." *Id.* (quoting *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273 (1988)).

The doctrine traces to the earliest years of the Republic. Its roots extend to *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824), and by the latter half of the nineteenth century it was firmly established. *Tennessee Wine & Spirits Retailers Ass'n*, 588 U.S. at 514–15. Under the Articles of Confederation, the States obstructed interstate trade while the national government lacked effective power to impose a uniform commercial policy. Pending any grant of commercial authority to Congress, "the states acted individually," and "selfish motives frequently dictated what was done." Max Farrand, *The Framing of the Constitution of the United States* 7 (1913). States that enjoyed geographic advantages over their neighbors were "only too apt to take advantage of that fact." *Id.* James Madison complained that States lacking convenient ports were

"subject to be taxed by their neighbors, through whose ports their commerce was carried on"; New Jersey, caught between Philadelphia and New York, was likened to "a cask tapped at both ends." *Id.* Put simply, "Interference with the arteries of commerce was cutting off the very life-blood of the nation." *Id.*

Commerce was therefore at the center of the movement for constitutional reform. In 1786, Virginia called for commissioners from the States "to take into consideration the trade of the United States." *Id.* at 8. That meeting at Annapolis, although attended by only five States, recommended a convention of broader scope in Philadelphia. *Id.* at 8–10. At Philadelphia, discussion of the power to regulate interstate commerce was "almost uniformly linked to the removal of state trade barriers," and free trade among the States figured prominently in the ratification debates. *Tennessee Wine & Spirits Retailers Ass'n*, 588 U.S. at 516. The Supreme Court has therefore described removing state trade barriers as "a principal reason for the adoption of the Constitution." *Id.* at 515. Chief Justice Marshall later expressed the same principle in *Gibbons*, stating that "Commerce among the States, cannot stop at the external boundary line of each State." 22 U.S. at 194. The national government necessarily reaches those "internal concerns which affect the States generally." *Id.* at 195.

That history is reflected in the modern doctrine. The dormant Commerce Clause guards against the "economic Balkanization" between the States that the Framers sought to avoid. *Tennessee Wine & Spirits Retailers Ass'n*, 588 U.S. at 517 (quoting *Granholm v. Heald*, 544 U.S. 460, 472 (2005)). Consistent with that concern, the prohibition against treating in-state economic interests more favorably than their out-of-state competitors lies at the "very core" of dormant Commerce Clause jurisprudence. *National Pork Producers Council v. Ross*, 598 U.S. 356, 369–

70 (2023) (quoting *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 581 (1997)).

Modern dormant Commerce Clause doctrine addresses two different kinds of state and local regulation. A law that discriminates against interstate commerce faces "a virtually *per se* rule of invalidity." *Granholm v. Heald*, 544 U.S. 460, 476 (2005) (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)). Such a law, motivated by "simple economic protectionism," can survive only if the government shows that there is "no other means to advance a legitimate local purpose." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 338–39 (2007) (citations omitted). A law that does not discriminate against interstate commerce, but instead regulates evenhandedly while imposing only an incidental burden on interstate commerce, is analyzed under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). *See National Shooting Sports Foundation, Inc. v. James*, 144 F.4th 98, 113–14 (2d Cir. 2025).

1. <u>The Idling Restrictions Do Not Discriminate Against Interstate Commerce</u>

For purposes of the dormant Commerce Clause, discrimination means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers*, 550 U.S. at 338 (quoting *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Oregon*, 511 U.S. 93, 99 (1994)). If a state law discriminates against out-of-state goods or nonresident economic actors, it survives only upon a showing that it is narrowly tailored to "advanc[e] a legitimate local purpose." *Tennessee Wine & Spirits Retailers Ass'n*, 588 U.S. at 518 (quoting *Department of Revenue of Kentucky v. Davis*, 553 U.S. 328, 338 (2008)).

Best Trails' discrimination theory is that the City enforces its idling restrictions only against private bus companies, while the MTA and NYCTA are not subjected to comparable

enforcement. Dkt. No. 4, Compl., ¶¶ 34(f), 35. The allegation does not describe discrimination against interstate commerce.

The comparison underlying a discrimination claim must be between comparable economic actors. *General Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997) ("Conceptually, of course, any notion of discrimination assumes a comparison of substantially similar entities."). The Supreme Court held in *United Haulers Association, Inc. v. Oneida-Herkimer Solid Waste Management Authority*, 550 U.S. 330, 342 (2007) that an ordinance benefiting a public facility while "treating all private companies exactly the same" did not discriminate against interstate commerce. "States and municipalities are not private businesses—far from it"; their responsibilities for health, safety, and welfare "set state and local government apart from a typical private business." *Id.* at 342–43.

This rule makes easy work of Best Trails' principal theory. Best Trails is a private charter-bus company. The entities it says receive preferential treatment are public transit authorities. Best Trails itself concedes the point. *See* Dkt. No. 86, Pl.'s Opp'n, at 6 ("A law that favors a government entity while treating every private operator the same does not discriminate against interstate commerce, because a public entity is not substantially similar to the private firms it regulates."). So assuming *arguendo* that Public Authorities Law § 1266(8) limits City enforcement against the MTA and NYCTA in particular circumstances, the resulting preference for buses run by those public authorities does not establish discrimination against interstate commerce. "States and municipalities are not private businesses." *United Haulers*, 550 U.S. at 342. Laws favoring local government "may be directed toward any number of legitimate goals unrelated to protectionism." *Id.* at 343.

Best Trails also alleges in a footnote that the City has granted or is considering variances from § 24-163 for "other motorcoach operators." Dkt. No. 4, Compl., ¶ 35 n.2. But the complaint

does not identify those operators or allege facts tending to show that they are sufficiently similar comparator to Best Trails – specifically, that they too operate interstate bus service. Nor does the complaint allege that any particular interstate bus operator has obtained a variance that the City was allegedly "considering." The footnote thus does not save the dormant Commerce Clause claim from dismissal.

For these reasons, Best Trails does not plausibly allege that the challenged provisions discriminate against interstate commerce in violation of the dormant Commerce Clause.

2. Best Trails Has Not Pleaded an Undue Burden Under *Pike*

A nondiscriminatory law can still impose an impermissible incidental burden on interstate commerce. As *Pike v. Bruce Church, Inc.* put it, when a law "regulates even-handedly to effectuate a legitimate local public interest," it nevertheless may be invalid if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." 397 U.S. at 142; *see also Selevan v. New York Thruway Authority*, 584 F.3d 82, 95 (2d Cir. 2009).

But the Commerce Clause does not prohibit local regulation simply because it affects interstate commerce. States "may impose incidental burdens on interstate commerce . . . to promote safety or general welfare." *New York State Trawlers Ass'n v. Jorling*, 16 F.3d 1303, 1307 (2d Cir. 1994). The Supreme Court likewise has recognized that state authority "is never greater than in matters traditionally of local concern." *Kassel v. Consolidated Freightways Corp. of Delaware*, 450 U.S. 662, 670 (1981) (plurality opinion).

And an incidental effect on interstate commerce is not enough to trigger *Pike* balancing. The plaintiff must first identify a burden on interstate commerce that is different from the burden on intrastate commerce. The Second Circuit has explained that the "incidental" burdens addressed by *Pike* "are the burdens on interstate commerce that exceed the burdens on intrastate commerce."

*Town of Southold v. Town of East Hampton*, 477 F.3d 38, 50 (2d Cir. 2007) (quoting *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1287 (2d Cir. 1995)). Thus, "at a minimum," the challenged law "must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." *Id.* (quoting *National Electrical Manufacturers Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001)).

Put another way, a plaintiff must show "burdens on interstate commerce that exceed the burdens on intrastate commerce" before asking whether "those excess burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'" *National Shooting Sports Foundation, Inc. v. James*, 144 F.4th 98, 114 (2d Cir. 2025) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 217 (2d Cir. 2004)). Only if the first showing is made does the Court balance the excess interstate burden against the law's local benefits.

Best Trails never reaches that threshold burden. "The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 (1978). The dormant Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." *Restaurant Law Center v. City of New York*, 90 F.4th 101, 120 (2d Cir. 2024) (quoting *Exxon*, 437 U.S. at 127–28). The question therefore is not whether § 24-163 makes Best Trails' interstate operations more costly. It is whether § 24-163 burdens interstate transportation more heavily than comparable intrastate transportation.

The complaint does not allege that it does. Section 24-163 applies the same idling restrictions to a private bus stopped in New York City whether the bus arrived from New Jersey, traveled from elsewhere in New York State, or operated entirely within the City. Best Trails alleges that the resulting penalties discourage interstate routes, make those routes more expensive,

interfere with its ability to recruit and retain drivers, and impede the marketing of its interstate services. Dkt. No. 4, Compl., ¶¶ 33–34. These allegations describe costs Best Trails incurs while conducting interstate business. They do not identify a burden imposed on interstate transportation that comparable intrastate transportation does not bear. A private bus operating wholly within New York City is subject to exactly the same idling limit and potential penalty as a Best Trails bus arriving from another State. The complaint therefore does not allege the differential burden to trigger *Pike* balancing. Consistent with the *Pike* test, the Court "need not proceed further." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001).

Best Trails argues that this question cannot be resolved at the pleading stage, relying principally on *Selevan v. New York Thruway Authority*, 584 F.3d 82 (2d Cir. 2009). Dkt. No. 86, Pl.'s Opp'n, at 7. But *Selevan* establishes no such categorical rule. There, the plaintiffs challenged the New York Thruway Authority's toll policy for the Grand Island Bridges, which form part of Interstate 190 between Buffalo and Niagara Falls. The policy charged nonresidents of Grand Island 75 cents to cross the bridge, while Grand Island residents could pay as little as 9 cents. *Id.* at 87. The plaintiffs alleged that they paid the higher toll while making interstate trips to New Jersey. *Id.* at 87–88. More importantly, their complaint alleged that charging nonresidents "tolls that are more than eight times greater than the tolls charged to Grand Island residents" placed "burdens on interstate commerce that exceed any local benefit that allegedly may be derived from them." *Id.* at 95. The Second Circuit held those allegations were sufficient to survive a motion to dismiss. *Id.* While the toll classification was not itself an interstate/intrastate classification, the plaintiffs had alleged a concrete difference in the charge imposed on them while using an Interstate highway. Best Trails alleges no comparable difference in what interstate and intrastate bus operators must pay or do.

Similarly, in *Town of Southold v. Town of East Hampton*, 477 F.3d 38 (2d Cir. 2007), an East Hampton ordinance effectively prevented an interstate ferry operator from establishing vehicular ferry service between Connecticut and East Hampton. 477 F.3d at 42–45. Although the ordinance applied without regard to a ferry's origin, the plaintiff alleged that it forced interstate travelers onto a "longer and more expensive" route. *Id.* at 50–51. The court vacated the district court's grant of summary judgment to East Hampton on the dormant Commerce Clause claim and remanded, finding genuine disputes of material fact about both the ordinance's burden on interstate commerce and its local benefits. *Id.* at 51–52. Here, even accepting Best Trails' allegations as true, § 24-163 neither denies interstate buses a route available to intrastate buses nor requires interstate travelers to take a longer or more costly route.

More recent Second Circuit decisions confirm that a *Pike* claim can be dismissed when the complaint does not plead the required burden. In *VIZIO, Inc. v. Klee*, the court affirmed dismissal under Rule 12(b)(6) because the plaintiff had "not demonstrated that there are 'burdens on interstate commerce that exceed the burdens on intrastate commerce.'" 886 F.3d at 260 (quoting *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1287 (2d Cir. 1995)). The court emphasized that the challenged law "treat[ed] all private companies exactly the same," regardless of their State of origin. *Id.* (quoting *United Haulers Ass'n, Inc.*, 550 U.S. at 342). So too here.

It is true, as Best Trails argues, that in *National Shooting Sports Foundation, Inc. v. James*, 144 F.4th 98, 114–16 (2d Cir. 2025), the Second Circuit cautioned that courts are generally "'ill qualified to develop Commerce Clause doctrine dependent on . . . predictive judgments'" and should not "'project[ ] the effect of applying the Commerce Clause' where the economic benefits and burdens of a regulation are not clear." But the Second Circuit made that observation while affirming dismissal under Rule 12(b)(6), notwithstanding the plaintiffs' argument that a *Pike*

inquiry was "necessarily fact-intensive." *Id.* at 115. The court concluded that the complaint's generalized assertions of harm "fall well short of what is required to demonstrate an undue burden under *Pike*." *Id.*

*Metro Produce Distributors, Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955 (D. Minn. 2007), on which plaintiff relies, is both not binding on this Court and distinguishable. There, a Minneapolis ordinance prohibited mobile refrigeration units from operating between 10:00 p.m. and 6:00 a.m. in residential areas. The court expressly recognized that the ordinance treated interstate and intrastate trucks alike. In relevant part, "No trucks—conducting either intrastate or interstate operations—are allowed to operate a refrigeration unit at night" under the specified conditions. *Id.* at 962. But on cross-motions for summary judgment, the record established that the regulation led to concrete effects on the movement of goods in interstate commerce. Because fresh produce had to remain refrigerated, the ordinance "unduly control[led] the scheduling of interstate shipments to and from the distribution facility." *Id.* at 963. Compliance required participants in the produce supply chain to alter their schedules for "an enormous volume of produce," and "[t]he ripple effect [was] tremendous" because distributors also had to "adjust schedules of other deliveries in other locations." *Id.* at 963–64. On that fully developed record, the court found "considerable burdens on interstate commerce" that exceeded the ordinance's local benefits. *Id.* at 963.

Best Trails argues, in substance, that discovery might reveal comparable effects here. But the burden there followed from the interstate nature of the regulated activity (*i.e.*, the local restriction controlled the timing of interstate shipments and forced corresponding changes to deliveries elsewhere). Best Trails alleges no such effect. Section 24-163 does not require an interstate bus to change its route or schedule, use different equipment, travel additional miles, or

alter operations outside New York City. The costs Best Trails identifies result from applying the same local idling rule to its buses while they happen to be engaged in interstate service. They are not costs imposed because that service is interstate. *See VIZIO*, 886 F.3d at 259–60; *National Shooting Sports Foundation*, 144 F.4th at 114–16.

Because Best Trails has not plausibly alleged a burden on interstate commerce exceeding the burden on intrastate commerce, there is nothing for the Court to balance under *Pike*. The Court therefore has no occasion to weigh that nonexistent excess burden against the City's asserted interests in reducing vehicle emissions and protecting public health.

Accordingly, Count I, which alleges that the challenged idling restrictions violate the Commerce Clause and dormant Commerce Clause, is DISMISSED in its entirety.

### B. Best Trails Has Not Pleaded a Procedural Due Process Violation

The Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a procedural due process claim, a plaintiff must plausibly allege that the government deprived it of a cognizable liberty or property interest without affording constitutionally sufficient process. *Retail Property Trust v. Nassau County Department of Assessment*, 2026 WL 2263300, at *9 (2d Cir. Aug. 6, 2026) (quoting *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017)). The Court assumes for purposes of this motion that Best Trails has a protected property interest in the money it must pay when an idling violation is sustained. The question is whether the procedures available to Best Trails are constitutionally adequate.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citation omitted). The inquiry therefore considers three factors: "First, the private interest that will be affected by the

official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest," including the administrative burdens of additional procedures. *Id.* at 335.

Best Trails argues that the availability of Article 78 review cannot, by itself, defeat its procedural due process claim because the alleged defects are built into the City's citizen-complaint enforcement process. Dkt. No. 86, Pl.'s Opp'n, at 10–11. That is correct as a statement of the general rule. When a deprivation results from an established governmental procedure, "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). The question is whether the procedures that are available provide constitutionally sufficient process.

The Second Circuit's decision in *Retail Property Trust v. Nassau County Department of Assessment*, 2026 WL 2263300 (2d Cir. Aug. 6, 2026), illustrates the point. There, Nassau County imposed approximately $4.75 million in civil penalties on the owner of Roosevelt Field Mall for failing to submit required financial reports. 2026 WL 2263300, at *2. The owner denied receiving the preliminary letters that County law required before imposition of the penalty – letters that would have notified it of the potential fine and given it an opportunity to cure. *Id.* at *2, 9. The Second Circuit nevertheless rejected the owner's procedural due process claim because, once the County sought to impose the fine, the owner could commence an Article 78 proceeding and seek to enjoin enforcement before any money was collected. *Id.* at *9. Because Article 78 was available "*before* actual prejudice arises," the Second Circuit held that the procedures were constitutionally adequate. *Id.* (quoting New *York State National Organization for Women v. Pataki*, 261 F.3d 156, 168 (2d Cir. 2001)).

The OATH rules provide several opportunities to contest an idling charge. A summons must state the essential facts constituting the alleged violation, including the date, time where applicable, and place of the alleged conduct; identify the provision allegedly violated; state information sufficient to calculate the maximum penalty; and notify the respondent of the hearing. 48 RCNY § 6-08(c). The hearing ordinarily must be scheduled at least fifteen days after service of the summons. *Id.*, § 6-08(c)(5).

At the hearing, the petitioner bears the burden of proving the violation by a preponderance of the evidence. 48 RCNY § 6-12(a). The summons, if sworn, only provides *prima facie* evidence of a violation. Best Trails can present evidence to the contrary, examine and cross-examine witnesses, and make factual and legal arguments. *Id.*, § 6-11(d). It can also ask the hearing officer to subpoena a witness or adjourn the hearing to obtain testimony or documents. The hearing officer can grant that request when s/he determines that "necessary and material evidence will result." *Id.*, § 6-13(b). The hearing officer must issue a written decision containing findings of fact and conclusions of law, *id.*, § 6-17(a), and Best Trails can seek administrative appellate review, *id.*, § 6-19. After the administrative process concludes, Best Trails can seek review of the final determination in New York State Supreme Court under Article 78.

Best Trails nevertheless identifies three features that it says render these protections inadequate: (1) the City permits financially compensated, allegedly untrained citizens to generate evidence; (2) Best Trails has no opportunity at OATH hearings to question or cross-examine the complainants if they are not at the hearing; and (3) summonses are sometimes served long after the alleged violation. Dkt. No. 4, Compl., ¶¶ 22–28, 39.

Start with the fact that evidence is submitted by citizen complainants. The OATH rules give a citizen's complaint real evidentiary effect. As noted above, if a summons is sworn to or

affirmed under penalty of perjury, it "will be admitted as *prima facie* evidence of the facts stated therein." 48 RCNY § 6-12(b). A report incorporated into and served with the summons likewise constitutes *prima facie* evidence of the factual allegations it contains. *Id.* Thus, if Best Trails offers nothing in response, a citizen-generated submission can support a finding of a violation. But that does not mean the citizen complainant determines liability or that the evidence is immune from challenge. The petitioner retains the burden of persuasion by a preponderance of the evidence, *id.* § 6-12(a), and OATH must exclude evidence submitted by a citizen complainant if it is "irrelevant, immaterial, unreliable or unduly repetitious," *id.* § 6-12(c). Best Trails can object to the reliability of any recording or other evidence, present contrary evidence, and cross-examine any witness who testifies. *Id.*, §§ 6-11(d), 6-12(f).

It is true that the citizen complainant is not required to appear at the hearing simply because Best Trails contests the charge. But under 48 RCNY § 6-13(b), the hearing officer can issue a subpoena or adjourn the hearing to obtain testimony or documents when "necessary and material evidence will result." The decision whether to compel the complainant's appearance is, therefore, discretionary and rests with the hearing officer, who can decide whether to subpoena the complainant.

That discretion does not itself violate due process. In *Yancey v. Apfel*, 145 F.3d 106, 112–13 (2d Cir. 1998), a Social Security claimant argued that due process gave her an absolute right to subpoena and cross-examine a physician whose written report was used in the administrative proceeding. The Second Circuit rejected that argument, stating that "the right to due process in a social security disability hearing does not require that a reporting physician be subpoenaed any time a claimant makes such a request." *Id.* at 112. Instead, due process requires an opportunity for cross-examination "where reasonably necessary to a full development of the evidence in the

case." *Id.* at 113 (quoting *Flatford v. Chater*, 93 F.3d 1296, 1307 (6th Cir. 1996)). The court agreed that the decision whether to issue the subpoena could remain with the administrative law judge without creating any due process violation. *Id.* at 112–13.

The same reasoning supports OATH's discretionary subpoena procedure. Best Trails has no automatic constitutional right to live testimony in every contested proceeding. What is required is that it have a meaningful opportunity to challenge the evidence used against it. *See Yancey*, 145 F.3d at 112–13; *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984).

Best Trails alleges that it has "no opportunity to question or cross-examine" citizen complainants. But "there is no absolute due process right to cross-examine witnesses during an administrative hearing or trial." *Raja v. Burns*, 2020 WL 568236, at *8 (E.D.N.Y. Feb. 5, 2020). The complaint fails to describe a single instance in which Best Trails was denied a § 6-13(b) subpoena that it requested during an OATH proceeding. Nor does it explain why, in any particular instance, a complainant's testimony was necessary to resolve a particular evidentiary dispute. Dkt. No. 4, Compl. ¶¶ 26, 39. Best Trails thus does not plausibly allege that the procedures developed for OATH deny the cross-examination necessary to a fair hearing.

The fact that the complainant stands to gain financially from a finding adverse to Best Trails likewise does not in and of itself establish a due process violation. Section 24-182 gives a successful citizen complainant a percentage of a penalty actually collected, so the complainant has a real financial incentive to report violations. That interest bears on credibility, and Best Trails can argue as much to the hearing officer.

In *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980), a restaurant operator challenged a provision directing that civil penalties collected for child-labor violations be used to reimburse the enforcement agency's expenses. The restaurant operator argued that the arrangement encouraged

enforcement officials to impose unduly numerous and excessive penalties. *Id.* at 239–42. The Supreme Court distinguished the official seeking penalties from the adjudicator deciding whether they were warranted. The former performed a function "akin to that of a prosecutor or civil plaintiff." *Id.* at 247. The Court emphasized that "the reimbursement provision of § 16(e) is inapplicable to the Office of Administrative Law Judges," and explained that the strict neutrality requirements governing adjudicators "are not applicable to those acting in a prosecutorial or plaintiff-like capacity." *Id.* at 248.

The same reasoning applies here. The citizen complainant does not decide whether a violation occurred or what penalty will be imposed. Even when a citizen prosecutes a summons under § 24-182(b), liability is determined by an OATH officer who receives no portion of the penalty. As in *Marshall*, the adjudicator has no personal financial stake in the recovery sought by the complaining party.

The Ninth Circuit applied this reasoning to compensated private claimants in *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993). There, a former Boeing employee brought a False Claims Act suit alleging improper charges under federal defense contracts. The government declined to intervene, leaving the employee to pursue the action, with a statutory entitlement to twenty-five to thirty percent of any recovery. *Id.* at 745–46. The court rejected Boeing's due process objection to that financial interest, emphasizing that relators lack the "power to employ the full machinery of the state in scrutinizing any given individual." *Id.* at 760 (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987)). The court contrasted the relators' role with the "terrible array of coercive methods" available to public prosecutors, including "police investigation and interrogation, warrants, immunized informers and agents, authorized wiretapping, civil investigatory demands, and enhanced subpoena power." *Id.* (citing

*Young*, 481 U.S. at 811). The Ninth Circuit explained, "Qui tam relators pursue their claims essentially as private plaintiffs, except that the government may displace a relator as the party with primary authority for prosecuting an action. Thus, qui tam litigation does not implicate due process concerns." *Id.*

Section 24-182's citizen complainant incentives do not establish a due process violation either. Citizens can record conduct they observe and submit their evidence to the New York City Department of Environmental Protection ("DEP"). When the statutory conditions are met, they can pursue a civil penalty at their own expense. N.Y.C. Admin. Code § 24-182(a)–(c). Section 24-182 gives them no authority to direct police investigations, search vehicles, compel drivers to answer questions, or independently demand company records. A complainant seeking to compel testimony or documents from third parties must obtain a subpoena from the OATH officer. 48 RCNY § 6-13(b). The complaint must first be submitted to DEP, which can intervene in the proceeding at any time. N.Y.C. Admin. Code § 24-182(a)–(c). And a citizen who prosecutes the proceeding must prove the violation to OATH, which determines liability and the applicable penalty. 48 RCNY §§ 6-12(a), 6-17(a). The citizen thus pursues a civil claim with the limited authority of a complaining party, subject to agency intervention and independent adjudication. Best Trails is able to contest the evidence through the procedures discussed above. Consistent with the reasoning of *Marshall* and *Kelly*, the complainant's statutory interest in a successful recovery does not deny Best Trails constitutional due process.

That leaves Best Trails' delayed-notice theory. This presents a more substantial procedural question.

Best Trails alleges that summonses often arrive as much as one year after the alleged violation. By then, GPS data, trip manifests, fuel logs, and other contemporaneous records "have

been discarded in the ordinary course of business pursuant to standard retention practices." Also, drivers have either left Best Trails' employment or can no longer recall such long-ago events. Dkt. No. 4, Compl., ¶¶ 27–28.

Delayed notice can hinder a defense, even though the petitioner retains the burden of proof.

In *New York State National Organization for Women v. Pataki*, 261 F.3d 156 (2d Cir. 2001) ("*NOW*"), the plaintiffs challenged lengthy delays in the New York State Division of Human Rights' resolution of discrimination complaints. They alleged that the delays impaired the claimants' ability to prove their claims as witnesses became unavailable, memories faded, and evidence was lost. *Id.* at 160–62.

The Second Circuit distinguished delay in resolving an administrative proceeding, where the parties already know that a dispute exists, from delay in notifying a respondent that proceedings will be brought at all. In the latter circumstance, the respondent can lack the opportunity "to preserve records, memorialize witness accounts, and maintain other materials necessary to advance a meaningful defense." *Id.* at 167.

In this case, Best Trails alleges that it does not learn of the idling charge until after potentially relevant evidence has disappeared. It argues that delayed notice prevented it from preserving records and obtaining accounts from the drivers needed to prepare a defense.

But *NOW* did not hold that evidentiary prejudice from administrative delay necessarily established a due process violation. The court expressed "deep reservations" about whether "actual prejudice to a cause of action following a period of extreme government delay is sufficient to make out a property deprivation." *NOW*, 261 F.3d at 167. It expressly left open whether prejudice to the pending discrimination claims sufficed. *Id.* The court nevertheless rejected the due process claims because the claimants could have used Article 78 proceedings to compel the

agency to act before prejudice arose. Thus, even assuming a property deprivation, the available procedures satisfied due process. *Id.* at 167–68. The court also emphasized that claimants who knew their proceedings were pending could protect against prejudice by "investigating, memorializing testimony from potentially forgetful or absent witnesses, and preserving documents." *NOW*, 261 F.3d at 166–67.

If Best Trails failed to have the evidence it needed to defend against summonses, it was the author of its own misfortune. Best Trails' obligation to comply with the idling restrictions existed before any summons arrived. Section 24-163 regulates motor-vehicle idling and expressly addresses buses, placing Best Trails, as a commercial bus operator, squarely within its coverage. N.Y.C. Admin. Code § 24-163(a), (f). That regulatory obligation provides good reason to anticipate enforcement and retain business records relevant to demonstrating compliance, even before notice of a particular charge. *Cf. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) (explaining, in rejecting a vagueness challenge to business regulation, that "businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action"). Best Trails' own allegations describe a recurring delay that could have been taken into account in its record-retention practices. It claims that summonses usually arrive about a year after the alleged violation. Dkt. No. 4, Compl., ¶ 27. If indeed there was a recurring delay as alleged, Best Trails could have retained a year's worth of routine business records-- hardly an unreasonable precaution for a commercial enterprise of any sort. A records retention policy covering what the plaintiff alleges is the usual period of delay would solve the problem that Best Trails identifies – because it would have preserved GPS data, trip manifests, and fuel logs that it might be able to use if and when it received a summons for a particular alleged instance of idling. The fact that Best Trails often did not receive

notice of an alleged violation for a year after that violation does not establish that Best Trails lacked any practical means of preserving documentary evidence for its defense.

The above analysis defeats Best Trails' due process argument without more; there is no need to consider any other argument. But other arguments do support dismissal of this claim. Best Trails also must plausibly allege that the one year delay it pleads delay actually impaired its ability to defend against the charge. In *DeMichele v. Greenburgh Central School District No. 7*, 167 F.3d 784 (2d Cir. 1999), the Second Circuit affirmed summary judgment rejecting a teacher's due process challenge to disciplinary charges based on conduct that occurred twenty-four years earlier. The court held that "a showing of actual prejudice is an essential element of a sufficient due process claim of unconstitutional pre-accusation delay." *Id.* at 791. The teacher had not identified evidence that would have been available had the charges been brought earlier, and generalized concerns about faded memories did not establish prejudice. *Id.* The court found additional support for its conclusion in the due process balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), given the school district's "exceptionally weighty" interest in protecting students from sexual misconduct by teachers and the uncertain benefit of earlier proceedings to the teacher's defense. *DeMichele*, 167 F.3d at 791–92.

At the pleading stage, Best Trails must at least allege how the missing records would have helped it to defend against the violations. The fact that records have been lost does not, without more, establish prejudice. In *Energy West Mining Co. v. Oliver*, 555 F.3d 1211 (10th Cir. 2009), a miner whose 1980 claim for black-lung benefits had been denied filed a new claim in 2002. The Department of Labor had meanwhile destroyed the earlier claim file pursuant to its record-retention policy. The employer argued that the missing medical evidence impaired its ability to contest whether the miner's condition had sufficiently changed since the earlier denial. *Id.* at

1215–16, 1219. The Tenth Circuit rejected that argument because the employer had conceded the relevant change in the miner's disability status, rendering the missing evidence unnecessary to resolve any disputed issue. *Id.* at 1223–24. The court accordingly distinguished cases in which missing evidence was central to meaningful review from one involving only the "unadorned loss of evidence." *Id.* at 1220–21.

At the pleading stage, Best Trails must therefore plausibly allege facts tending to show that the loss of records actually impaired its ability to contest an idling charge. *See Karst Robbins Coal Co. v. Director, Office of Workers' Compensation Programs*, 969 F.3d 316, 329–30 (6th Cir. 2020) (requiring prejudice from delay without requiring proof of precisely what missing evidence would have established or that it would have changed the outcome). Best Trails identifies records that were discarded before notice arrived – GPS data, trip manifests, and fuel logs – and alleges that their loss prevented it from reconstructing bus operations at the time of the alleged violations. Dkt. No. 4, Compl., ¶ 27. But Best Trails does not allege how having those records would have enabled it to contest violations. The complaint must plead facts supporting a reasonable inference that the loss of the particular records mentioned in the complaint impaired its ability to defend against an idling charge. *Hammer v. Town of Bedford New York*, 2026 WL 100793, at *6 (S.D.N.Y. Jan. 13, 2026) (applying *DeMichele* at the pleading stage and dismissing a due process claim based on delayed summonses for failure to plausibly allege actual prejudice).

Here, the complaint does not explain how GPS data, trip manifests or fuel logs would be used to defend against a charge of idling. The pleading's reference to unspecified "other operations relevant to the idling restriction" supplies no facts from which an inference of actual prejudice as a result of the loss of these records could be drawn. Dkt. No. 4, Compl., ¶ 27. As a result, Best Trails' challenge to delayed notice fails to state a claim for denial of procedural due process under

the Fourteenth Amendment, for failure to plausibly allege actual prejudice. *See DeMichele*, 167 F.3d at 791.

Finally, OATH's statement that it "is not the proper forum for constitutional claims or claims of selective enforcement" does not leave Best Trails without a forum in which to raise those claims. Dkt. No. 76-3, Ex. C, at 2. In *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001), the Second Circuit explained that an Article 78 petitioner can "submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." The court therefore described Article 78 as "a wholly adequate post-deprivation hearing for due process purposes." *Id.* at 175. OATH's refusal to adjudicate constitutional claims thus does not foreclose judicial review of such claims; Best Trails can raise those claims in an Article 78 proceeding.

The adequacy of that judicial review is confirmed by the very recent decision in *Retail Property Trust v. Nassau County Department of Assessment*, 2026 WL 2263300, at *9 (2d Cir. Aug. 6, 2026). There, the Second Circuit rejected a procedural due process challenge because Article 78 allowed a property owner to seek an injunction before the County collected the challenged penalty. *Id.* Article 78 procedures were thus available "before actual prejudice arises." *Id.* (quoting *New York State National Organization for Women*, 261 F.3d at 168).

Here, Best Trails receives notice, an OATH hearing, and administrative appellate review before Article 78 review becomes necessary. Article 78 then supplies a judicial forum for any constitutional challenge to the final determination. Taken together, those procedures are constitutionally adequate.

Accordingly, Count II is DISMISSED insofar as it alleges any violation of procedural due process.

### C. Best Trails Has Not Pleaded a Substantive Due Process Violation

The Fourteenth Amendment "cover[s] a substantive sphere as well [as a procedural one], 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Retail Property Trust*, 2026 WL 2263300, at *10 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). But the standard governing a substantive due process challenge depends on the nature of the governmental action being challenged. Best Trails' claim implicates both the legislative decision to prohibit specified forms of vehicle idling and the manner in which that prohibition is enforced. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). The claim fails under either standard.

The complaint itself characterizes the enforcement of § 24-163 as either irrational or, alternatively, "egregious, outrageous government conduct." Dkt. No. 4, Compl., ¶ 40. But when a legislative enactment neither interferes with a fundamental right nor singles out a suspect classification, it violates substantive due process only if "there is no rational relationship between the legislation and a legitimate legislative purpose." *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009) (quoting *Maloney v. Cuomo*, 554 F.3d 56, 59–60 (2d Cir. 2009)). The review is highly deferential. "To uphold the legislative choice, a court need only find some 'reasonably conceivable state of facts that could provide a rational basis' for the legislative action." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997) (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

The Second Circuit's decision in *Retail Property Trust v. Nassau County Department of Assessment*, 2026 WL 2263300 (2d Cir. Aug. 6, 2026), is, again, particularly instructive. Nassau County required commercial property owners to submit financial information so that the County could improve the accuracy of property assessments and reduce tax-refund liability, which had reached approximately $100 million per year. *Id.* at *1. The original law imposed a flat $500

penalty, but approximately twenty percent of property owners still refused to provide the required information. *Id.* The County therefore replaced that penalty with one ranging from 0.25% to 0.75% of a property's fair market value, depending on the duration of the owner's noncompliance. *Id.* The owner of Roosevelt Field Mall failed to submit the required information for two consecutive years and was assessed $4,753,209 in civil penalties. *Id.* at *2.

In challenging the law on substantive due process grounds, the owner argued that the earlier $500 penalty had produced comparable compliance, that the financial information collected under the law ultimately proved of little use in assessing large shopping malls, and that the County later enacted an amnesty law permitting settlement of the penalties without submission of the information. *Id.* at *10. The Second Circuit rejected the substantive due process challenge, explaining that "litigants may not procure invalidation of . . . legislation merely by tendering evidence in court that the legislature was mistaken." *Id.* (quoting *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)). It was enough that the legislature "could rationally have decided that the statute would fulfill [its] intended purpose." *Id.* (quoting *Catlin v. Sobol*, 93 F.3d 1112, 1120 (2d Cir. 1996)). "That is all that rational basis review requires." *Id.*

Section 24-163 readily clears that threshold. The City has expressly declared its policy to "preserve, protect and improve the air quality of the city" in order to promote public health and welfare. N.Y.C. Admin. Code § 24-102. Restricting unnecessary vehicle idling is rationally related to that objective. Best Trails does not plausibly allege otherwise merely by asserting that its buses employ modern emissions technology, that the law does not measure the actual emissions attributable to each violation, or that liability does not turn on the operator's intent. The legislature could rationally determine that limiting the duration of vehicle idling reduces unnecessary

emissions without requiring an individualized emissions measurement whenever a vehicle remains running.

Best Trails principally responds that the law cannot rationally serve an air-quality objective because the MTA and NYCTA allegedly operate large fleets of buses that emit as much or more pollution as private operators, but are not cited through the citizen-complaint program with anything approaching the frequency experienced by private operators. Dkt. No. 4, Compl. ¶¶ 29, 35, 40. The law on its face appears to apply to all buses, but plaintiff argues that Public Authorities Law § 1266(8) bars enforcement of the idling restrictions against the MTA and NYCTA, which effectively exempts the public transit buses from the reach of the regulations.

But assuming *arguendo* that this is true, the City could rationally conclude that enforcing those restrictions against private operators would reduce unnecessary emissions. Pollution from public buses does not negate the benefits of reducing pollution from private buses. There is some benefit from being able to enforce the regulation against private bus operators – the operators comparable to Best Trails.

A law "need not be in every respect logically consistent with its aims to be constitutional." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 487–88 (1955). In upholding a New York City traffic regulation that left other, potentially greater distractions unregulated, the Supreme Court likewise explained that "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110 (1949). The possibility that broader enforcement would produce greater reductions in pollution does not make enforcement against private operators irrational.

Best Trails' challenge to the manner of enforcement fares no better. When substantive due process is invoked against executive or administrative action, the standard is considerably more

demanding. The plaintiff must "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (citation omitted). The Second Circuit has put the point another way: "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id.* (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). The conduct must be "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* (quoting *Southerland v. City of New York*, 680 F.3d 127, 152 (2d Cir. 2012)).

Nothing alleged here approaches that level. Best Trails emphasizes that citizen complainants need no formal training, receive a portion of any penalty collected when the statutory conditions for an award are met, and can submit video recordings that Best Trails contends are unreliable. Dkt. No. 4, Compl. ¶¶ 22–26, 40.

But, again, submitting a citizen complaint does not itself establish a violation. A complainant reports alleged idling and offers evidence; an OATH hearing officer determines liability after a hearing, at which Best Trails can contest the evidence, present its own evidence, and seek witness testimony by requesting subpoenas. Furthermore, the burden of proving a violation rests with the complainant, so if the citizen's evidence is insufficient or inconclusive the burden will not be met. Additionally, Best Trails can take an appeal from an adverse determination and obtain judicial review via Article 78. The fact that the City permits laypersons with a financial incentive to initiate that process certainly bears on the weight or credibility of their evidence. But it does not describe governmental conduct that shocks the conscience.

*Watanabe Realty Corp. v. City of New York*, 315 F. Supp. 2d 375 (S.D.N.Y. 2003), on which Best Trails principally relies, reinforces the point. There, the City invoked its emergency procedures to demolish a roller coaster without any pre-deprivation hearing. The emergency declaration rested on an inspection in which the City inspector viewed the structure from outside a fence, using binoculars and a zoom lens. *Id.* at 385–86, 390. More importantly, the official responsible for ordering the demolition knew that the inspector lacked the qualifications necessary to evaluate the structural integrity of the steel, and that no qualified engineer had inspected the structure or performed laboratory testing. *Id.* at 393. On summary judgment, the court concluded that a jury could find that the official lacked a "responsible basis" for ordering the immediate and irreversible demolition and had acted "so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id.* at 393–94. The absence of any opportunity to contest that technical judgment before the structure was destroyed was central to the circumstances before the court.

The circumstances here are fundamentally different. A citizen complainant does not make the governmental determination that § 24-163 was violated and does not order any deprivation. The citizen reports observable conduct and submits supporting evidence to OATH. Determining whether a bus engine remained running for the prescribed period does not require the specialized engineering judgment at issue in *Watanabe* concerning the demolition of a roller coaster. And, unlike the demolition there, no irreversible deprivation follows from the citizen's report. The sufficiency and reliability of the evidence can be challenged before liability becomes final. *Watanabe* therefore does not plausibly support the proposition that allowing an untrained citizen to report and document an observable idling violation is conscience-shocking governmental conduct.

Best Trails' allegations therefore establish neither that § 24-163 lacks a rational relationship to a legitimate governmental purpose nor that its enforcement is so egregious or outrageously arbitrary as to violate substantive due process. Accordingly, Count II is DISMISSED in its entirety.

**D. Best Trails Has Not Successfully Pleaded a Void-for-Vagueness Claim**

The void-for-vagueness doctrine addresses two related concerns: fair notice and arbitrary enforcement. A law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," and it must "provide explicit standards for those who apply" it. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Second Circuit accordingly asks first "whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and then "whether the law provides explicit standards for those who apply it." *Rubin v. Garvin*, 544 F.3d 461, 468 (2d Cir. 2008) (quoting *Farrell v. Burke*, 449 F.3d 470, 486 (2d Cir. 2006)).

This standard does not require perfect precision. As the Supreme Court has observed, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110. And the amount of precision constitutionally required depends in part on the nature of the enactment. Economic regulation is "subject to a less strict vagueness test" because businesses can be expected to consult the governing law in planning their conduct; courts likewise tolerate greater imprecision in enactments carrying civil rather than criminal penalties. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982).

Moreover, § 24-163 does not implicate First Amendment rights. The Court therefore evaluates Best Trails' vagueness challenge "in light of the specific facts of the case at hand," rather

than by asking whether uncertainty might arise in some hypothetical application of the law. *United States v. Holcombe*, 883 F.3d 12, 17 (2d Cir. 2018) (quoting *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993)).

The complaint identifies four supposed sources of vagueness. It alleges that § 24-163 (1) does not specify how long a bus is permitted to idle at a terminal point; (2) treats buses using modern low-emission technology in the same manner as other buses; (3) contains an uncertain exception for maintaining an appropriate temperature for passenger comfort; and (4) permits untrained, financially compensated citizens to report violations without adequate enforcement standards. Dkt. No. 4, Compl. ¶¶ 44–46. None plausibly alleges constitutional vagueness.

Start with the time limits. Best Trails alleges that § 24-163 is vague because it "does not specify how long a bus may idle at a terminal point." Dkt. No. 4, Compl. ¶ 45(a). But that is simply not correct. Section 24-163(a) establishes a general rule. A motor vehicle ordinarily cannot idle for more than three minutes while parking, standing, or stopping. The same subsection states unequivocally that, "[w]hen the ambient temperature is in excess of forty degrees Fahrenheit," a bus cannot idle at all while parked, standing, or stopped "at any terminal point, whether or not enclosed, along an established route." N.Y.C. Admin. Code § 24-163(a). The statute therefore specifies the permissible duration of idling at a terminal point when the weather is warm: no time at all. That defeats Best Trails' fair-notice theory insofar as it rests on the supposed absence of any terminal-point time limit. Whether the term "terminal point" itself is sufficiently definite is a separate question addressed below.

Best Trails also contends that § 24-163 contains three potentially conflicting limits: (1) the general three-minute limit; (2) the one-minute limit imposed by subsection (f) near schools and parks; and (3) the zero-idling rule applicable to buses at terminal points along established routes

when the temperature exceeds forty degrees. Dkt. No. 86, Pl.'s Opp'n, at 15–16. But these limits are not inherently contradictory. The three-minute rule in subsection (a) expressly begins by making itself subject to subsection (f) – "except as provided in subdivision (f) of this section" – so the one-minute rule is an express exception to the general rule. N.Y.C. Admin. Code § 24-163(a). And if a bus is both adjacent to a park and at a terminal point along an established route on a day when the temperature is above forty degrees, compliance with the more restrictive zero-idling command necessarily complies with the one-minute maximum as well. A statute is not vague merely because different restrictions apply under different circumstances.

The geographic trigger in subsection (f) is also quite specific. The statute defines when a vehicle is "adjacent" to a school or park, and 15 RCNY § 39-02 offers a specific definition. A vehicle is "adjacent" when it is parked, stopped, or standing "within a lane of traffic on a block face on which a school or park is located," unless a median separates it from the school or park. The rule proceeds to define "lane of traffic," "block face," and "median," addresses T-shaped intersections, and even provides a diagram illustrating its application. 15 RCNY § 39-02(a)–(b).

Best Trails emphasizes that § 24-163 does not separately define "terminal point" or "established route." Dkt. No. 86, Pl.'s Opp'n, at 16. But the Constitution does not require a legislature to define every ordinary term it uses. *Grayned* itself upheld an ordinance containing language of "flexibility and reasonable breadth, rather than meticulous specificity," because its words and context made clear what conduct was prohibited. 408 U.S. at 110 (citation omitted). The meaning of the phrase "terminal point" of an "established route" is actually quite clear when read in context: it means endpoint of a regular bus route. It distinguishes idling at the end of a route from, say, idling at a red light along a route, which is by no means prohibited.

More fundamentally, Best Trails does not allege that it was unable to determine whether any particular location for which it received a summons was a "terminal point," whether any particular trip was following an "established route," or which of the one-, three-, or zero-minute restrictions governed any particular citation. It instead posits a charter bus traveling from New Jersey to Manhattan, stopping near Central Park and then ending its route at Madison Square Garden, and asks which rule would govern at the Central Park stop. Dkt. No. 86, Pl.'s Opp'n, at 16. That question is easily answered. On these facts, Central Park is an intermediate stop on a route ending at Madison Square Garden, so the terminal-point prohibition does not apply. If the bus stops adjacent to Central Park within the meaning of 15 RCNY § 39-02(a), the one-minute limit governs, subject to the statutory exceptions. N.Y.C. Admin. Code § 24-163(f). If the stop falls outside that definition and no other special restriction applies, the general three-minute limit governs. *Id.*, § 24-163(a).

In any event, this hypothetical does not supply a missing allegation about how § 24-163 was actually applied to Best Trails. Where First Amendment rights are not implicated, vagueness is assessed against "the specific facts of the case at hand." *Holcombe*, 883 F.3d at 17. And "one to whose conduct a statute clearly applies may not successfully challenge it for vagueness" merely because harder applications can be imagined in the abstract. *Village of Hoffman Estates*, 455 U.S. at 495 n.7 (quoting *Parker v. Levy*, 417 U.S. 733, 756 (1974)).

Best Trails' remaining fair-notice theories fare no better. Its allegation that § 24-163 subjects newer, lower-emission buses to the same idling limits as other buses does not identify any uncertainty about what conduct the law prohibits. Dkt. No. 4, Compl., ¶ 45(b). A bus operator remains subject to the same stated limits based on how long the vehicle idles, where it is located, the ambient temperature where relevant, and whether a specified exception applies; the amount of

pollution emitted by the particular bus does not alter the rules. Best Trails is free to argue to City regulators that they should have different rules for low emissions buses. But that is an objection to the scope or policy fit of the law, not to the clarity of its terms.

The school-bus passenger-comfort exception likewise does not make Best Trails' obligations uncertain. Subsection (f) provides that "idling of an engine of a *school bus* may be permitted to the extent necessary" for specified purposes, including "to maintain an appropriate temperature for passenger comfort." N.Y.C. Admin. Code § 24-163(f) (emphasis added). Best Trails operates charter buses, not school buses. Best Trails cannot plausibly establish uncertainty about its own obligations by pointing to the scope of an exception that does not even apply to its vehicles; it well knows that its buses are not school buses.

Plaintiff's related suggestion that a charter bus could not know whether it can operate a wheelchair lift fares no better. The City's implementing rule defines a "processing device" to include a device mechanically connected to the engine, "including but not limited to operating a lift," and § 24-163 expressly exempts idling necessary to operate a loading, unloading, or processing device. 15 RCNY § 39-01; N.Y.C. Admin. Code § 24-163(a), (f).

All that is left of Best Trails' vagueness argument is that § 24-163 invites arbitrary enforcement because citizen complainants need no formal training and can potentially receive part of a resulting penalty. Dkt. No. 4, Compl., ¶ 45(d). That allegation concerns who can report a violation and what incentive that person may have to do so. It does not identify any uncertainty about the standards applicable to its conduct. The relevant prohibition provides objective facts to be determined, including whether the vehicle was idling, for how long, where it was located, the temperature where relevant, and whether an enumerated exception applies. A citizen complainant cannot change or redefine what the regulation prohibits. The complainant reports an alleged

violation and supplies evidence; an OATH officer determines whether the petitioner has proved the statutory violation by a preponderance of the evidence. The complainant's training, financial interest, and the quality of the evidence submitted all bear on reliability and credibility. As discussed above, they do not give the complainant discretion to decide what conduct § 24-163 prohibits.

*Metro Produce Distributors, Inc. v. City of Minneapolis*, 473 F. Supp. 2d 955 (D. Minn. 2007), does not suggest otherwise. Best Trails describes that case as involving a municipal idling ordinance materially similar to § 24-163. Dkt. No. 86, Pl.'s Opp'n, at 15. It did not. One provision at issue there contained no quantitative parameter establishing how long a vehicle could remain stationary before prohibited "idling" began. The court concluded that this omission allowed "an official [to] cite one motor vehicle for remaining stationary one minute and pass over another motor vehicle that remained stationary for thirty minutes," leaving officials with "unfettered discretion to apply the ordinance in an arbitrary manner." *Metro Produce*, 473 F. Supp. 2d at 961–62. Another provision was challenged because the City was using it to punish conduct beyond what its text proscribed. *Id.* at 960.

Section 24-163 presents neither problem. It specifies concrete one- and three-minute limits and a zero-idling rule under defined circumstances, and Best Trails identifies no occasion on which the City imposed liability on it for conduct outside those prohibitions.

Section 24-163 may indeed require a bus operator to determine which of its provisions applies in any particular circumstance. But that is not constitutional vagueness. The operative rules give a person of ordinary intelligence fair notice of the conduct prohibited and provide objective standards by which an alleged violation is adjudicated.

Accordingly, Count III is DISMISSED because Best Trails does not plausibly allege that § 24-163 either fails to provide it fair notice of what conduct is prohibited or confers standardless discretion on those responsible for determining whether a violation occurred.

### E. Best Trails Has Not Pleaded an Equal Protection Claim

The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Its basic command is that government treat similarly situated persons alike. When, as here, a plaintiff does not allege discrimination based on membership in a protected class, a class-of-one claim requires it to plausibly allege that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Best Trails' opposition also invokes the related doctrine of selective enforcement. Dkt. No. 86, Pl.'s Opp'n, at 17–18.

Neither theory is plausibly alleged.

1. <u>The Class-of-One Theory</u>

A class-of-one claim demands considerably more than an allegation that two entities share some characteristics while receiving different treatment. The plaintiff must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Progressive Credit Union*, 889 F.3d at 49 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). The comparator must be "'*prima facie* identical' to the persons alleged to receive irrationally different treatment." *Id.* (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)). More specifically, the circumstances must be so similar that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would

justify the differential treatment on the basis of a legitimate government policy." *Ruston v. Town Board for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010).

Best Trails fails to identify such a comparator. Count IV alleges that "Best Trails, and such other similarly situated private bus companies, on the one hand, are being treated differently to the MTA and NYCTA, on the other hand." Dkt. No. 4, Compl., ¶ 49. But that allegation compares a private charter carrier with public transit authorities. The fact that both operate buses on City streets and generate vehicle emissions does not make them *prima facie* identical.

*Progressive Credit Union v. City of New Yor*k, 889 F.3d 40 (2d Cir. 2018), is instructive. There, taxicab medallion owners, credit unions, and trade associations challenged the City's different regulatory treatment of yellow taxis and for-hire vehicles such as Uber and Lyft. They argued that smartphone technology had made the two groups similarly situated by enabling them to serve the same passengers and compete for the same business. *Id.* at 45–47. The Second Circuit nevertheless affirmed dismissal of their class-of-one equal protection claim under the Fourteenth Amendment. It held that substantial differences between the two groups – including yellow taxis' exclusive right to accept street hails throughout the City – provided a rational basis for different regulations. *Id.* at 49–51.

The differences between Best Trails and the comparators it identifies are at least as substantial as those in *Progressive Credit Union*. The NYCTA is a "body corporate and politic constituting a public benefit corporation," whose statutory purposes include operating transit facilities "for the convenience and safety of the public" and developing and improving commuter transportation. N.Y. Pub. Auth. Law § 1201(1). The Legislature expressly declared those purposes to be "for the benefit of the people of the state of New York" and directed that the

NYCTA "be regarded as performing a governmental function" in carrying them out. *Id.*, § 1202(2).

The MTA likewise is a state-created public benefit corporation, charged with developing and implementing uniform mass-transportation policy for the metropolitan commuter transportation district and exercising public transportation functions. N.Y. Pub. Auth. Law § 1263–64, 1266. The Public Authorities Law gives the MTA authority not available to an ordinary private carrier, including authority to acquire and operate transportation facilities, establish fares and other charges, and prescribe standards governing their operation. *Id.*, § 1266(1)–(4). New York courts accordingly describe public authorities such as these as entities "created to accomplish a specific purpose or mission" and afford them institutional independence to accomplish that public purpose. *Matter of Levy v. City Commission on Human Rights*, 85 N.Y.2d 740, 744–45 (1995).

These unique statutory features defeat the proposed comparison. The MTA and NYCTA operate buses on the same streets as Best Trails while carrying out legislatively assigned public-transit functions. Best Trails, by contrast, operates a private charter business. These differences in legal status, statutory mission, and public function are more than sufficient to prevent Best Trails from plausibly alleging that "no rational person" could regard its circumstances as different from those of the MTA or NYCTA. *Ruston*, 610 F.3d at 60.

Finally, in a footnote in the Complaint, Best Trails alleges that, "[u]pon information and belief," Defendants "have granted or are in the process of granting variances from Code § 24-163 to other motorcoach operators based on operational realities and technological limitations." Dkt. No. 4, Compl. ¶ 35 n.2. This allegation does not cure the comparator problem. It identifies no operator that has received such a variance, no circumstances under which a variance was granted,

and no facts suggesting that any unidentified operator was similarly situated. The bare suggestion (made on information and belief, not actual knowledge) that some unidentified private operators might have received different treatment for unidentified reasons does not plausibly allege the "extremely high degree of similarity" a class-of-one claim requires.

Best Trails therefore has not stated a class-of-one Equal Protection claim.

2. The Selective-Enforcement Theory

The alternative selective-enforcement theory also fails.

Under *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980), in order to demonstrate selective enforcement of a statute, a plaintiff must show both "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." The Second Circuit has emphasized that "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as the selection is not deliberately based on an unjustifiable standard. *Id.* at 611 (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

Best Trails does not plausibly allege either requirement. Its principal comparators remain the MTA and NYCTA, whose materially different status and responsibilities have already been discussed. Even assuming the similarity requirement for selective enforcement is less demanding than the "*prima facie* identical" standard governing a class-of-one claim, *see Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019), Best Trails alleges no facts showing that any private charter operator and these public transit authorities are similarly situated in any relevant respect. Best Trails is a private company providing charter service; the MTA and NYCTA are public transit authorities charged with providing public transportation. Their different legal status, public

responsibilities, and operating roles provide obvious distinctions between them. *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) ("The States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." (citation modified)).

More fundamentally, the complaint does not allege that Defendants selected Best Trails for enforcement because of any impermissible consideration. It alleges no discrimination based on race, religion, or another protected characteristic; no attempt to punish Best Trails for exercising a constitutional right; and no facts suggesting a malicious or bad-faith purpose to injure Best Trails. Best Trails alleges that the enforcement is "arbitrary" and lacks a "reasonable basis," and it characterizes the City's conduct as "egregious" or "outrageous." But "[m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." *LeClair*, 627 F.2d at 608.

Best Trails' allegations concerning the citizen-complaint program likewise do not plausibly allege any discriminatory motive. Best Trails alleges that complainants receive a percentage of collected penalties and therefore have a financial incentive to file complaints. That incentive is created by statute and applies to citizen complainants generally and to all non-public charter bus companies. Nothing in the complaint connects it to any decision to target Best Trails, much less to a decision based on an impermissible consideration or a malicious or bad-faith intent to injure the company.

Plaintiff's opposition simply asserts that whether enforcement rests on an impermissible consideration is a factual question. Dkt. No. 86, Pl.'s Opp'n, at 18. Discovery, however, is not a substitute for pleading facts that make the required discriminatory motive plausible. "The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *Stoner v. Walsh*, 772 F. Supp. 790, 800 (S.D.N.Y. 1991).

Best Trails has not pleaded either a class-of-one Equal Protection claim or a selective-enforcement claim. Accordingly, Count IV is DISMISSED, because Best Trails does not plausibly allege a sufficiently similar comparator for either theory and, as to selective enforcement, does not allege facts supporting an inference that Defendants acted on the basis of an impermissible consideration or with a malicious or bad-faith intent to injure it.

**F. Best Trails Has Not Pleaded an Excessive Fines Claim**

The Eighth Amendment prohibits the imposition of "excessive fines." U.S. Const. amend. VIII. The Clause applies to the States through the Fourteenth Amendment, *Timbs v. Indiana*, 586 U.S. 146, 150 (2019), and the Second Circuit recently held that it protects business entities as well as individuals. *Retail Property Trust v. Nassau County Department of Assessment*, 2026 WL 2263300, at *7 (2d Cir. Aug. 6, 2026) ("[T]he Eighth Amendment shields business entities – including trusts and corporations – from excessive fines.").

The Second Circuit applies a two-step inquiry. The Court first asks whether the challenged payment is a "fine" – that is, whether it is at least partly punitive rather than purely remedial. *United States v. Viloski*, 814 F.3d 104, 108–09 (2d Cir. 2016). If so, the Court asks whether the fine is "grossly disproportional to the gravity of [the] offense." *Id.* at 110 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). In making that determination, courts consider "(1) the essence of the [offense] of the defendant and its relation to other [unlawful] activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum . . . fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct." *Retail Property Trust*, 2026 WL 2263300, at *7 (quoting *Viloski*, 814 F.3d at 110). The inquiry gives "substantial deference to the broad authority that legislatures necessarily

possess in determining the types and limits of punishments." *Bajakajian*, 524 U.S. at 336 (citation omitted).

The Court assumes that the civil penalties imposed for violations of § 24-163 are at least partly punitive and therefore subject to the Excessive Fines Clause. The question is whether Best Trails plausibly alleges gross disproportionality. It does not.

Best Trails alleges that it has received approximately 117 idling summonses over three years and has paid approximately $30,000 in penalties. Dkt. No. 4, Compl., ¶¶ 28, 53. It further alleges that fifty-one summonses arrived during the first quarter of 2026 and projects that, if that rate continued and each future violation resulted in a penalty of approximately $1,000, Best Trails could face $224,000 in penalties during a single year. *Id.*, ¶ 56.

Best Trails says that it "does not challenge one $350 or $600 penalty in isolation," but instead challenges the cumulative amount produced by repeated enforcement of the same law. Dkt. No. 86, Pl.'s Opp'n, at 20. But the Excessive Fines Clause asks whether a fine is grossly disproportionate to the offense for which it was imposed. Multiple penalties imposed for multiple violations do not become constitutionally excessive merely because their additive sum is large. Each summons alleges a separate instance of prohibited idling, and each resulting penalty corresponds to that separate violation.

*Segura v. Niblack*, 2026 WL 1196755 (E.D.N.Y. Mar. 16, 2026), illustrates the point. The plaintiff there accumulated sixty-four parking and camera violations and owed thousands of dollars in fines and penalties. The court rejected his Excessive Fines claim because the individual fines were not grossly disproportionate to the underlying violations. The court explained, "That the plaintiff accumulated thousands of dollars in fines on 64 parking tickets does not make the fines grossly disproportional." *Id.* at *8. So too here. Best Trails cannot convert otherwise

proportionate penalties for separate idling violations into an excessive fine merely by adding them together.

The alleged $224,000 figure provides still less support. It is not a fine that has been imposed on Best Trails. It is a projection constructed by assuming both that Best Trails will continue receiving summonses at the rate experienced during one quarter and that each projected summons will ultimately result in a penalty of approximately $1,000. Dkt. No. 4, Compl., ¶ 56. The Excessive Fines Clause does not require the Court to test the proportionality of a hypothetical aggregate penalty assembled from future violations that may never occur and penalties that have not been adjudicated. The Court will not engage in such speculation.

The four *Bajakajian* factors likewise do not plausibly show gross disproportionality.

The first factor – the nature of Best Trails' offense and its relationship to other unlawful conduct – does not support a finding of excessiveness. Idling is a civil regulatory violation, and Best Trails does not allege that it is associated with other unlawful activity. But the civil character of an offense does not make a substantial monetary penalty constitutionally suspect. In *Retail Property Trust v. Nassau County Department of Assessment*, the Second Circuit held that the "essence" of conduct underlying a civil penalty could justify a significant fine where the violation frustrated the governmental purpose the law was enacted to serve. 2026 WL 2263300, at *7–8. There, the court upheld a roughly $4.8 million penalty for repeated violations of a reporting requirement, explaining that even a reporting offense could be "serious enough to merit a fine" because disregard of the requirement frustrated the statute's objective. *Id.* Here, § 24-163 implements the City's expressly stated policy of preserving and improving air quality in order to promote "health, safety and welfare" and prevent injury to human, plant, and animal life. N.Y.C.

Admin. Code § 24-102. Violating the idling restriction directly frustrates the conduct that the City chose to regulate in furtherance of that objective.

The second factor asks "whether the defendant fits into the class of persons for whom the statute was principally designed." *Viloski*, 814 F.3d at 110. Best Trails falls within that class. It operates buses, whose idling § 24-163 expressly restricts. *See* N.Y.C. Admin. Code § 24-163(a). This factor therefore weighs against a finding of gross disproportionality.

The third factor also weighs against a finding of gross disproportionality. Section 24-178 authorizes a penalty of as much as $2,000 for each violation, while the individual penalties identified in the complaint range from approximately $350 to $1,000. *See* N.Y.C. Admin. Code § 24-178(a)(3)(i); Dkt. No. 4, Compl., ¶¶ 32, 56. The penalties alleged are therefore well below the maximum that the City Council authorized for the same conduct. And the legislative judgment embodied in that maximum is entitled to "substantial deference" in assessing proportionality. *Bajakajian*, 524 U.S. at 336.

The fourth factor – the harm caused by the prohibited conduct – likewise does not support Best Trails. Best Trails alleges that its modern buses produce relatively low emissions and argues that an individual idling violation causes little measurable harm. But the City need not establish that a single idling violation, standing alone, caused a measurable deterioration in New York City's air quality. Section 24-163 addresses unnecessary vehicle idling as conduct that, in the aggregate, contributes to the air-quality and public-health harms identified in § 24-102. *See* N.Y.C. Admin. Code §§ 24-102, 24-163. Each violation is an instance of the very conduct the City enacted the restriction to reduce, even if the emissions produced by a particular violation are comparatively modest. As another court in this District observed in assessing fines for repeated parking violations, the City has an "interest in promoting compliance with its laws, which is undermined

even by small-scale disregard." *Tsinberg v. City of New York*, 2021 WL 1146942, at *8 (S.D.N.Y. Mar. 25, 2021).

Best Trails also invokes *Viloski*'s recognition that a court can consider whether a forfeiture would deprive a person of his livelihood. Dkt. No. 86, Pl.'s Opp'n, at 19–20. Even assuming that consideration applies in the same manner to Best Trails, it does not rescue this claim. Best Trails does not allege that any individual fine threatens its ability to remain in business. Its theory again depends on aggregating penalties imposed for separate violations. But the size of that aggregate sum does not establish that any particular penalty is grossly disproportionate to the violation for which it was imposed. *See Golds v. City of New York*, 2025 WL 1895233, at *6 (E.D.N.Y. July 8, 2025) ("[O]ne would expect that 55 separate tickets would result in thousands of dollars in penalties.").

Best Trails' projection of future liability also assumes continued violations of § 24-163. But the very purpose of civil penalties is to "encourage defendants to discontinue current violations and deter them from committing future ones." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185–86 (2000). The relevant constitutional question remains whether the penalty imposed for a violation is grossly disproportionate to that violation. Best Trails expressly disclaims that theory. *See* Dkt. No. 86, Pl.'s Opp'n, at 20 ("Best Trails does not challenge one $350 or $600 penalty in isolation.").

Best Trails does not plausibly allege that any penalty actually imposed on it is grossly disproportionate to the idling violations for which it was assessed. Count V is DISMISSED because Best Trails' cumulative-penalty theory does not state an Excessive Fines Clause violation and it does not allege facts showing that any individual fine imposed under §§ 24-163 and 24-178 is grossly disproportionate to the underlying violation.

**G. Plaintiff's Motion for a Preliminary Injunction is Denied**

Because the complaint fails to state a claim, Plaintiff's motion for a preliminary injunction is DENIED. "[I]t is not possible for Plaintiffs to establish the likelihood of success on the merits necessary to grant a preliminary injunction where the Court has granted Defendant's motion to dismiss." *Principle Homecare, LLC v. McDonald*, 2025 WL 622876, at *17 (S.D.N.Y. Feb. 26, 2025), *aff'd*, 158 F.4th 326 (2d Cir. 2025).

**H. Leave to Amend**

Best Trails asks that, if the Court finds any of its claims deficient, it be granted leave to replead rather than have those claims dismissed with prejudice. Dkt. No. 86, Pl.'s Opp'n, at 24. That request is principally DENIED, with one small exception.

Rule 15 directs courts to give leave freely when justice requires. But leave may be denied where amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is unnecessary when the defect is substantive and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Counts 1 is dismissed with prejudice and without leave to amend. On the facts alleged no dormant commerce claim could possibly succeed, since there is no discrimination between comparable intrastate and interstate private bus operators – the regulations governs them equally.

Insofar as Count 2 alleges a substantive due process claim, it is dismissed with prejudice and without leave to amend. The restrictions rationally serve the City's interest in reducing emissions, and the alleged enforcement conduct does not shock the conscience.

Insofar as Count 2 alleges a procedural due process claim, it, too, is dismissed with prejudice and without leave to amend. The purported constitutional defects identified by Best Trails in the process of enforcing the regulation – most especially the "delayed notice" -- do not

deny Best Trails due process of law. Best Trails fails to explain why it could not adjust its own internal records retention policies so that it could keep relevant records for a year – the period within which summonses are received. Since that reason alone suffices to justify dismissal of this aspect of Count 2, amendment could not cure its deficiency.

Count 3, the Fourteenth Amendment void for vagueness claim, is dismissed with prejudice and without leave to amend. As explained above, the regulation as written is not vague, so amendment could not possibly cure the defect in the pleading.

Count 4, the equal protection claim alleging more favorable treatment of other bus operators, is dismissed, but with limited leave to amend. Because the public transit authorities are materially different from Best Trails, the allegations concerning the differences in treatment between private bus operators and the MTA and NYCTA cannot be cured by amendment; so to that extent, dismissal of Count 4 is with prejudice and without leave to amend. Plaintiff is granted leave to file an amended version of Count 4, but only in order to assert an equal protection claim that identifies – and not on information and belief -- a true comparator, which is to say, some other private bus company that is exempt from enforcement of the regulation. It is error for Best Trails to asset that it is entitled to discovery in order to ascertain whether there are any such companies; complaints may not be filed in order to engage in fishing expeditions in search of facts to support them. Unless plaintiff files an amended complaint containing such allegations within ten business days, dismissal of Count 4 will be converted to dismissal with prejudice in its entirety.

Finally, Count 5, the Eighth Amendment claim challenging the cumulative financial burden of penalties for separate idling violations, is dismissed with prejudice and without leave to amend. Best Trails expressly disclaims that it is challenging any individual fine as excessive, so additional

allegations about the aggregate financial burden would not cure the deficiency. Dkt. No. 86, Pl.'s Opp'n, at 20.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss, Dkt. No. 78, is **GRANTED**.

Best Trails may file an amended complaint limited to the amendment of Count 4 that was specified in Section H above. It must file within ten business days of this Decision and Order,

All other claims are dismissed with prejudice.

Best Trails' motion for a temporary restraining order and preliminary injunction, Dkt. No. 75, is **DENIED AS MOOT**.

If Best Trails does not timely amend, the Court will direct the Clerk of Court to enter final judgment for Defendants and close the case.

The Clerk of Court is respectfully directed to terminate the motions at Dkt. Nos. 75 and 78.

This constitutes the decision and order of the Court. It is a written decision.

Dated: September 10, 2026

U.S.D.J.